# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**LISA HILL-GREEN,**

     **Plaintiff,**

**v.**                                          **Civil Action No. 3:19cv708**

**EXPERIAN INFORMATION
SOLUTIONS, INC.,**

     **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Experian Information Solutions, Inc.'s ("Experian") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404[1] and Under the First-to-File Rule or, in the Alternative, to Stay Action (the "Motion to Transfer"). (ECF No. 8.) Plaintiff Lisa Hill-Green responded, (ECF No. 36), and Experian replied, (ECF No. 37). This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[2] For the reasons that follow, the Court will deny the Motion to Transfer.

---

[1] Title 28, Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint alleges that Experian violated Hill-Green and the proposed classes' rights pursuant to certain sections of the Fair Credit Reporting Act ("FCRA"), including 15 U.S.C. §§ 1681e(b); 1681c(a); 1681i(a).

## I. Factual and Procedural Background

### A.      Factual Background

In her three-count FCRA Complaint, Hill-Green brings two claims on behalf of herself and Virginia-based classes and another claim solely on behalf of herself.  Hill-Green's class claims focus primarily on Experian's use of an Experian product, known as "Fraud Shield," while her individual claim focuses on Experian's response to two disputes she made regarding information appearing on her Experian credit report.

### 1.      General Allegations as to Experian's Fraud Shield

Hill-Green states that Experian "developed, markets, and sells" a product known as "Fraud Shield," that Experian describes "as identifying 'high-risk characteristics'" by "using 'the power of predictive indicators and scoring to provide specific high-risk characteristic descriptions.'" (Compl. ¶¶ 15–16, ECF No. 1.)  Hill-Green alleges that Experian sells this product "to inform credit, employment, and other decisions that companies make about borrowers." (*Id.* ¶ 14.)  "Through Experian's File One Database, 'which houses more than 215 million active consumer profiles,' Fraud Shield 'utilizes predictive crosschecking' to help potential creditors 'reduc[e] fraud losses.'" (*Id.* ¶ 17.)  "Among other things, Fraud Shield: (1) screens and identifies 'more than 30 high-risk address profiles,' (2) flags telephone and social security numbers, and (3) '[i]dentifies recent authorized user tradeline information to highlight potential credit boosting schemes.'" (*Id.* ¶ 18.)  Experian's Fraud Shield "identifies an address as 'high-risk' when its File One Database associates the address with a business or one of its '30 high-risk address profiles.'" (*Id.* ¶ 20.)  "Experian then reports the 'high-risk business' on the consumer's credit report." (*Id.* ¶ 23.)  "This information is used by creditors to determine a

2

consumer's credit worthiness and also provides creditors with information concerning a consumer's personal characteristics and general reputation." (*Id.* ¶ 24.)

Hill-Green alleges "[u]pon information and belief," that "Experian identifies a consumer's address as 'high-risk' without any procedure to assure the accuracy or completeness of the information with respect to the individual about whom the report relates." (*Id.* ¶ 21.) She asserts that "[t]he methods and processes that Experian uses to gather and compile derogatory address information are automated." (*Id.* ¶ 25.) She maintains that "Experian rarely, if ever, manually review[s] its files to ensure all antedated adverse address information is deleted from consumer files." (*Id.* ¶ 29.)

### 2.   Allegations as to Hill-Green's Personal Experience with Experian

In the Complaint, Hill-Green describes both her experience with Experian's use of its Fraud Shield product on her credit report and two subsequent disputes that she made to Experian regarding information that appeared on her Experian credit report.

#### a.   Hill-Green's Experience with Experian's Fraud Shield

Hill-Green alleges that she suffered harm when Experian, using its Fraud Shield product, identified her as a fraud risk on her credit report by flagging her home address as a business address associated with a defunct "mailing and shipping services business called ICM, Inc." (*Id.* ¶¶ 36, 50.) Hill-Green avers that she "has no association with ICM, Inc. and had no knowledge of anything about it."[3] (*Id.* ¶ 40.) She explains that Experian's "inaccurate reporting completely derailed" her attempts to obtain a loan modification of her home mortgage because when the loan servicer asked Hill-Green to provide documentation for the business, she could not do so.

---

[3] Hill-Green states that her "counsel have learned that ICM, Inc. was a direct mail and advertising company that filed for bankruptcy in 2011." (Compl. ¶ 41.)

3

(*Id.* ¶¶ 51–52.)  The Complaint suggests that Hill-Green did not receive the loan modification that she sought, and her home was foreclosed upon at an unknown time.  (*See id.* ¶ 62.)

### b.      Hill-Green's Disputes to Experian Regarding Information on Her Credit Report

As to her first dispute with Experian, after Hill-Green applied for a loan modification of her home mortgage, she received a copy of her Experian credit report.  (*Id.* ¶ 53.)  She noted that her Experian credit report in "the 'Addresses' section . . . included two entries for [her home address] that indicated that it was 'single family,'" but the "'Notices' section . . . stated that her address was a 'non-residential address' and thus 'high risk' of fraud."  (*Id.* ¶¶ 54–55.)  Hill-Green "disputed the adverse address information that Experian was reporting" and Experian stated "that it had deleted the non-residential address from her personal credit file."  (*Id.* ¶¶ 57, 59.)

As to her second dispute with Experian, Hill-Green explains that she also disputed Experian's reporting of the foreclosure sale that took place after she could not obtain a loan modification of her home mortgage.  (*Id.* ¶ 62.)  In her second dispute, Hill-Green stated that the "foreclosure was unlawful" and she "attached a copy of [her] pending complaint . . . for the unlawful foreclosure."  (*Id.*)  "Her [dispute] letter also explained that [her home mortgage servicer] mistakenly associated a business to her home, which [Hill-Green] had no knowledge of."  (*Id.* ¶ 63.)  In response, "Experian sent [Hill-Green] correspondence indicating that it had not corrected the inaccurate and derogatory information regarding" the foreclosure.  (*Id.* ¶ 64.)

Because her credit report contained the foreclosure, Hill-Green could not obtain a mortgage to buy back her home.  (*Id.* ¶ 66.)  She then "sent a follow-up dispute to Experian," attaching "her prior dispute and a copy of her complaint against" her home mortgage servicer.  (*Id.* ¶ 67.)  Hill-Green states that, currently, the "status and payment history regarding [her]

mortgage account information has not been corrected and remains inaccurate. Experian continues to report inaccurate derogatory information within [her] credit file." (*Id.* ¶ 69.)

Hill-Green maintains that "[a]s a standard practice, Experian does not conduct independent investigations in response to consumer disputes," but "[i]nstead, it merely parrots the response of the furnisher despite numerous court decisions admonishing this practice." (*Id.* ¶ 70 (citations omitted).) Hill-Green avers that "Experian does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses," but "[i]nstead . . . [chooses] not to comply with the FCRA to lower its costs." (*Id.* ¶¶ 74–75.) Therefore, Hill-Green alleges "Experian's violations of the FCRA were willful." (*Id.* ¶ 75.)

### B.   Procedural Background

Hill-Green filed her September 2019 Complaint in this Court bringing three claims, including two claims brought on behalf of herself and proposed Virginia classes and one claim solely on behalf of herself. In Count One, the first class claim, Hill-Green brings a claim for a violation of 15 U.S.C. § 1681e(b)[4] and defines the proposed class as:

> All persons **residing in Virginia** (1) for whom Experian furnished a consumer report (2) containing a high-risk notice indicating that the person's address was a non-residential address (3) where Experian's databases also included verification from a subscriber that the same address was residential (4) within two years prior to the filing of this action and during its pendency.

---

[4] Title 15, Section 1681e of the United States Code defines the compliance procedures that a credit reporting agency must follow under the FCRA. *See* 15 U.S.C. § 1681e. Subsection "b" states: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* § 1681e(b).

(*Id.* ¶ 77 (emphasis added).)  In Count Two, the second class claim, Hill-Green brings a claim for a violation of 15 U.S.C. § 1681c(a)[5] and defines the proposed class as:

> All persons **residing in Virginia** (1) for whom Experian furnished a consumer report (2) containing a high-risk notice associated with a non-residential address (3) that antedated the report by more than 7 years (4) within two years prior to the filing of this action and during its pendency.

(*Id.* ¶ 93 (emphasis added).)  Finally, in Count Three, Hill-Green brings a claim for a violation of 15 U.S.C. § 1681i(a)[6] on behalf of herself.

In response to the Complaint, Experian filed the Motion to Transfer, asserting that the Court should transfer this matter to the United States District Court for the Central District of California.  In support of the Motion to Transfer, Experian first argued that transfer was appropriate because a case filed in February 2018 in the Central District of California, *Price v. Experian Information Solutions, Inc.*, No. 8:18cv340, asserted similar class-action claims as to Experian's Fraud Shield product on behalf of a *nationwide* class.  (*See generally* Mem. Supp. Mot. Transfer, ECF No. 9.)  Experian also filed an Answer to the Complaint.  (ECF No. 16.)

In response to the Motion to Transfer, Hill-Green filed a Motion to Permit Venue Related Discovery (the "Motion for Discovery"), (ECF No. 17), and a Motion for Extension, (ECF No. 19), seeking an extension of time to respond to the Motion to Transfer until after the Court ruled on the Motion for Discovery.

---

[5] Title 15, Section 1681c sets forth the requirements relating to information contained in consumer reports. *See* 15 U.S.C. § 1681c. Subsection "a" sets forth the information to be excluded from consumer reports. *See id.* § 1681c(a).

[6] Title 15, Section 1681i sets forth the procedure that a credit reporting agency must follow under the FCRA in a case where a person disputes the accuracy of his or her credit report. *See* 15 U.S.C. § 1681i. Subsection "a" pertains to the reinvestigations required when a consumer disputes the accuracy of information. *See id.* § 1681i(a).

6

Noting that the *Price* case, which formed the core of many of Experian's arguments in the Motion to Transfer, had settled,[7] the Court *sua sponte* ordered the Parties to file "separate statements . . . addressing the effect, if any, the settlement of the *Price* case has on the motions pending before the Court and on this case as a whole." (Apr. 24, 2020 Order 2, ECF No. 28.) Both Parties timely filed their statements. (ECF Nos. 29–31.) In the jointly filed May 22, 2020 Reply, the Parties stated that they "are in agreement regarding appropriate next steps of this case—that [Hill-Green's] motion for jurisdictional discovery . . . be denied as moot[] and that briefing should continue as to Experian's pending Motion to Transfer." (May 22, 2020 Jt. Reply 1, ECF No. 31 (footnote omitted).) The Parties asserted that "[t]his agreed course of action would allow the Court to consider the relevant evidence and make an informed ruling on Experian's transfer motion." (*Id.*) Accordingly, the Court denied the Motion for Discovery and the Motion for Extension and allowed the Parties to continue briefing the Motion to Transfer. (May 29, 2020 Order 2–3, ECF No. 32.) The Parties have now fully briefed the Motion to Transfer and the Court turns to the merits of that motion.

## II. Transfer Pursuant to 28 U.S.C. § 1404(a)

Title 28, § 1404(a) governs transfer for the convenience of parties and witnesses, stating: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The decision to transfer a case rests in the district court's sound discretion. *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). The party seeking transfer

---

[7] No party disputes that the *Price* case settled on an individual basis on or about February 14, 2020. (*See, e.g.*, Pl.'s Statement 1, ECF No. 29.)

"bears the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought." *Id.* at 633 (emphasis in original). A court determining the propriety of a motion to transfer under § 1404(a) follows a two-step inquiry. *Bascom Research, LLC v. Facebook, Inc.*, No. 1:12cv1111, 2012 WL 12918407, at *1 (E.D. Va. Dec. 11, 2012).

First, a court determines whether the claims could have been brought in the transferee forum. *Id.* To do so, "a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Koh*, 250 F. Supp. 2d at 631 (citations omitted).

Second, a court considers the following four factors: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Bascom*, 2012 WL 12918407, at *1. A court's decision to transfer depends on the particular facts of the case because § 1404(a) "provides no guidance as to the weight" that courts should afford each factor. *Samsung Elecs. Co., LTD. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 716 (E.D. Va. 2005). "The movant carries the burden of establishing the propriety of the transfer request." *Bascom*, 2012 WL 12918407, at *1.

### III.  Analysis

### Because the *Price* Case Has Settled and the § 1404(a) Factors<br>Weigh Against Transfer, the Court Will Deny the Motion to Transfer

In the Motion to Transfer, Experian asks the Court to transfer this matter to the Central District of California under 28 U.S.C. § 1404(a) and the first-to-file rule. (Mot. Transfer 1, ECF No. 8.) Experian, in the alternative, requests that if the Court denies its request to transfer, the Court stay the case until final judgment is rendered in *Price*. (*Id.*) Largely because *Price* has settled, the Court will deny the Motion to Transfer and Experian's request for a stay.

Under the § 1404(a) analysis, neither of the Parties contend that the Eastern District of Virginia constitutes an improper venue to hear this matter. Rather, Experian requests transfer under § 1404(a)'s convenience factors. Although the Parties agree that Hill-Green could have filed this matter in the Central District of California, thereby satisfying the first prong of the § 1404(a) analysis, the factors that the Court must consider under the second prong of the § 1404(a) analysis weigh against transfer. For that reason, the Court will deny the Motion to Transfer under § 1404(a) as well.

### A.   Hill-Green Could Have Filed This Case in the Central District of California

The Parties properly do not dispute that Hill-Green could have brought her claims in the Central District of California.[8]  (Mem. Supp. Mot. Transfer 6; Resp. Mot. Transfer 9, ECF No. 36.)  Therefore, Experian satisfies the first prong of the § 1404(a) analysis.

Experian, as a corporation, is "essentially at home" in the Central District of California because its principal place of business and headquarters exist in Costa Mesa, California, located in the Central District of California. *Daimler AG*, 571 U.S. at 139; (Mem. Supp. Mot. Transfer Ex. B "Finneran Declaration" ¶ 2, ECF No. 9-2).  Because Experian is subject to personal

---

[8] As the first prong of the § 1404(a) analysis, the Court must determine whether the claims could have been brought in the transferee form. *Bascom*, 2012 WL 12918407, at *1.  The Court must consider both venue and whether the transferee court could exercise personal jurisdiction over the defendant. *Koh*, 250 F. Supp. 2d at 630 (citation omitted).  A court may exercise general personal jurisdiction over a corporation if the corporation is "essentially at home" in the jurisdiction, such as if the corporation has its principal place of business or is incorporated in the jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 (2014) (stating that "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction." (citations omitted)).  A court constitutes a proper venue if it constitutes "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  Under the venue statute, a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* at § 1391(c)(2).

9

jurisdiction in the Central District of California it can be said to reside in that jurisdiction, 28 U.S.C. § 1391(c)(2), meaning that district could be a proper venue. *See* 28 U.S.C. § 1391(b)(1). Because the Central District of California can exercise personal jurisdiction over Experian and constitutes a proper venue, Experian has met its burden in satisfying the first prong of the § 1404(a) analysis, which requires it to show that the action could have been filed in the transferee forum. *Bascom*, 2012 WL 12918407, at *1.

### B.   The Balance of Convenience Factors Each Weigh Against Transfer

Under the second prong of the § 1404(a) analysis, the Court must consider four factors: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Bascom*, 2012 WL 12918407, at *1. In this case, although Hill-Green's choice of forum does not receive the great deference generally afforded to a plaintiff's choice of forum, each of these factors weigh against transfer. For that reason, the Court will deny the Motion to Transfer under § 1404(a).

### 1.   Hill-Green's Choice of Forum Weighs Against Transfer

Hill-Green chose to bring this action in the Eastern District of Virginia. Even though as a class action it may not receive the great deference afforded to a single plaintiff's choice of forum, this choice is entitled to some deference. Upon review, this factor weighs against transfer.

"In general, a plaintiff's choice of forum is given 'great deference.'" *James v. Experian Info. Sols., Inc.*, No. 3:12cv902, 2014 WL 29041, at *2 (E.D. Va. Jan. 2, 2014) (citation omitted). "Such deference is especially appropriate where, as here, plaintiffs do not choose a foreign forum or one bearing little or no relation to the cause of action." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006) (citation omitted). "In class actions, the named

plaintiff's choice of forum is afforded little weight because in such a case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." *Id.* (internal quotation marks and citation omitted). However, "[w]hen a plaintiff's choice of forum is amenable to inexpensive discovery and trial because it is home both to the plaintiff and to key non-party witnesses, then such a choice—even in a class action—is entitled to significant weight." *King v. Corelogic Credco, LLC*, No. 3:17cv761, 2018 WL 2977393, at *5 (E.D. Va. June 13, 2018) (citation omitted).

### a. The Court Will Grant Hill-Green's Choice of Forum Some Deference

Experian argues that the Court should not grant Hill-Green's choice of forum great deference because "the events underlying the cause of action took place elsewhere." (Mem. Supp. Mot. Transfer 8 (citation omitted).) Specifically, Experian looks to the fact that Hill-Green's home mortgage servicer "obtained the consumer report from Experian" and that company "maintains its corporate headquarters in Missouri." (*Id.* 9 (citations omitted).) Similarly, Experian explains that the "information that Experian allegedly provided to [Hill-Green's home mortgage servicer] through its Fraud Shield product was not generated in Virginia, as Experian maintains no physical presence in the state." (*Id.* (citing Finneran Decl. ¶ 3).)

This argument does not carry the day. Even though Hill-Green brings two claims on behalf of proposed classes, the Eastern District of Virginia is Hill-Green's home forum. (*See* Compl. ¶ 12.) She also alleges that the Eastern District of Virginia constitutes a forum in which a substantial part of the events that give rise to her Complaint took place: she states that she "made her dispute from Virginia, Experian sent its dispute response to her home in Virginia, and all of [her] injuries stemming from this violation occurred in Virginia." (Resp. Mot. Transfer 10.)

11

Importantly, Hill-Green brings two counts on behalf of Virginia-only classes. While class certification may not occur, were a class certified, *all* members would have to "reside[] in Virginia." (Compl. ¶¶ 77, 93.) Should a class be named, many injuries would likely exist in Virginia, too. Finally, Hill-Green adds that several of the witnesses she will call "to be part of proving her entitlement to and the amount of [the] damages" she seeks, "all live in Virginia."[9] (*Id.* (citing Resp. Mot. Transfer Ex. 2 "Hill-Green Declaration ¶¶ 10–14, ECF No. 36-2).)

As discussed below, the Court will not afford Hill-Green's choice of forum great deference, but it will afford it some deference. "When a plaintiff's choice of forum is amenable to inexpensive discovery and trial because it is home both to the plaintiff and to key non-party witnesses, then such a choice—even in a class action—is entitled to significant weight." *King*, 2018 WL 2977393, at *5 (citing *Byerson*, 467 F. Supp. 2d at 633). Hill-Green, as the named plaintiff in her class action, filed in her home forum and she brings her two class claims on behalf of Virginia-only classes. This likely means that the Eastern District of Virginia would be the home forum of the majority of class members. At the same time, Hill-Green intends to call Virginia witnesses who would be key non-party witnesses. Also, as explained below, it appears that at least some evidence pertaining to Hill-Green's class claims resides at Experian's Costa Mesa, California headquarters.

---

[9] "Party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses." *Mullins v. Equifax Info. Servs., LLC*, No. 3:05cv888, 2006 WL 1214024, at *7 (E.D. Va. Apr. 28, 2006) (citation omitted). Hill-Green has identified five individuals who will testify "about [her] distress and mental anguish that resulted from Experian's reporting [her] as a fraud risk and refusing to remove inaccurate information in response to [her] disputes to Experian." (Hill-Green Decl. ¶¶ 10–14.) Although Hill-Green does not specify her relationship to these individuals, they likely do not amount to "key non-party witnesses," such that the Court could grant Hill-Green's choice of forum great weight. *See King*, 2018 WL 2977393, at *5, *5 n. 7.

Clearly, the location of Experian's Costa Mesa headquarters weighs toward transfer.[10] The Court will not afford Hill-Green's choice of forum great deference, but will afford it some deference. But, for the reasons noted above and elucidated below, the Court concludes that this fact weighs slightly against transfer.

**b.      This Court's Prior Decision in *King* Does Not
           Require Transfer Here**

Experian relies heavily on this Court's prior decision in *King v. Corelogic*, which granted a defendant's motion to transfer. (Reply Mot. Transfer 5, ECF No. 37.) In *King*, the plaintiff brought "one [FCRA] count styled as a class action," and the proposed class definition included a nationwide class. 2018 WL 2977393, at *2. The plaintiff's claim focused on Corelogic's failure "to adopt reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports." *Id.* When considering the motion to transfer under § 1404(a), this Court ultimately concluded that "King's choice of forum, although usually given significant weight, should receive less deference in this case" because the Virginia witnesses that King intended to call did not constitute "key non-party witnesses" and the information that formed the core of King's Complaint, namely information relating to Corelogic's procedures, resided in the transferee forum. *Id.* at *5. In distinguishing the cases relied upon by the *King* plaintiff, the Court also noted that "nothing indicates a heavy presence of class members in Virginia or nearby states." *Id.* at *5 n. 8.

Although similarities exist between *King* and this case,[11] key differences outweigh the similarities. Most importantly, Hill-Green seeks to certify only a Virginia-only class, meaning

_____

[10] Both parties acknowledge that CitiMortgage, who obtained Hill-Green's credit report, has its corporate headquarters in Missouri.

[11] The Court sees some parallels between this case and *King*. For instance, like the defendant in *King*, Experian has asserted that it "maintains no physical presence in" Virginia.

that, unlike *King*, all of the proposed class members would have to reside in Virginia.[12] Therefore, one of the reasons that this Court distinguished the cases relied upon by the *King* plaintiff, specifically that, "nothing indicates a heavy presence of class members in Virginia or nearby states," *id.* at \*5 n. 8, is absent here.  Indeed, the opposite holds true:  if certified, all class members would have to reside in Virginia.

Also, the *King* plaintiff brought only a single FCRA class-action claim, *see id.* at \*2, however, Hill-Green has also asserted an additional claim on behalf of herself in which she alleges that Experian, among other things, "fail[ed] to promptly delete the disputed inaccurate items of information from [Hill-Green's] credit file or modify the item of information upon a lawful reinvestigation," (Compl. ¶ 108).  Although, like the case in *King*, the information available at Experian's Costa Mesa headquarters is pertinent to Hill-Green's class claims, which focus on the Fraud Shield product, Hill-Green's actions in disputing the information on her credit report and Experian's response, which was sent to Hill-Green in Virginia, is pertinent to her individual claim.  Therefore, information both in California and Virginia is important to Hill-Green's claims.  For these reasons, key differences separate this matter from this Court's prior decision in *King*.  *King* does not require transfer here.

---

*See King*, 2018 WL 2977393, at \*4; (Finneran Decl. ¶ 3).  And, similar to *King*, much of the information pertaining to class claims against Experian likely exists at its Costa Mesa headquarters.  *See King*, 2018 WL 2977393, at \*4.  But the case at bar differs materially from *King*.  First, Hill-Green asserts a Virginia-only class, a fact that weighs against consideration by a California court.  Second, the national class claim in *Price* was dismissed.  The *Price* resolution does not encompass the claims at bar.

[12] Because Hill-Green seeks to certify a Virginia-only class in her two class claims, this case can also be distinguished from *Byerson*, in which the plaintiff sought to certify a nationwide class.  *See Byerson*, 467 F. Supp. 2d at 630.  Additionally, in *Byerson*, unlike here, a case pended in the transferee forum with similar claims, making transfer more appropriate in that case.  *See id.*  Because *Price* has settled and no longer pends in the Central District of California, the existence of a case considering similar claims in the transferee forum simply does not exist here.

For these reasons, even though the Court will not give Hill-Green's choice of forum the great deference afforded to other plaintiffs, it will afford her choice some deference. This factor thus weighs against transfer.

### 2.   The Convenience of the Parties Weighs Against Transfer

The second factor, the convenience of the parties, also weighs against transfer. This factor "includes assessment of the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process." *Byerson*, 467 F. Supp. 2d at 633 (citation omitted). "When weighing this factor, 'the logical starting point is a consideration of the residence of the parties.'" *King*, 2018 WL 2977393, at *5 (citation omitted). "[T]ransfer is not appropriate where it will only serve to shift the balance of inconvenience from one party to the other." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 668 (E.D. Va. 2010) (citation omitted).

Experian has not met its burden to show that the Parties' convenience weighs in favor of transfer. Looking first to the Parties' residence, Hill-Green resides in the Eastern District of Virginia. (Compl. ¶ 12.) And if a class were certified, *every* class member would reside in Virginia. Experian's principal place of business and headquarters is located in Costa Mesa, California, within the Central District of California. (Finneran Decl. ¶ 2.) Therefore, to present its case, each party will be inconvenienced by having to travel to the other's chosen forum.

As to the ease of access to sources of proof, Experian states that "the documentation and electronically stored information are located (or, at a minimum, can be accessed through Experian's computer system)" in the Central District of California. (Mem. Supp. Mot. Transfer 9 (citing Mem. Supp. Mot. Transfer Ex. A "Fowler Declaration" ¶ 5, ECF No. 9-1; Finneran Decl. ¶ 5).) However, courts have recognized that when information is available

electronically, this "factor is de minimis and not entitled to substantial weight." *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15cv21, 2015 WL 1800274, at *4 (E.D. Va. Apr. 16, 2015) (citations omitted); *King*, 2018 WL 2977393, at *6 (recognizing that where information was stored in the transferee forum "at least some of this need for evidence in the transferee forum can be mitigated through the availability of technology, as the comparatively low cost of transporting documents 'can make their location a less pressing consideration.'" (citations omitted)).  Because Experian acknowledges that the information is stored electronically and, thus, can be easily sent to the Eastern District of Virginia, the location of evidence does not favor transfer.

Finally, the cost of obtaining witnesses testimony and the availability of compulsory process considerations do not favor transfer.  Experian maintains that the "witnesses who will testify . . . are located in the Central District of California, or in Arizona or Texas, and likely will be deposed in those States." (Fowler Decl. ¶ 5.)  It further states that "no Experian witnesses" reside in the Eastern District of Virginia.  (*Id.*)  Although Experian may incur some expense to have these witnesses testify at a trial in the Eastern District of Virginia, it has not asserted that these witnesses will refuse to travel to the Eastern District of Virginia to testify or that these witnesses are beyond the Court's compulsory power.

Hill-Green, on the other hand, has identified several witnesses who reside within the Eastern District of Virginia.  (*See* Hill-Green Decl. ¶¶ 10–14.)  If this were to become a class action, the Virginia-only class members might provide relevant evidence.  She has also stated that "[d]ue to COVID-19, [she] lost [her] main source of income . . . so [she] would be unable to incur the expense of travel, meals, and lodging during a trial outside of Virginia."  (*Id.* ¶ 6.) While not a dispositive consideration, Experian is likely more able to bear the monetary burden

of litigating this case outside of what would be its chosen forum.  Therefore, the cost of obtaining witnesses and availability of compulsory process also weigh against transfer.

"[T]ransfer is not appropriate where it will only serve to shift the balance of inconvenience from one party to the other." *Heinz Kettler*, 750 F. Supp. 2d at 667.  Here, transfer would simply shift the balance of inconvenience from Experian to Hill-Green, who is less able to bear the expense of that inconvenience.  Therefore, the second factor, the parties' convenience, weighs against transfer.

### 3.     The Convenience of Witnesses Weighs Slightly Against Transfer

The third factor, the convenience of witnesses, also weighs slightly against transfer.  "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Heinz Kettler*, 750 F. Supp. 2d at 668 (internal quotation marks and citation omitted).  "Typically, . . . a distinction is drawn between party and non-party witnesses." *Mullins*, 2006 WL 1214024, at \*7.  "Party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses." *Id.* (citation omitted).  "The convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer." *Id.* (citation omitted).  Similarly, "in contrast to witness testimony that is merely cumulative, greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Id.* (internal quotation marks and citation omitted).  "When the appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by

an employer who is a party to the action, this factor becomes less important." *Id.* at *8 (internal quotation marks and citation omitted).

Experian has submitted two declarations that discuss the witnesses it intends to call. First, Kerry C. Fowler, "a partner of the law firm of Jones Day, and counsel for Experian" states that the "witnesses who will testify for purposes" of this matter "are located in the Central District of California, or in Arizona or Texas, and likely will be deposed in those States. There are no Experian witnesses . . . located in the Eastern District of Virginia." (Fowler Decl. ¶ 5.) Similarly, Patricia Finneran, "a Director of Data Accuracy of Experian," declared that "[t]he vast majority of witnesses . . . surrounding" this matter "are located in either California or Texas."[13] (Finneran Decl. ¶ 5.) Hill-Green, on the other hand, declares that she intends to call five individuals, all of whom reside in the Eastern District of Virginia, to testify "about [her] distress and mental anguish that resulted from Experian's reporting [her] as a fraud risk and refusing to remove inaccurate information in response to [her] disputes to Experian." (Hill-Green Decl. ¶¶ 10–14.)

Based on these arguments and the declarations submitted, the Court concludes that the witness convenience factor weighs slightly against transfer. Although Experian has submitted

---

[13] In its Reply, Experian states that "[t]he most likely key non-party witnesses in this case are employees of [Hill-Green's home mortgage servicer], which is based in Missouri, not Virginia." (Reply Mot. Transfer 8 (citation omitted).) Experian argues that Hill-Green "has provided no indication that she dealt with a[n employee of her home mortgage servicer] . . . in Virginia to assist with her loan process, and there is no reason to presume such an individual would reside in Virginia given the obvious, national footprint of a large bank like" Hill-Green's home mortgage servicer. (*Id.*) Even assuming that Hill-Green or Experian will call the employees of Hill-Green's home mortgage servicer to testify and assuming that those employees do not reside in the Eastern District of Virginia, Experian has not shown that it would be any more convenient for those employees to travel to the Central District of California than to the Eastern District of Virginia. Therefore, the location of these witnesses does not affect the Court's analysis.

two declarations describing the location of the witnesses it intends to call,[14] it has not included

any "details respecting . . . their potential testimony to enable the court to assess the materiality

of evidence and the degree of inconvenience." *Heinz-Kettler*, 750 F. Supp. 2d at 668 (citation

omitted). Similarly, because it seems that these witnesses are Experian employees, they likely

constitute party witnesses and the Court "presume[s they are] . . . more willing to testify in a

different forum." *Mullins*, 2006 WL 1214024, at *7 (citation omitted). Also, as Experian

employees, their "appearance . . . [could] be secured regardless of the forum's location through

court order or persuasion by an employer who is a party to the action, [therefore] this factor [is]

---

[14] Hill-Green argues that the declarations Experian submitted in support of the Motion to Transfer fail to properly identify the witnesses it intends to call. (*See* Resp. Mot. Transfer 12 (stating that "[i]t is also simply not enough to state 'there are a bunch of witnesses over there in that district' as the basis for transfer").) Hill-Green states that "[i]n its Rule 26(a)(1) Disclosures in *Price*, Experian identified two other witnesses . . . as having knowledge of the fraud-alert product at issue here. . . . Those individuals live and work in Allen, Texas." (*Id.*) Further, she states that "when asked in Interrogatories to identify 'all persons' who have information or knowledge with respect to the allegations in *Price*, Experian did not identify any additional witnesses beyond the three disclosed pursuant to Rule 26(a)(1)." (*Id.* 13.) In its Reply, Experian states that Hill-Green's "singular focus on the three employees mentioned in this interrogatory seems designed to obscure consideration of other likely witnesses here." (Reply Mot. Transfer 10 n. 4.) Referencing other FCRA cases litigated by Counsel for Hill-Green, Experian states that "[u]nless [Hill-Green] is willing to forego these common discovery tactics, which she has given no indication she will do, it is reasonable to expect that [Hill-Green] will seek discovery from more individuals than she identifies in her opposition brief." (*Id.*)
These arguments do not affect the Court's analysis for two reasons. First, because these witnesses likely all are Experian employees their "appearance . . . can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action." *Mullins*, 2006 WL 1214024, at *8. Therefore, even if it would be more convenient for these witnesses to testify in the Central District of California, Experian has not shown that they will not appear in the Eastern District of Virginia. Second, because Experian has moved to transfer this case to the Central District of California, it bears the burden to show that the § 1404(a) factors, including witness convenience, favor transfer. *Koh*, 250 F. Supp. 2d at 633. But, even if Hill-Green intends to call other Experian employees to support the claims raised in the Complaint, Experian has failed to show that the witness convenience factor necessitates transfer to the Central District of California.

less important."[15]  *Id.* at *8.  For these reasons, the third factor, witness convenience weighs slightly against transfer.[16]

### 4.    The Interests of Justice Weigh Against Transfer

The interests of justice is the final factor that the Court should consider under the second prong of the § 1404(a) analysis.  Because *Price* has settled on an individual basis and this Court can properly consider this FCRA case, this factor also weighs against transfer.

The interests of justice "factor 'encompasses public interest factors aimed at systemic integrity and fairness.'"  *Heinz Kettler*, 750 F. Supp. 2d at 669 (citation omitted).  "The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments."[17]  *Id.*  "Fairness is assessed by considering factors such as docket congestion,

---

[15] In support of her Response to the Motion to Transfer, Hill-Green submitted Ms. Finneran's December 12, 2019 deposition.  (Resp. Mot. Transfer Ex. A "Finneran Deposition," ECF No. 36-1.)  In that deposition, Ms. Finneran states that she resides in Queen Creek, Arizona, and has done so for "[a]bout 18 months."  (*Id.* 2.)  Ms. Finneran also explains that prior to her living in Arizona, she resided in San Diego, California, for her "entire life."  (*Id.*)  Because Ms. Finneran's appearance, as an Experian employee, "can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action," *Mullins*, 2006 WL 1214024, at *8, her actual location does not materially affect the Court's analysis as to the witness convenience factor.

[16] Although Experian has not met its burden to show that the convenience of its witnesses necessitates transfer, the Court notes that the witnesses Hill-Green intends to call might be cumulative.  Experian's witnesses, on the other hand, more closely resemble "witnesses whose testimony is central to the claim and whose credibility is also likely to be an important issue." *Mullins*, 2006 WL 1214024, at *7.  Therefore, the convenience of Experian's witnesses is entitled to greater weight.  *See id.*  However, even affording that consideration its appropriate weight, as explained above, Experian has failed to meet its burden to show that the convenience of witnesses necessitates transfer.  This factor weighs slightly against transfer.

[17] The defendants identify the first-to-file rule when arguing that the interests of justice favor transfer to the Central District of California.  (*See* Mem. Supp. Mot. Transfer 10.)  "The first-to-file rule provides that 'when multiple suits are filed in different Federal courts upon the same factual issue, the first or prior action is permitted to proceed to the exclusion of another subsequently filed.'"  *Victaulic Co. v. E. Indus. Supplies, Inc.*, No: 6:13-01939, 2013 WL 6388761, at *2 (D.S.C. Dec. 6, 2013) (quoting *Allied-Gen. Nuclear Servs. v. Commonwealth*

interest in having local controversies decided at home, knowledge of the applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* at 670 (citation omitted).

Experian focuses much of its argument as to the interest of justice being served because transfer to California would promote judicial economy given the *Price* Court's two-year handling of that matter. Originally, Experian argued that the Court should transfer this matter to the Central District of California so that it could be consolidated with *Price*. (*See* Mem. Supp. Mot. Transfer 10–13.) Experian argues that the Court should transfer the case because "[i]t simply cannot be ignored that [United States District] Judge [David O.] Carter and [United States] Magistrate Judge [Suzanne H.] Segal accumulated significant knowledge and experience about Experian and its Fraud Shield product over the nearly two years that the *Price* case was pending, and that history would likely prove useful to the parties here." (Reply Mot. Transfer 13.) Experian maintains that Judge Carter's and Magistrate Judge Segal's rulings in the *Price* case may affect the outcome of the case at bar. (*Id.* 13–14.) Therefore, Experian avers that "[j]udicial economy would seem to be maximized by allowing the parties here to be guided by

---

*Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982)). Courts within the jurisdiction of the United States Court of Appeals for the Fourth Circuit have observed that the Fourth Circuit "has no unyielding 'first-to-file' rule." *See, e.g., Victaulic*, 2013 WL 6388761 at *2 (quoting *CACI Int'l Inc. v. Pentagen Techs. Int'l Ltd.*, 70 F. 3d 111, 1995 WL 679952, at *6 (4th Cir. 1995) (citation omitted)). Generally, "the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594–95 (4th Cir. 1982). But the first-to-file rule "is not absolute and is not to be mechanically applied." *Victaulic*, 2013 WL 6388761 at *2, (quoting *Harris v. McDonnell*, No. 5:13cv000777, 2013 WL 5720355, at *3 (W.D. Va. Oct. 18, 2013)).

Although the first-to-file rule may have been applicable while the Central District of California considered the *Price* case, because *Price* has settled, the first-to-file rule no longer informs the Court's analysis.

rulings such as these and an existing framework for litigating these claims to conclusion." (*Id.* 14.)

Although *Price* may have addressed similar claims, it has since settled, on an individual basis only. *See Price v. Experian Info. Sols., Inc.*, No. 8:18cv340, (C.D. Cal. Feb. 14, 2020, ECF No. 124). Experian's argument that the benefit of hearing by a district judge, a magistrate judge, and a mediator who have presided over a Fraud Shield case and who might "guide parties to a similar" settled "resolution" cannot prevail. (Reply Mot. Transfer 2.) First, absent consolidation, it is not certain that this case would transfer automatically to Judge Carter. Second, the *Price* case did not resolve *any* class claims, much less a nationwide one. Neither the interest of justice nor judicial economy counsel transfer of this Virginia-based claim and Virginia-only potential class claim to the Central District of California. While the Central District of California has evaluated Experian's Fraud Shield product when considering the *Price* case, Experian does not "challenge the idea that this Court has developed important experience litigating FCRA cases." (*Id.* 12.) At this time, no other motions pend in the case at bar, but should they be filed, the Court will give appropriate weight to any rulings Judge Carter or Magistrate Judge Segal made in the *Price* matter. Therefore, judicial economy does not necessitate transfer here.

Because Hill-Green brings her claims on behalf of only a Virginia class and herself, a Virginia resident, the "interest in having local controversies decided at home" and the "unfairness with burdening forum citizens with jury duty" weigh against transferring this matter to the Central District of California. *See Heinz Kettler*, 750 F. Supp. 2d at 670. Indeed, should this case reach the class notice or a later stage, this Court would then be responsible for overseeing the class in Virginia, not nationwide. Certainly, economy is served by a Virginia

22

court managing a Virginia class.  For these reasons, Experian has failed to show that the fourth factor, the interests of justice, necessitates transfer.  This factor, like the other three factors that the Court should consider under the second prong of the § 1404(a) analysis, weighs against transfer.

### IV.  Conclusion

For the foregoing reasons, the Court will deny the Motion to Transfer.  (ECF No. 8.)

It is SO ORDERED.

_____
/s/
M. Hannah Lauck
United States District Judge

Date: 9/15/2020
Richmond, Virginia

23