IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LISA HILL-GREEN, *on behalf of*
*herself and all others similarly situated,*

        Plaintiffs,                                Civil Action No. 3:19-cv-708

v.

EXPERIAN INFORMATION SOLUTIONS,
INC.,

        Defendant.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS'
FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD**

Plaintiff Lisa Hill-Green, on behalf of herself and all others similarly situated (the "Class" as further defined below), by counsel, respectfully submits this memorandum of law in support of her Motion for Attorneys' Fees, Costs, and Class Representative Service Award.

**OVERVIEW**

This Settlement is the result of two years of litigation over Experian's Fraud Shield product, a product that Experian marketed to protect creditors from fraudsters. In actuality, Fraud Shield reports were often inaccurate, mislabeling consumers like Plaintiff and the Settlement Class. The proposed injunctive relief Settlement substantially changes Fraud Shield, eliminating the most inaccurate components and providing tremendous benefit to the Class.

Because of the Settlement, Experian will reconfigure the update procedure for importing data into its Non-Residential Address database. Indeed, each month, Experian will import an updated file from its vendor that overwrites all pre-existing data. Experian also will suppress or remove from the Non-Residential Address data any address that Experian has reason to believe has not been updated or otherwise verified for at least six years. Additionally, Experian will stop

1

publishing certain Fraud Shield indicators, Experian will reduce the number of codes that would result in other certain Fraud Shield indicators, and Experian will revise messaging and descriptions of additional Fraud Shield indicators to be more detailed. These significant procedure changes will address the inaccuracies that the Class Members suffered because of Experian's reporting and will prevent them from suffering future harm. Although this injunctive relief is hard to value in an actual dollar amount, it will provide a real benefit for many thousands of consumers going forward. Ex. 1, Declaration of Dale Pittman, ¶ 35.

In exchange for this significant injunctive relief, class members provide only a limited release—the ability to seek injunctive relief on a class basis for Experian's failure to employ reasonable procedures for its Fraud Shield product. Critically, they retain their ability to sue Experian for actual, statutory, and punitive damages, as well as attorneys' fees and costs.

The Class has already recognized these benefits. Despite a robust notice process, none of the tens of thousands of class members have objected to the settlement. Although the objection deadline has not passed, the proposed fee request was published in the class notice and, so far, no class members have complained. This is the appropriate reaction.

The substantial relief in the Settlement would have been impossible without Class Counsel's skill, creativity, hard work, and willingness to take on the long-term uncapped obligation of monitoring and ensuring Settlement compliance. As detailed below, the Parties conducted significant discovery before settling, including written discovery, significant document production, depositions, and expert analysis of Experian's data production. As a result, the Parties were fully informed when they engaged in settlement discussions. The Parties attended three separate mediation sessions over many months, and also conducted several direct settlement efforts.

Critically, (1) the requested attorneys' fees, costs, and service award were negotiated after the rest of the Settlement was agreed to in principle, and (2) Experian, and not the Class, will pay any fee award. *Berry v. Schulman*, 807 F.3d 600, 618 n.10 (4th Cir. 2015). In fact, unlike in *Berry*, the Class does not release any damage claims and that the damages component of the case will continue under Federal Rule of Civil Procedure 23(b)(3). And Class Counsel took this case on a contingency basis, which put them at significant risk if the litigation did not succeed. They should be compensated for this risk. Plaintiff also seeks a reasonable service award, which is in line with other service awards in this Court, to compensate her for the time and effort that she spent representing the Class. Plaintiff, therefore, requests that the Court grant her Motion and award $2,242,500 in attorney's fees and costs and $7,500 as a service award to Plaintiff. Experian does not oppose this request.

## BACKGROUND

Pertinent to this Settlement, Plaintiff's class action challenged Experian's reporting of certain addresses as "non-residential" and "high risk"—even though it knew that the addresses were single-family homes—through its Fraud Shield product. Based on these allegations, the Complaint alleged claims against Experian for violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b).[1] The case also challenged Experian's use of address data that was outdated and resulted in inaccurate classifications of various consumer addresses. Plaintiff also alleged that Experian violated the FCRA's obsolescence provision. 15 U.S.C. § 1681c. The case history

---

[1] The Settlement resolves a portion of Plaintiff's § 1681e(b) claims. The Parties have agreed to an injunctive relief settlement and certification of a settlement class under Rule 23(b)(2). The Parties continue to negotiate—and if negotiations are not fruitful, will continue to litigate—Plaintiff's claim for damages and for certification of a class under Rule 23(b)(3).

leading to the settlement was detailed in Plaintiff's preliminary approval motion, but is also summarized below.

Plaintiff filed this case more than two years ago, on September 27, 2019. (ECF No. 1.) After the complaint was filed, Plaintiff successfully defended Experian's motion to transfer the case to the Central District of California. (ECF No. 38.) While that motion was pending, Experian answered the Complaint (ECF No. 16), and Plaintiff sought venue-related discovery, which was ultimately determined moot. (ECF No. 31.). After the Court decided the transfer motion, the Parties began discovery, including written discovery responses and significant document production. The Parties developed and implemented an ESI protocol, and Plaintiff reviewed Experian's large document production. Over many months, the parties engaged in significant meet and confers, including the exchange of this Court's discovery chart procedure. Plaintiff also worked with a data expert to analyze the class member data that Experian produced. Plaintiff took Experian's Rule 30(b)(6) deposition, and Experian deposed Plaintiff. Plaintiff obtained third-party discovery from Experian's vendor for the address information used to populate the Fraud Shield indicators.

Following these significant discovery efforts, the parties attended a two-day mediation session with retired federal Magistrate Diane M. Welsh of JAMS Philadelphia on July 15 and 16, 2021. (ECF No. 75.) The July mediation was productive, and the Parties attended a third full-day mediation on September 8, 2021. (ECF No. 79.) The Parties supplemented these formal mediation sessions with many informal settlement discussions among themselves. This ultimately led to the settlement that the Court preliminarily approved on November 22, 2021. (ECF No. 88.) The attorneys' fees and service award were discussed only after an agreement in principle was reached for the injunctive relief and limited release.

Since preliminary approval, Class Counsel has worked diligently to carry out the settlement. They have coordinated with Kinsella Media, a nationally recognized class-action administrator, to realize a publication notice campaign. They have communicated with class members about the settlement. And as with any other class action settlement, there will be work to be completed after the settlement, including ongoing contact with class members who have questions about the settlement.

No one has objected to the settlement. Experian also served the required CAFA notice on state and federal officials, and none have raised any concerns with the proposed settlement. Although the objection deadline has not passed, the class notice included the proposed amount of attorney's fees, and so far, no class member has objected to the proposed fee or service award amount.

**ARGUMENT**

**A.      The Requested Attorneys' Fees Should Be Approved.**

The Settlement provides for stipulated attorneys' fees of $2,242,500. As described below, these fees are appropriate and should be awarded.

To begin, the attorneys' fee award here warrants reduced scrutiny because it was not discussed—much less negotiated—until *after* an agreement was reached on all other material terms of the Settlement. That is, Experian agreed that $2,242,500 was a fair fee independent of negotiations that had already taken place pertaining to the injunctive relief that will be afforded to the Class.  The Class does not pay *any* of the fee award—directly or indirectly. And, unlike other cases, like *Berry*, there is no damages release or settlement—not yet.  The damages case continues, with the Class Members still able to litigate the issue of monetary damages for Experian's conduct.

5

Any diminishment in the requested fee, therefore, would not benefit consumers; it would benefit only Experian. This Court is familiar with a comparable class settlement approved by Judge Spencer. *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 3:11-cv-754, 2014 WL 4403524 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015). In that Rule 23(b)(2) settlement, Judge Spencer considered a settlement in which:

> Plaintiffs' counsel will seek an award for attorneys' fees and expenses for their representation of the Rule 23(b)(2) Settlement Class in obtaining relief. The request is based in large part on the value of the relief to consumers and the dynamic shift that it represents in the industry and the fact that the injunction affords far better substantive rights than the Court or a jury could compel following a complete victory on all of Plaintiff's claims. The Settlement Agreement approves an award for attorneys' fees, costs, and other expenses in an amount up to $5.5 million in the aggregate. The amount will be paid entirely by LexisNexis. The Defendants have agreed to pay this amount and the Plaintiffs' counsel have agreed not to seek a higher amount.

2014 WL 4403524, at *6. The Court approved the Rule 23(b)(2) attorneys' fee in *Berry* with a multiplier where "counsel allocated approximately 80% of their time to crafting injunctive relief for the Rule 23(b)(2) class" and based its finding on the following:

> (1) Plaintiffs' counsel expended large amounts of time and labor, demonstrated skill commensurate with their reputations, and achieved an excellent result in this large and complex action; (2) Plaintiffs negotiated a Settlement Agreement that provides substantial benefits for over 200 million consumers; and (3) the Settlement Agreement forces Defendants to comply with the FCRA and increases consumer privacy protection measures.

2014 WL 4403524, at *15.

The Court benefits not only from Judge Spencer's careful review but also the Fourth Circuit's affirmance. Not only was a multiplier appropriate, but the Fourth Circuit also offered an additional basis to approve a Rule 23(b)(2) fee award in circumstances similar to this case:

> Other features of this case further diminish any concern about the fee award and, accordingly, any need for heightened scrutiny by the district court. Because class counsel's fee is to be paid entirely by Lexis, it does not reduce the (b)(2) Class's recovery. *Cf. Cook v. Niedert,* 142 F.3d 1004, 1011 (7th Cir. 1998) (when attorneys' fee reduces amount of common fund, court must carefully scrutinize fee

6

> application). Nor, of course, will it require the expenditure of taxpayer funds, which might warrant additional scrutiny. *Cf. Perdue v. Kenny A.*, 559 U.S. 542, 559 (2010) (limiting the use of multipliers in lodestar-based fee awards against the government under fee-shifting statutes). Finally, the parties did not even begin to negotiate class counsel's fee until after the substantive terms of the Agreement were finalized, making it far less likely that counsel could have traded off the interests of class members to advance their own ends.

*Berry*, 807 F.3d at 618 n.10.

As in *Berry*, the Court here must consider that the proposed award was not negotiated at the expense of the Class's recovery. Regardless of whatever fee Class Counsel receives, the Class will receive the same benefit of the substantial changes to how Experian implements Fraud Shield. Thus, there can be no inference of collusion with Experian or Class Counsel advancing their interests ahead of the Class. In fact, the opposite is true. Class Counsel spent three days mediating these substantive changes to Fraud Shield to prevent the violation that happened to Plaintiff—which, for her, resulted in the foreclosure of her home—from harming other consumers. And, if there was any collusion, the changes to Fraud Shield would not be nearly as sweeping as they are. In fact, the only one who would benefit by a reduced fee award to Class Counsel is Experian, the entity that caused the harm to Plaintiff and the Class.

In any event, the stipulated attorneys' fees here are reasonable. Rule 23(h) allows for the award of "reasonable attorneys' fees and nontaxable costs that are authorized by law or the parties' agreement." In determining a reasonable fee in a class action, courts generally use two methods: the "lodestar" method and the "percentage of the fund" method. *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 786 (E.D. Va. 2001). Here of course there is no common fund. Under the lodestar method, appropriate for this circumstance, the Court determines the number of hours reasonably expended by counsel and then multiplies those hours by a reasonable hourly rate to arrive at a

lodestar figure. *Id.*; *see also Berry*, 807 F.3d at 617 n.9. The lodestar then can be increased or decreased by various factors as set forth by the Fourth Circuit.[2] *Id.* & n.23.

The "most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995) (citations and quotations omitted); *see also Berry*, 807 F.3d at 618 (acknowledging that forcing a defendant's compliance with the FCRA was appropriate to consider in determining appropriateness of fee award). Because of the Settlement, Experian must reconfigure its update procedure for importing data into its Non-Residential Address database. Specifically, Experian now must import—each month—an updated file from its vendor that overwrites all pre-existing data. Experian also must suppress or remove from its Non-Residential Address data any address that Experian has reason to believe has not been updated or otherwise verified for at least six years. In addition, Experian may no longer publish certain Fraud Shield indicators. The cessation of that practice will reduce the number of codes that cause other certain Fraud Shield indicators and will revise messaging and descriptions of additional Fraud Shield indicators to be more detailed.

While difficult to value, the injunctive relief in this Settlement will benefit tens of thousands of consumers going forward. Importantly, it likely could have been achieved only in the settlement context as injunctive relief is generally considered unavailable under the FCRA. This Court previously has highlighted the importance of injunctive relief in the credit reporting sphere.

---

[2] These factors are: "(1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill required to properly perform the legal services; (4) attorney's opportunity costs in pressing the litigation; (5) customary fee for like work; (6) attorney's expectations at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) amount in controversy and results obtained; (9) experience, reputation, and ability of the attorney; (10) undesirability of the case within the legal community in which the suit arose; (11) nature and length of the professional relationship between the attorney and client; (12) fee awards in similar cases." *Id.* (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)).

*See, e.g.*, *Thomas v. Equifax Information Services, LLC*, No. 3:18cv683, ECF No. 44 at 15:8–14 (E.D. Va. May 14, 2019) (Lauck, J.) (explaining that the imposition of a reporting hiatus until "certain conditions are met is a valid and appropriate term"); *Brown v. Experian Information Solutions*, No. 3:16cv670, ECF No. 119 at 27:21–25 (E.D. Va. Feb. 1, 2019) (Lauck, J.) ("This type of change in industry practice, this complication, as acknowledged by both sides, makes plain that the attorneys here have done all they can to assure that this settlement process has gone forward in a fair and full manner."); *Clark v. Trans Union, LLC*, No. 3:15cv391, ECF No. 274 at 27:9–14 (E.D. Va. Aug. 29, 2018) (Lauck, J.) ("The injunctive relief that is considered is proactive, retroactive, and currently corrective. It is amazingly all encompassing and very thoughtfully put forward, and I have no doubt that that is the result of counsel working close together . . . ."); *Jenkins v. Equifax Information Services, LLC*, No. 3:15cv443, ECF No. 35 at 29:9–19 (E.D. Va. Jun. 14, 2016) (Lauck, J.) (noting that "while there is no direct monetary payment," "[t]his clearly is a significant agreement reached as far as what consumers would have available to them"). The result here, too, is nothing short of extraordinary and is a testament to Class Counsel's collective expertise, skill, credibility, and hard work.

Class Counsel have put significant time and resources into litigating this case and reaching this Settlement. As explained in the declarations of Class Counsel, Class Counsel's current collective lodestar exceeds $736,582.75 and Class Counsel's out-of-pocket expenses are $36,393.69. (Ex. 2, Drake Decl. ¶¶ 17, 22; Ex. 3, Bennett Decl. ¶ 37, 38; Ex. 4, Kelly Decl. ¶ 25.) Class Counsel's hourly rates are reasonable and commensurate with other class action attorneys who practice in the Eastern District of Virginia and specifically the Richmond Division. (Ex. 1, Pittman Decl. ¶ 33.) The time spent on this case also is reasonable based on the amount of work performed. (*Id.*)

The requested attorneys' fees also recognize the post-approval work that Class Counsel will undertake. With the countless number of consumers impacted by Experian's Fraud Shield reporting, Class Counsel has already spent significant time responding to class members. There is still work to be done to effectuate the Settlement, including responding to any objections, draft a final approval motion, appearing at the Final Fairness Hearing, continuing class member contact, and resolving any issues with the class administrator. And as the Court knows from experience, a multi-year injunction like this one will require significant additional work, with no additional compensation beyond what is awarded in the Settlement. None of this time has been captured in Class Counsel's lodestar.

Thus, the attorneys' fees awarded will most likely constitute a multiplier of approximately 2.9, which is in line with, and is lower than many, multipliers approved in other settlements. *New Eng. Carpenters Health Benefits Fund v. First Databank*, No. 05-cv-11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (8.3 multiplier); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03-cv- 04578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) (15.6 multiplier); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (8.74 multiplier); *In re Merry-Go-Round Enterprise, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) (19.6 multiplier); *Glendora Cmty. Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (1984) (12 multiplier); *Weiss v. Mercedes-Benz of No. Am., Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) (9.3 multiplier); *see also Merkner v. AK Steel Corp.*, 1:09-cv-00423-TSB, ECF No. 79 (S.D. Ohio Jan. 10, 2011) (multiplier of 5.3 in lodestar crosscheck); *In re Cardinal Health*, 528 F. Supp. 2d at 767 (multiplier of 5.9 in lodestar crosscheck); *In re Fernald Litig.*, No. C-1-85- 149, 1989 WL 267038, at *5 (S.D. Ohio Sept. 29, 1989) (multiplier of 5 in lodestar crosscheck); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) (awarding one-third of the fund as attorneys' fees and finding that "the lodestar

cross-check confirms that the requested fee is reasonable" when the multiplier was 3.9); *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (finding a 3.69 multiplier to be "within the range of reasonableness" and collecting cases).

FCRA cases are also inherently risky cases for which recovery is far from guaranteed. In FCRA cases, to recover the statutory damages of $100 to $1,000 sought by plaintiffs under 15 U.S.C. § 1681n, plaintiffs would have had to prove that Experian not only violated the statute but did so willfully. Experian was prepared to vigorously challenge this element of plaintiffs' claim, and to prevail, plaintiffs would have had to show not only that their interpretation of the FCRA was correct, but that Experian's interpretation of the statute was objectively unreasonable. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). This is a high standard and, considering the uncertainty surrounding interpretation of the provision and the difficulties of proving willfulness, there was a substantial risk of nonpayment. *See Domonoske v. Bank of Am.*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) ("[G]iven the difficulties of proving willfulness or even negligence with actual damages [under the FCRA], there was a substantial risk of nonpayment.").

In the face of these risks, Class Counsel were still able to achieve a landmark settlement that benefits tens of thousands of consumers, and overhauls the way that Experian reports fraud indicators, including whether addresses are "non-residential" or "high risk." The Settlement is a testament to Class Counsel's skill, experience, tenacity, and dedication to these matters. The fee that Experian has stipulated to pay fairly compensates Class Counsel for their efforts and recognizes that Class Counsel's settlement-related work is far from complete. Class Counsel's request for the agreed-upon attorneys' fees should be approved.

### B. The Court Should Grant The Requested Service Award.

Plaintiff requests—and Experian does not oppose—a modest award of $7,500 for Plaintiff's participation and service to the Class. She took an active role in the litigation, including responding to written discovery and sitting for a deposition. Ex. 4, Kelly Decl. ¶¶ 28–30. She also understands her role as class representative and responded to Class Counsel throughout the litigation. *Id*. She reviewed and approved the settlement. Service awards in this range are reasonable and this Court routinely awards them. *See, e.g.*, *Hayes v. Delbert Servs. Corp.*, 3:14-cv-258 (JAG) (E.D. Va.); *Manuel v. Wells Fargo Nat'l Ass'n*, No. 3:14cv238(DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va.); *Williams v. Lexis Nexis Risk Mgmt.*, No. 3:06cv241 (E.D. Va.); *Cappetta v. GC Servs. LP*, No. 3:08-cv-288-JRS (E.D. Va.); *Makson v. Portfolio Recovery Assoc., Inc.*, No. 3:07-cv-982-HEH (E.D. Va. Feb. 9, 2009); *Daily v. NCO*, No. 3:09-cv-31-JAG (E.D. Va.); *Conley v. First Tenn.*, No. 1:10-cv-1247-TSE (E.D. Va.); *Lengrand v. Wellpoint*, No. 3:11-cv-333-HEH (E.D. Va.); *Henderson v. Verifications, Inc.*, No. 3:11-cv-514-REP (E.D. Va.); *Pitt v. K-Mart Corp.*, No. 3:11-cv-697 (E.D. Va.); *James v. Experian Info. Sols.*, No. 3:12-cv-902 (E.D. Va.); *Manuel v. Wittstadt*, No. 3:12-cv-450 (E.D. Va.); *Shami v. Middle E. Broadcast Network*, 1:13-cv-467-CMH (E.D. Va.); *Goodrow v. Freidman Freidman & MacFadyen*, No. 3:11-cv-20 (E.D. Va.); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11-cv-274 (E.D. Va.); *Marcum v. Dolgencorp*, No. 3:12-cv-108 (E.D. Va.); *Kelly v. Nationstar*, No. 3:13-cv-311 (E.D. Va.); *Wyatt v. SunTrust Bank*, No. 3:13-cv-662 (E.D. Va.). So do other judicial districts. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 976–77 (9th Cir. 2003); *In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). In fact, the requested service award is well below the national average—an empirical study published in 2006 suggests that the average award

per class representative is about $16,000. 4 *Newberg on Class Actions* § 11:38 (4th ed.). Because Plaintiff earned it through her participation in the case, the Court should approve it.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that this Court grant Plaintiff's Motion for Attorney's Fees, Expenses, and Class Representative Service Award.

Respectfully submitted,
**LISA HILL-GREEN,**
*individually and on behalf of all others similarly situated*

By: */s/ Kristi C. Kelly*
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB No. 92699
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com

Leonard A. Bennett, VSB No. 37523
Craig C. Marchiando VSB No. 89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

E. Michelle Drake, Admitted *Pro Hac Vice*
Email: emdrake@bm.net
Joseph C. Hashmall, Admitted *Pro Hac Vice*
Email: jhashmall@bm.net
BERGER MONTAGUE PC

        1229 Tyler St NE, Suite 205
        Minneapolis, Minnesota 55413
        Telephone: (612) 594-5999
        Facsimile: (612) 584-4470
        *Counsel for Plaintiff*