Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LISA HILL-GREEN, *et al*.

        Plaintiff,

v.                                  Civil Action No.: 3:19-cv-708-MHL

EXPERIAN INFORMATION
SOLUTIONS, INC.,

        Defendant.

———————————————

**SETTLEMENT AGREEMENT AND RELEASE**

# TABLE OF CONTENTS

**Page**

1.  PRELIMINARY STATEMENT ................................................................. 1

2.  RECITALS ............................................................................................ 1

2.  DEFINITIONS....................................................................................... 3

3.  MOTION FOR PRELIMINARY APPROVAL ........................................ 12

4.  SETTLEMENT PROVISIONS SPECIFIC TO RULE 23(B)(2)
    SETTLEMENT...................................................................................... 13

    4.1   CERTIFICATION OF RULE 23(B)(2) SETTLEMENT CLASS................. 13

          4.1.1  CLASS CERTIFICATION................................................. 13
          4.1.2  NO RIGHT TO OPT OUT ................................................ 13
          4.1.3  CLASS CERTIFIED FOR SETTLEMENT PURPOSES ONLY ...... 14

    4.2   RULE 23(B)(2) NOTICE PLAN .................................................. 14

          4.2.1  RULE 23(B)(2) SETTLEMENT CLASS NOTICE ........................... 14
          4.2.2  COURT APPOINTMENT AND RETENTION OF
                 SETTLEMENT ADMINISTRATOR.................................................. 15
          4.2.3  RULE 23(B)(2) INTERNET NOTICE.............................................. 16
          4.2.4  RULE 23(B)(2) CLASS SETTLEMENT WEBSITE........................ 16
          4.2.5  TOLL-FREE TELEPHONE NUMBER ............................................ 17
          4.2.6  DIGITAL MEDIA ADVERTISEMENTS ......................................... 17
          4.2.9  CAFA NOTICE FOR THE RULE 23(B)(2) SETTLEMENT ........... 18
          4.2.10 COSTS ...................................................................................... 18

    4.3   INJUNCTIVE RELIEF.................................................................. 19

          4.3.1  AGREED INJUNCTIVE RELIEF ................................................. 19
          4.3.4  LIMITATIONS ON INJUNCTIVE RELIEF .................................... 22

    4.4   OBJECTIONS FROM RULE 23(B)(2) SETTLEMENT CLASS
          MEMBERS.................................................................................. 23

    4.5   RULE 23(B)(2) SETTLEMENT CLASS RELEASE ................................... 24

          4.5.1  SCOPE OF RELEASE ....................................................... 24
          4.5.2  STATE-SPECIFIC WAIVERS ......................................... 25
          4.5.3  BINDING RELEASE ........................................................ 26

    4.6   SERVICE AWARD AND ATTORNEYS' FEES AND COSTS.................. 26

## TABLE OF CONTENTS
(continued)

Page

| | 4.7 | APRIL 27, 2022 ORDER EFFECTIVE UNTIL FINAL APPROVAL OF NOVATION | 27 |

5. SETTLEMENT PROVISIONS SPECIFIC TO RULE 23(B)(3) CLASS SETTLEMENT .... 27

5.1 CERTIFICATION OF RULE 23(B)(3) SETTLEMENT CLASS .... 27

5.1.1 CLASS CERTIFICATION .... 27

5.1.2 CLASS CERTIFIED FOR SETTLEMENT PURPOSES ONLY .... 27

5.2 RULE 23(B)(3) NOTICE PLAN .... 28

5.2.1 PREPARATION AND PRODUCTION OF CLASS LIST .... 28

5.2.3 COURT APPOINTMENT AND RETENTION OF SETTLEMENT ADMINISTRATOR .... 28

5.2.4 RULE 23(B)(3) SETTLEMENT NOTICE AND CLAIMS .... 29

5.2.5 CAFA NOTICE FOR THE RULE 23(B)(3) SETTLEMENT .... 31

5.2.6 COSTS .... 32

5.3 PROCEDURE FOR OPT-OUTS .... 32

5.3.4 EFFECT OF OPT-OUT RATE .... 33

5.4 OBJECTIONS FROM RULE 23(B)(3) SETTLEMENT CLASS MEMBERS .... 33

5.5 RULE 23(B)(3) SETTLEMENT FUND .... 35

5.6 SETTLEMENT FUND TAX STATUS .... 35

5.6.1 QUALIFIED SETTLEMENT FUND .... 35

5.6.2 ADMINISTRATOR .... 35

5.7 RULE 23(B)(3) SETTLEMENT ATTORNEYS' FEES, COSTS, AND OTHER EXPENSES .... 36

5.8 SERVICE PAYMENT TO THE NAMED PLAINTIFF .... 37

5.9 PAYMENT SCHEDULE .... 37

5.10 RULE 23(B)(3) SETTLEMENT CLASS RELEASE .... 38

5.10.1 RELEASE OF ALL CLAIMS .... 38

5.10.2 STATE-SPECIFIC WAIVERS .... 39

5.10.3 BINDING RELEASE .... 40

ii

## TABLE OF CONTENTS
(continued)

Page

6.    ENTRY OF FINAL JUDGMENT AND ORDER....................................................... 40

7.    TERMINATION....................................................................................................... 40

8.    MISCELLANEOUS PROVISIONS......................................................................... 41

      8.1    BEST EFFORTS TO OBTAIN COURT APPROVAL.................................. 41

      8.2    NO ADMISSION........................................................................................... 41

      8.3    PROCESS FOR RESOLUTION OF DISPUTES REGARDING
             COMPLIANCE WITH SETTLEMENT AGREEMENT............................... 42

      8.4    COURT'S JURISDICTION AND CHOICE OF LAW.................................. 44

      8.5    SETTLEMENT NOTICES............................................................................. 44

      8.6    ADMINISTRATIVE COSTS......................................................................... 45

      8.7    TAXES............................................................................................................ 45

      8.8    DEFENDANT'S COMMUNICATION WITH CUSTOMERS,
             BUSINESS CONTACTS, AND MEMBERS OF THE PUBLIC ................. 45

      8.9    CLASS COUNSEL'S REPRESENTATION OF OTHER
             CONSUMERS................................................................................................ 46

      8.11   CONFIDENTIALITY OF DISCOVERY MATERIALS AND
             INFORMATION............................................................................................. 46

      8.12   COMPLETE AGREEMENT........................................................................... 46

      8.13   HEADINGS FOR CONVENIENCE ONLY.................................................. 47

      8.14   SEVERABILITY............................................................................................ 47

      8.15   NO PARTY IS THE DRAFTER .................................................................... 47

      8.16   BINDING EFFECT ........................................................................................ 47

      8.17   AUTHORIZATION TO ENTER SETTLEMENT AGREEMENT ............... 47

      8.18   EXECUTION IN COUNTERPARTS ............................................................ 48

iii

## 1.  PRELIMINARY STATEMENT

On April 27, 2022, the Court entered an Order Granting Final Approval of Class Action Settlement and Certifying Settlement Class [ECF No. 112] in the present Litigation.  The settlement approved by the April 27, 2022 Order provided certain injunctive relief to a class of consumers under Federal Rule of Civil Procedure 23(b)(2).  Since that time, the Parties reached agreement regarding a modified settlement that provides further injunctive relief to the Rule 23(b)(2) Settlement Class, further release to Defendant, and resolves the class claims brought by the Named Plaintiff under Federal Rule of Civil Procedure 23(b)(3).  Accordingly, the Parties enter into this Settlement Agreement and Release ("Settlement Agreement") with the intention and understanding that it will act as a novation of the settlement previously approved by the Court, and if approved, will supersede the prior Settlement Agreement in all respects.

This Settlement Agreement is made and entered into by the Named Plaintiff, her counsel, and Defendant Experian Information Solutions, Inc., ("Experian" or "Defendant"), as of August 19, 2022, in the case captioned *Hill-Green v. Experian Information Solutions, Inc.,* No. 3:19-cv-708 (E.D. Va.), and is submitted to the Court for approval pursuant to Fed. R. Civ. P. 23(e).

## 2.  RECITALS

### 1.1  The Settled Action

This Agreement, by two settlement classes described herein, resolves the putative class action against Defendant alleging Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), arising from Defendant's practices concerning generation, sale, and transmission of non-residential and/or high-risk Fraud Shield Indicators.

The case was filed on December 24, 2019, in the United States District Court for the Eastern District of Virginia by the Named Plaintiff.  In addition to class claims concerning the

reporting of Fraud Shield Indicators by Defendant, the Named Plaintiff also asserted an individual claim, which is not resolved by this Settlement Agreement.

### 1.2     Defendant's Denial of Liability

Defendant vigorously denies each and every one of Named Plaintiff's allegations of wrongful conduct and damages.  Defendant has asserted numerous defenses to Named Plaintiff's claims and disclaims any wrongdoing or liability whatsoever.  Defendant further denies this matter satisfies the requirements to be certified or tried as a class action under Fed. R. Civ. P. 23.  Defendant nevertheless desires to settle all claims that are asserted, or which could have been asserted, in this Litigation, on the terms and conditions set forth herein, solely for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation and for the purpose of putting to rest the controversies raised in or implicated by this Litigation. Nothing in this Agreement or any other document shall be construed as an admission or evidence of any violation of any federal or state statute, rule, or regulation, or principle of common law or equity, or of any liability or wrongdoing whatsoever, or of the truth of any of the claims or facts asserted or to be asserted in the Litigation, or of the lack of merit of any defenses Defendant raised or could have raised against the operative complaint or any other pleading or document filed in the Litigation or any other proceeding related to this Litigation. Further, Defendant is not estopped from challenging any such claim asserted in the Litigation or motion for class certification in any further proceedings in the Litigation or in any other action if the Settlement is not finally approved.

### 1.3     Settlement Through Mediation

This Settlement Agreement has been reached after the Parties completed exhaustive discovery of documents, data, and witness depositions relevant, or claimed to be relevant, to the claims of Named Plaintiff and those of the classes she purports to represent.  The Named Plaintiff and Defendant recognize the outcome of this matter is uncertain, and a final resolution

through the litigation process would require several more years of protracted adversarial litigation and appeals; substantial risk and expense; the distraction and diversion of the Defendant's personnel and resources and the expense of any possible future litigation raising similar or duplicative claims; and the Named Plaintiff, her counsel, Defendant have agreed to resolve this matter as a settlement class action according to the terms of this Settlement Agreement.  The Settlement Agreement is a product of sustained, arms' length settlement negotiations and numerous mediation sessions, including multiple sessions conducted by experienced and independent mediators, including two federal Magistrate Judges (one retired). Those negotiations and mediation sessions resulted in an agreement on the principal terms of a settlement.

NOW, THEREFORE, without (a) any admission or concession on the part of Named Plaintiff of the lack of merit of the Litigation whatsoever, or (b) any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by Defendant, it is hereby stipulated and agreed by the undersigned, on behalf of the Named Plaintiff, the Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) Settlement Classes, and Defendant, that this matter and all Released Claims of the Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) Settlement Classes be settled, compromised, and dismissed on the merits and with prejudice as to the Released Parties, subject to Court approval as required by Fed. R. Civ. P. 23, on such terms and conditions as set forth herein.

The recitals stated above are true and accurate and are hereby made a part of this Settlement Agreement.

## 2.    DEFINITIONS

For the purposes of this Settlement Agreement, including the recitals stated above, the following terms will have the following meanings:

2.1    "Litigation" means the above-captioned civil action.

**2.2**     "Named Plaintiff" means Lisa Hill-Green.

**2.3**     "Defendant" means Experian Information Solutions, Inc.

**2.4**     "Party" and "Parties" mean the Named Plaintiff, the Rule 23(b)(2) Settlement Class, the Rule 23(b)(3) Settlement Class, and Defendant.

**2.5**     "CAFA Notice" means notice of the Settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and as further described in Sections 4.2.9 and 5.2.5.

**2.6**     "Claim" and "Claims" mean all claims, counterclaims, demands (including, without limitation, demands for arbitration), actions, suits, causes of action, allegations of wrongdoing, and liabilities that were actually asserted or that could have been asserted based on the allegations in the operative complaint and/or the Covered Conduct in this Litigation.

**2.7**     "Class Counsel" means the attorneys and law firms listed on the signature pages of this Settlement Agreement representing the Named Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes.

**2.8**     "Class List" means the list generated by the Parties of the Rule 23(b)(3) Settlement Class Members, as further described in Section 5.2.1.

**2.9**     "Consumer Report" means the report as defined in 15 U.S.C. § 1681a(d) and provided by a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

**2.10**     "Court" means the United States District Court for the Eastern District of Virginia where the Litigation is pending.

**2.11**     "Covered Conduct" means the reporting of Fraud Shield Indicators stating that the consumer's address was either a high-risk or non-residential address (Fraud Shield Indicators 10, 11, 16, and 17).

**2.12**     "Effective Date" means fifteen (15) business days after the later of the date of the Rule 23(b)(2) Judgment or the date of the Rule 23(b)(3) Judgment becomes Final.

**2.13**    "Email Notice" means the notice (in a form substantially similar to that attached as Exhibit 11  and approved by the Court) that will be e-mailed to the Rule 23(b)(3) Settlement Class pursuant to the Notice Plan in the Rule 23(b)(3) Settlement, further described in Section 5.2.4.

**2.14**    "Escrow Account" means a non-interest bearing account at a financial institution to be identified by Class Counsel and approved by Defendant.

**2.15**    "Escrow Agent" means an agent identified by Class Counsel and who has been approved by Defendant whose responsibility it is to manage the Escrow Account.

**2.16**    "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*

**2.17**    "FCRA State Equivalents" means any statute or regulation of any State, the District of Columbia, or Puerto Rico, that has the purpose or effect of regulating the collection, procurement, use, or disclosure of the same or similar information that meets the definition of "consumer report" under the FCRA.

**2.18**    "Final" means the date on which a judgment for the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes becomes final for all purposes because either (a) no objection has been made to the Settlement and no party has sought to intervene, or (b) if any objection or motion to intervene was made, no appeal has been filed and thirty (30) days have lapsed since entry of the judgment, and if a timely appeal has been filed, the appeal is finally resolved, with no possibility of further appellate or other review, resulting in final judicial approval of the Settlement.

**2.19**    "Rule 23 (b)(2) Final Judgment" or "Rule 23 (b)(2) Final Judgment and Order" means a final judgment and order of dismissal entered by the Court in this Litigation granting final approval of the Rule 23(b)(2) Settlement (including certifying the Rule 23(b)(2) Settlement Class), finding the benefits provided to and releases and other consideration

provided by such Classes to be fair, reasonable, and adequate, and entering a judgment according to the terms set forth in this Settlement Agreement.

2.20    "Rule 23 (b)(3) Final Judgment" or "Rule 23 (b)(3) Final Judgment and Order" means a final judgment and order of dismissal entered by the Court in this Litigation granting final approval of the Rule 23(b)(3) Settlement (including certifying the Rule 23(b)(3) Settlement Class), finding the benefits provided to and releases and other consideration provided by such Classes to be fair, reasonable, and adequate, and entering a judgment according to the terms set forth in this Settlement Agreement.

2.21    "Injunctive Relief" means the injunctive relief programs to which the Defendant has agreed in the Rule 23(b)(2) Settlement and which benefits the Rule 23(b)(2) Settlement Class, as further described in Section 4.3.

2.22    "Injunctive Relief Order" means the consent order attached as Exhibit 1 to this Settlement Agreement and proposed by the Parties with respect to the Rule 23(b)(2) Settlement for entry by the Court intended to require and accomplish the Injunctive Relief that in no way imposes any obligation, duty, or responsibility on the Defendant or creates a right on behalf of the Rule 23(b)(2) Settlement Class beyond what is described in the Injunctive Relief.  The Injunctive Relief Order is intended to novate the prior consent order entered by the Court on April 27, 2022.

2.23    "Mail Notice" means the notice (in a form substantially similar to that attached as Exhibit 2 and approved by the Court) that will be mailed to the Rule 23(b)(3) Settlement Class pursuant to the Notice Plan in the Rule 23(b)(3) Settlement, further described in Section 5.2.4.

2.24    "Notice Date" means the date the Settlement Administrator first mailed the Mail Notice.

2.25    "Preliminary Approval" and "Preliminary Approval Order" mean the Court's order tentatively certifying for settlement purposes the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, preliminarily approving the proposed Settlements, approving and directing the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, appointing a Settlement Administrator, and appointing Class Counsel, in a form substantially similar to that attached hereto as Exhibit 3.

2.26    "Released Parties" means Experian and each of its members, owners, shareholders, unitholders, predecessors, successors (including, without limitation, acquirers of all or substantially all of Experian's assets, stock, units, or other ownership interests) and assigns; the past, present, and future, direct and indirect, parents (including, without limitation, holding companies), subsidiaries and affiliates of any of the above; and the past, present, and future principals, trustees, partners, insurers, officers, directors, employees, agents, advisors, attorneys, members, owners, shareholders, unitholders, predecessors, successors, assigns, representatives, heirs, executors, and administrators of any of the above.

2.27    "Reminder Notice" means the notice (in a form substantially similar to that attached as Exhibit 4 and approved by the Court) that will be mailed and/or emailed to the Rule 23(b)(3) Settlement Class pursuant to the Notice Plan in the Rule 23(b)(3) Settlement, as further described in Section 5.2.4.

2.28    "Rule 23(b)(2) Class Settlement" means the settlement and terms included herein by which the Rule 23(b)(2) Settlement Class settles and releases the Rule 23(b)(2) Settlement Class Released Claims.

2.29    "Rule 23(b)(2) Settlement Website" means the website located at the url www.FraudShield.com, which shall provide notice of the Rule 23(b)(2) Settlement to the Rule 23(b)(2) Settlement Class as part of the Rule 23(b)(2) Notice Plan as set forth in Section 4.2.4.

2.30    "Rule 23(b)(2) Internet Notice" means the longer form of notice (in a form substantially similar to that attached as Exhibit 5 and approved by the Court) to the Rule

23(b)(2) Settlement Class under the Rule 23(b)(2) Notice Plan that will be posted on the Rule 23(b)(2) Class Settlement Website, as further described in Sections 4.2.3 and 4.2.4.

**2.31** "Rule 23(b)(2) Notice Plan" means the plan for providing notice of the Rule 23(b)(2) Settlement to the Rule 23(b)(2) Settlement Class under Fed. R. Civ. P. 23(c)(2)(A) and (e)(1), as set forth in Section 4.2.

**2.32** "Rule 23(b)(2) Publication Notice" means the shorter form of notice (in a form substantially similar to that attached as Exhibit 6 and approved by the Court) providing notice of Rule 23(b)(2) Settlement to the Rule 23(b)(2) Settlement Class under the Rule 23(b)(2) Notice Plan that will be published, as further described in Section 4.2.8.

**2.33** "Rule 23(b)(2) Settlement Class" or "Rule 23(b)(2) Settlement Class Members" mean all consumers in the United States for whom Experian, within two years prior to the filing of the Complaint in this action and during its pendency, furnished a consumer report to a third party containing an inaccurate Fraud Shield Indicator No. 10, 11, 16, or 17 indicating that the consumer's address was either a high-risk or non-residential address.

**2.34** For purposes of Section 2.33, the phrase "furnished a consumer report to a third party containing an inaccurate Fraud Shield Indicator No. 10, 11, 16, 17" is intended to mean the transmission by Defendant of one of the enumerated Fraud Shield Indicators to a third party. The Parties dispute whether Fraud Shield Indicators are consumer reports, and Defendant maintains that Fraud Shield Indicators are not consumer reports or part of consumer reports as defined in 15 U.S.C. § 1681a(d), while Plaintiff maintains the opposite.

**2.35** "Rule 23(b)(2) Settlement Class Released Claims" are the claims of each member of the Rule 23(b)(2) Settlement Class and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf that (a) were or could have been alleged in this Litigation, the operative complaints in this Litigation, or any other complaints,

pleadings, or other papers to be filed in this Litigation, relating in any way to the Covered Conduct and (b) are asserted on behalf of a purported class.  Rule 23(b)(3) Settlement Class Released Claims do not include claims separate and unrelated to the Covered Conduct or claims brought under 15 U.S.C. § 1681i or for allegations of inaccuracy other than with regard to the Covered Conduct.  Each member of the Rule 23(b)(2) Settlement Class will acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally, and forever settled, released, and discharged, subject to the limitation herein below.  Notwithstanding the foregoing, the Rule 23(b)(2) Settlement Class Members do not release any claims asserted on a non-representative, individual basis.

**2.36**   "Rule 23(b)(3) Class Settlement" means the settlement and terms included herein by which the Rule 23(b)(3) Settlement Class settles and releases the Rule 23(b)(3) Settlement Class Released Claims.

**2.37**   "Rule 23(b)(3) Class Settlement Website" means the website located at the URL www.fraudshield.com, which shall provide notice of the Rule 23(b)(3) Settlement to the Rule 23(b)(3) Settlement Class, as part of the Rule 23(b)(3) Notice Plan as set forth in Section 5.2.4.

**2.38**   "Rule 23(b)(3) Class Criteria" means the criteria agreed on by the Parties and applied by Plaintiff's expert to the data produced by Experian on December 6, 2021. Specifically, Plaintiff's expert has identified the PIN numbers associated with consumers who meet the following criteria:

(a)   the consumer was the subject of a consumer report issued by Experian between July 1, 2018, and July 31, 2021;

(b)   in connection with the consumer report, Experian transmitted at least one instance of either Fraud Shield Indicator 10 or 16;

(c)     the consumer's address, as provided by Experian, corresponds to an address in Experian's Non-Residential Address Table that was loaded into the table more than seven years prior to the date of the report;

(d)     the address in the Non-Residential Address Table that matched the consumer's address was classified in the Non-Residential Address Table with a Standard Industrial Code ("SIC Code") denoting a business type identified in the Injunctive Relief Order and Section 4.3.1.h below that Experian has agreed as part of the settlement of this matter to no longer classify as a "high risk" business type;

(e)     The consumer's historical Vantage Score as provided by Experian was 650 or greater;

(f)     Experian's records indicate that the consumer report transmitted with the Fraud Shield Indicator was sold for a purpose other than debt collection; and

(g)     the consumer did not have any new tradelines opened within 120 days of the date of the consumer report.

(h)     The Rule 23(b)(3) Settlement Class also includes all consumers in the time period from July 1, 2018 to July 31, 2021 who contacted Experian to inquire about and/or dispute a non-residential or high-risk address indicator.

**2.39**     "Rule 23(b)(3) Internet Notice" means the longer form of notice (in a form substantially similar to that attached as Exhibit 7 and approved by the Court) to the Rule 23(b)(3) Settlement Class under the Rule 23(b)(3) Notice Plan that will be posted on the Rule 23(b)(3) Class Settlement Website, as further described in Section 5.2.4.a.

**2.40**     "Rule 23(b)(3) Notice Plan" means the plan for providing notice of the Rule 23(b)(3) Settlement to the Rule 23(b)(3) Settlement Class under Fed. R. Civ. P. 23(c)(2)(B) and (e)(1), as set forth in Section 5.2.

**2.41**    "Rule 23(b)(3) Settlement Class" or "Rule 23(b)(3) Settlement Class Members" means all individuals on the Rule 23(b)(3) Settlement Class List.

**2.42**    "Rule 23(b)(3) Class List" means a list, to be jointly prepared by Plaintiff's Expert and Experian, which includes the PIN numbers for all individuals whom the expert has determined meet the Rule 23(b)(3) Class Criteria. The Class List shall also include such individuals' most recent name and address information, and any other information required by the Settlement Administrator, as available, as provided by Experian according to the timeline set forth in Section 5.2.1.  The individual's email addresses, to the extent available, shall be provided by the Settlement Administrator and also included in the Class List.  As to class membership, the Rule 23(b)(3) Class List is determinative. No individual shall be bound by the Rule 23(b)(3) Settlement Class Release or entitled to the benefits of membership in the Rule 23(b)(3) Settlement Class unless such individual appears on the Rule 23(b)(3) Class List.

**2.43**    "Rule 23(b)(3) Settlement Class Released Claims" means claims of each member of the Rule 23(b)(3) Settlement Class and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf that were actually asserted or that could have been asserted based on the allegations in the operative complaint and/or the Covered Conduct in this Litigation. Rule 23(b)(3) Settlement Class Released Claims do not include claims separate and unrelated to the Covered Conduct or claims brought under 15 U.S.C. § 1681i or for allegations of inaccuracy other than with regard to the Covered Conduct. The Rule 23(b)(3) Settlement Class Released Claims include claims for actual damages, statutory damages, punitive damages, attorneys' fees, and any and all relief of any kind whatsoever, including claims asserted on a class, mass, or collective action basis and claims asserted on an individual, non-representative basis.

**2.44** "Service Payment" means the one-time payment to the Named Plaintiff, for the time and resources she has put into representing the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, as set forth in Sections 4.6 and 5.8, subject to approval by the Court.

**2.45** "Settlement" means the exchange of consideration among the Rule 23(b)(2) Settlement Class, the Rule 23(b)(3) Settlement Class, Defendant, and Class Counsel reflected in and contemplated by this Settlement Agreement and constituting the Rule 23(b)(2) Class Settlement and the Rule 23(b)(3) Class Settlement.

**2.46** "Settlement Administrator" means, for all matters related to the Rule 23(b)(2) Class Settlement, Rust/Kinsella; for all matters related to the Ruler 23(b)(3) Class Settlement, JND Legal Administration; or such other person or entities agreed to by the Parties, subject to Court approval.

**2.47** "Settlement Agreement" means this Settlement Agreement and Release, including its Exhibits.

**2.48** "Rule 23(b)(3) Settlement Fund" means the amount of $22,450,000 that Defendant has agreed to pay for the benefit of the Rule 23(b)(3) Settlement Class Members, as further described in Section 5.5.

**2.49** "Rule 23(b)(3) Net Settlement Fund" means the Rule 23(b)(3) Settlement Fund less court approved reductions for Rule 23(b)(3) Attorneys' Fees, Expenses, a Class Representative Service Payment, and a payment to the Settlement Administrator for the costs of Rule 23(b)(3) Notice and administration, including without limitation, any taxes due from the Rule 23(b)(3) Settlement Fund.

**2.50** "Sunset Date" means five years from the Effective Date.

## 3.   MOTION FOR PRELIMINARY APPROVAL

As soon as reasonably practicable after the signing of this Settlement Agreement and no later than August 19, 2022, the Named Plaintiff shall file with the Court a Motion for

Preliminary Approval of the Proposed Rule 23(b)(2) Class Settlement and the Rule 23(b)(3) Class Settlement, Conditional Certification of the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, Appointment of Class Counsel, Approval and Direction of the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, and Appointment of the Settlement Administrator that seeks entry of an order that would, for settlement purposes only:

    a)    preliminarily approve this Settlement Agreement;

    b)    certify a conditional settlement class under Fed. R. Civ. P. 23(b)(2) composed of the Rule 23(b)(2) Settlement Class Members;

    c)    certify a conditional settlement class under Fed. R. Civ. P. 23(b)(3) composed of the Rule 23(b)(3) Settlement Class Members;

    d)    appoint Class Counsel;

    e)    approve the proposed Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, including the forms of notice substantially similarly to those attached as Exhibits 2, 4, 5, 6, 7 and 11; and

    f)    appoint the Settlement Administrator.

**4.    SETTLEMENT PROVISIONS SPECIFIC TO RULE 23(B)(2) SETTLEMENT**

**4.1    <u>Certification of Rule 23(b)(2) Settlement Class</u>**

**4.1.1    Class Certification**

For purposes of settlement only, and upon the express terms and conditions set forth in this Settlement Agreement, Named Plaintiff and Defendant agree to seek certification as a mandatory class of the Rule 23(b)(2) Settlement Class.

**4.1.2    No Right to Opt Out**

Because the Rule 23(b)(2) Settlement Class is being certified as a mandatory class under Fed. R. Civ. P. 23(b)(2), and because the agreed-upon changes to Experian's business practices

will benefit all Rule 23(b)(2) Settlement Class Members, Rule 23(b)(2) Settlement Class Members shall not be permitted to opt out of the Rule 23(b)(2) Settlement Class.

### 4.1.3   Class Certified for Settlement Purposes Only

Experian disputes that the elements of Federal Rule of Civil Procedure 23 are satisfied for purposes of a litigation class, disputes that a litigation class would be manageable, and denies that any litigation class may be certified in this Litigation.  However, solely for purposes of avoiding the expense and inconvenience of further litigation, Experian does not oppose certification of the Rule 23(b)(2) Settlement Class for settlement purposes only.  No statements, representations, or agreements made by Experian in connection with the Settlement may be used to establish any of the elements of class certification, other than for settlement purposes. Further, nothing in this Settlement Agreement shall prevent Defendant from opposing class certification or seeking de-certification of the conditionally certified tentative Rule 23(b)(2) Settlement Class if any court concludes that this settlement may not be approved.

### 4.2   Rule 23(b)(2) Notice Plan

The Rule 23(b)(2) Notice Plan contemplates that entirely new notice will be given to the Rule 23(b)(2) Class Members, as set forth herein, notwithstanding the prior notice that occurred in connection with the settlement approved on April 27, 2022.

### 4.2.1   Rule 23(b)(2) Settlement Class Notice

Under Fed. R. Civ. P. 23, individual notice is not required for a class certified under Fed. R. Civ. P. 23(b)(2), and, thus, such notice will not be sent to the Rule 23(b)(2) Settlement Class. The Parties and the Settlement Administrator have developed an appropriate and reasonable Rule 23(b)(2) Notice Plan to reach Rule 23(b)(2) Settlement Class Members to provide notice to Rule 23(b)(2) Settlement Class Members of the terms of the proposed Settlement, before the Court conducts a hearing for final approval.  The Parties will recommend to the Court this Rule 23(b)(2) Notice Plan, which will be administered by the experienced and

highly qualified Settlement Administrator, and which will employ at least four different methods for circulating information about the settlement to Rule 23(b)(2) Settlement Class Members:

a)  The Rule 23(b)(2) Class Settlement Website will contain the Preliminary Approval Order, the Rule 23(b)(2) Internet Notice, the Settlement Agreement, and other relevant information regarding the Court-approval process as approved by the Parties and/or as referenced in Section 4.2.4;

b)  A toll-free telephone number will be established to provide Rule 23(b)(2) Settlement Class Members with access to recorded information, in both English and Spanish, regarding the settlement;

c)  Digital media will be developed and placed using advertising services over a sufficient time period to notify potential Rule 23(b)(2) Settlement Class Members about the settlement; and

d)  Rule 23(b)(2) Publication Notice will be published in traditional print media as recommended by the Settlement Administrator, for one circulation period in the next available issue.

In accordance with the dates established in the Preliminary Approval Order, the Settlement Administrator shall implement the Rule 23(b)(2) Notice Plan and other actions described in this Section.  As needed to avoid confusion, the Rule 23(b)(2) Notices will include appropriate references and links to the Rule 23(b)(3) Class Settlement and related Notices, and will also contain information about how the instant Rule 23(b)(2) consideration and release supersedes the previous Rule 23(b)(2) settlement in this matter.

### 4.2.2   Court Appointment and Retention of Settlement Administrator

At the Preliminary Approval hearing, the Parties will propose that the Court appoint Rust/Kinsella as the Settlement Administrator for the Rule 23(b)(2) Class Settlement. The

Settlement Administrator will facilitate the notice and administration process by assisting the Parties and providing professional guidance in the implementation of the Rule 23(b)(2) Notice Plan.

### 4.2.3 Rule 23(b)(2) Internet Notice

The Parties and the Settlement Administrator have agreed they will jointly recommend the Rule 23(b)(2) Internet Notice, substantially in the form attached as Exhibit 5, to the Court for approval. The Rule 23(b)(2) Internet Notice is designed to provide comprehensive and reasonable notice of the terms of the Settlement. The Rule 23(b)(2) Internet Notice shall be posted on the Rule 23(b)(2) Class Settlement Website.

### 4.2.4 Rule 23(b)(2) Class Settlement Website

The Settlement Administrator will create and conform the Rule 23(b)(2) Class Settlement Website as described herein no later than fifteen (15) business days after Preliminary Approval.

The Settlement Administrator will post important settlement documents such as the Settlement Agreement, the Rule 23(b)(2) Internet Notice (in both English and Spanish), and the Preliminary Approval Order as mutually approved by the Parties. In addition, the Class Settlement Website will include a section for frequently asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the final approval hearing is scheduled, when the Rule 23(b)(2) Final Judgment and Order has been entered, and when the Effective Date is expected or has been reached.

The Settlement Administrator will maintain the Rule 23(b)(2) Class Settlement Website for one year from either (1) the Effective Date of both the Rule 23(b)(2) and Rule 23(b)(3) Class Settlements, or (2) the date on which either settlement is finally terminated or otherwise not approved by the Court. Thereafter, the Settlement Administrator will transfer ownership of

the URL to the Defendant.  Defendant shall maintain the website in static form until the Sunset Date.

### 4.2.5   Toll-Free Telephone Number

The Settlement Administrator will create and maintain a toll-free telephone number to be activated no later than fifteen (15) business days after Preliminary Approval which number will be available 24 hours per day.  The toll-free number will provide Rule 23(b)(2) Settlement Class Members with access to recorded information, in both English and Spanish, related to the settlement. The Toll-Free Number will also provide class members whose questions are unanswered by the recorded information the ability to request a call back. The Settlement Administrator shall respond to such inquiries promptly, with an average return-call time of the same or next business day.  The Settlement Administrator will terminate the toll-free telephone number either (1) 60 days after the Effective Date, or (2) the date on which the settlement is terminated or otherwise not approved by any court.

### 4.2.6   Digital Media Advertisements

The Settlement Administrator will take steps to attract Rule 23(b)(2) Settlement Class Members to the Class Settlement Website by working with digital media services to develop and place digital advertisements over a sufficient time period to notify potential Rule 23(b)(2) Settlement Class Members about the Settlement.

### 4.2.7   Class Counsel Contact Information

Class Counsel shall maintain an e-mail address to receive class member communications and a reference to that e-mail address shall be included on the Class Settlement Website. The Parties shall confer and cooperate to ensure that the Class Settlement Website continues to include substantive information explaining the settlement and how it may be effectively used by class members to obtain the benefits intended.

### 4.2.8    Rule 23(b)(2) Publication Notice

Based on the recommendations of the Settlement Administrator, the Parties will jointly recommend the Rule 23(b)(2) Publication Notice, substantially in the form attached as Exhibit 6, to the Court for approval.  The Rule 23(b)(2) Publication Notice is designed to provide the Rule 23(b)(2) Settlement Class Members information about the settlement and direct them to the Rule 23(b)(2) Internet Notice posted on the Rule 23(b)(2) Class Settlement Website.

The Settlement Administrator will publish the Rule 23(b)(2) Publication Notice in traditional print media for one circulation cycle.

### 4.2.9    CAFA Notice for the Rule 23(b)(2) Settlement

The Parties agree Defendant shall serve notice of the Settlement that meets the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, on the appropriate federal and state officials not later than ten days after the filing of this Settlement Agreement with the Court.  Defendant must accomplish such service at their own expense and may use a third party to do so, except as otherwise provided for in this Settlement Agreement.

Defendant shall file with the Court a certification of the date upon which the CAFA Notice was served.

### 4.2.10   Costs

Defendant shall be responsible for the costs associated with the Rule 23(b)(2) Notice Plan up to a maximum of $350,000.  As funds are needed, the Settlement Administrator will bill Defendant, and Defendant shall pay these amounts directly to the Settlement Administrator. Such notice costs are *in addition* to the $22,450,000 Defendant has agreed to pay as consideration to the Rule 23(b)(3) Settlement Class as the Rule 23(b)(3) Settlement Fund.  Any notice costs for the Rule 23(b)(2) Settlement Class that are in excess of $350,000 shall be borne by Class Counsel, without right to recompense from the Settlement Fund for such expenses.  If

the Settlement Administrator notifies the Parties that the costs will be greater than $350,000,

Class Counsel shall disclose that to the Court.

### 4.3     Injunctive Relief

#### 4.3.1    Agreed Injunctive Relief

Subject to the terms and conditions of this Settlement Agreement, the Named Plaintiff

and Defendant have agreed to move jointly for the Court to enter an injunction applicable to

Defendant by consent, which will contain only the terms of the Injunctive Relief as described

in Sections 4.3.1.a–4.3.1.j, and as set forth in the Injunctive Relief Order.  The Named Plaintiff

pursued this Litigation to address certain practices relating to Defendant's Fraud Shield

product. The Named Plaintiff argued Defendant's practices violated the FCRA.   Defendant

contests Named Plaintiff's allegations and otherwise denies Defendant violated the FCRA, or

that the challenged practices relating to the Fraud Shield product would be governed by the

FCRA.  Nevertheless, in order to resolve this dispute, Defendant has agreed to an injunction

requiring the implementation of the following business changes that represent a substantial shift

from Defendant's current business practices.

The Parties will move the Court for entry of the Injunctive Relief Order attached as

Exhibit 1 to this Settlement Agreement, which if approved would supersede that relief stated

within Paragraph 12 of the April 27, 2022 Order (ECF 112) and will instead enjoin the

Defendant as follows:

- **4.3.1.a**    Experian will add a mutually agreed page to its own consumer education website blog describing high-risk and non-residential address Fraud Shield Indicators and what they mean, and providing instructions on how to dispute the Fraud Shield Indicator if the consumer contends a non-residential or high-risk address designation is incorrect. Experian will employ meta and H1 tags and search engine optimization in the same way

19

as it does for other blog pages on its site that describe errors in consumer reports and how consumers can address them. The text of the page Experian has agreed to post is attached hereto as Exhibit 8.

- **4.3.1.b**  Experian will change its consumer file disclosures to specifically indicate that Experian may flag the consumer's address(es) as non-residential and/or high risk. The disclosure will include information that allows the consumer to understand the substance of what Experian conveyed related to Fraud Shield. For a period of at least 5 years after the effective date, all consumer file disclosures containing a high-risk or non-residential address Fraud Shield indicator must include a paragraph explaining the indicator and providing instructions on how to dispute it. This paragraph may be included in the same place, or as close to such place as is practicable, that Experian includes other legally required information in its file disclosures.  The specific language to be included in consumer disclosures and a description of how such information shall be incorporated is attached hereto as Exhibit 9.

- **4.3.1.c**  Experian will change its dispute investigation process for handling high-risk and non-residential address Fraud Shield indicator disputes.  Specifically, if a consumer contacts Experian to dispute the accuracy of a high-risk or non-residential address Fraud Shield indicator, Experian will accept the consumer's representation that the address is residential and not a business, and will change the status of the address at issue in the non-residential address table within FileOne.  This will prevent further Fraud Shield indicators from being returned in connection with the address and will prevent the address from returning to active status upon

20

update/refresh of the table.

- **4.3.1.d** By no later than November 12, 2022, Experian will reconfigure the update procedure for importing data into the Non-Residential Address table in FileOne to employ a "full file refresh," meaning that, each month, Experian will import an updated file from its vendor in a manner that overwrites all pre-existing data in that table.

- **4.3.1.e** Experian will suppress or remove from the Non-Residential Address table any address that its vendor is reporting to Experian that Experian has reason to believe the vendor has not updated or otherwise verified for at least six years;

- **4.3.1.f** By no later than November 12, 2022, Experian will "retire" (i.e., stop publishing) Fraud Shield indicator 21;

- **4.3.1.g** By no later than December 31, 2024, Experian will "retire" (i.e., stop publishing) Fraud Shield indicators 4 and 26;

- **4.3.1.h** Experian will substantially reduce the table of high-risk SIC Codes that are relied upon by Fraud Shield indicators 10 and 16 to be consistent with those listed on Exhibit 10;

- **4.3.1.i** With respect to Fraud Shield indicators 11 and 17, Experian will revise the message that is delivered to customers as follows:

    FSI 11: "Inquiry address: reported as being associated with a business."

    FSI 17: "On-file address: reported as being associated with a business."

- **4.3.1.j** With respect to Fraud Shield Indicators 11 and 17, Experian will revise their description in the Fraud Shield Reference Guide as follows:

FSI 11: "The inquiry address has been reported as being associated with a business."

FSI 17: "One of the consumer's on-file addresses has been reported as being associated with a business."

### 4.3.2    Timetable for Implementation of Injunctive Relief

Unless otherwise specifically indicated above, Defendant agrees to implement the injunctive relief set forth in 4.3.1 within ninety (90) days from the Effective Date of the Rule 23(b)(2) Class Settlement.

### 4.3.3    Sunset Date

The Injunctive Relief obligations defined in Section 4.3.1 will expire five years from the Effective Date or at such earlier time as Defendant ceases to engage in the Covered Conduct. Should Defendant believe that it has ceased engaging in the Covered Conduct, Defendant shall provide a notice regarding same to Class Counsel, describing any changes Experian has made. The Court shall retain jurisdiction to resolve any disputes about the Sunset Date or the scope of any alleged cessation of the Covered Conduct.

### 4.3.4    Limitations on Injunctive Relief

Any action by Defendant determined in good faith to be reasonably necessary to comply with any federal, state, or local law, enactment, regulation, or judicial ruling shall not constitute a breach of the Settlement Agreement.  In the event any obligation Defendant has agreed to undertake as part of the Injunctive Relief would be deemed unlawful with any future federal, state, or local law, enactment, regulation, or judicial ruling, then Defendant will file a motion for miscellaneous relief, seeking to be released from performing such obligation.  Class Counsel shall file any brief in opposition within twenty (20) days after the service of Defendant's motion for miscellaneous relief (which may be extended by the Court for good cause).  Should Class Counsel not file any brief in opposition within the twenty (20)

day period, the Court shall presume that Class Counsel does not oppose the relief requested in Defendant's motion for miscellaneous relief.  Defendant shall file any reply brief in support of their motion for miscellaneous relief within seven (7) days after the filing of any brief in opposition.

### 4.4    Objections from Rule 23(b)(2) Settlement Class Members

Any Rule 23(b)(2) Settlement Class Member who wants to object to this Agreement may do so only as follows.

#### 4.4.1    Notice of Intent to Object

To be effective, an objection must be made by an individual Rule 23(b)(2) Settlement Class Member, not as a member of a group or subclass and, except in the case of a deceased or incapacitated Rule 23(b)(2) Settlement Class Member, not by the act of another person acting or purporting to act in a representative capacity.  For an objection to be effective, any such objection must be filed with the Clerk of the United States District Court, Eastern District of Virginia, 701 East Broad Street, Richmond, Virginia 23219, not later than thirty (30) days before the Final Fairness Hearing.

The Settlement Administrator shall notify the Parties of any objection within three business days of the objection's receipt.

#### 4.4.2    Contents of Objection

To be effective, an objection must substantially contain: (a) the objecting Rule 23(b)(2) Settlement Class Member's name, address, e-mail address, and telephone number; (b) the name of this Litigation and the case number; and (c) a written statement detailing the specific basis for each the objection.

#### 4.4.3    Additional Contents for Represented Members

To be effective, an objection submitted through an attorney must contain, in addition to the information set forth in Section 4.4.2: (a) the identity, mailing address, email address, and

phone number for the counsel by whom the Rule 23(b)(2) Settlement Class Member is represented; (b) a statement of whether the objecting Rule 23(b)(2) Settlement Class Member or counsel intends to appear at the Final Fairness Hearing; and (c) a written statement detailing the specific basis for each objection, including any legal and factual support that the objecting Rule 23(b)(2) Settlement Class Member wishes to bring to the Court's attention and any evidence the objecting Rule 23(b)(2) Settlement Class Member wishes to introduce in support of the objection.

### 4.4.4   Responses to Objections

Either Party may respond to an objection.

### 4.4.5   No Payments to Objectors or Objectors' Counsel

The Parties, Class Counsel, and Defendant's Counsel shall not make any payments to any person or counsel who files an objection in exchange for the withdrawal, dismissal or release of the objection, except with approval of the Court.  This provision applies throughout the Litigation, including during the pendency of any appeal, and also operates to bar such payments in exchange for the withdrawal or dismissal of the appeal, unless such payment is approved by the Court or the applicable appellate court.

### 4.5   **Rule 23(b)(2) Settlement Class Release**

### 4.5.1   Scope of Release

Each Rule 23(b)(2) Settlement Class Member shall be conclusively deemed to have fully, finally, and forever settled, released and discharged all of the Released Parties from the Rule 23(b)(2) Released Claims. The release and Released Claims in this Settlement Agreement are expressly intended to modify by novation the release and Released Claims stated in the April 27, 2022 Order (ECF 112).

After entering into this Settlement Agreement, Named Plaintiff or the Rule 23(b)(2) Settlement Class Members may discover facts other than, different from, or in addition to, those

that they know or believe to be true with respect to the Rule 23(b)(2) Settlement Class Released

Claims.  Named Plaintiff and the Rule 23(b)(2) Settlement Class Members expressly waive and

fully, finally, and forever settle and release any known or unknown, suspected or unsuspected,

contingent or non-contingent legal or equitable Released Claims, whether or not concealed or

hidden, and without regard to the subsequent discovery or existence of such other, different, or

additional facts.

### 4.5.2    State-Specific Waivers

The Rule 23(b)(2) Settlement Class Members acknowledge that they are aware that they

may hereafter discover facts in addition to or different from those that they or Class Counsel

now know or believe to be true with respect to the subject matter of this Litigation and the Rule

23(b)(2) Settlement Class Released Claims, but it is their intention to, and they do upon the

Effective Date of this Settlement, fully, finally, and forever settle and release any and all Rule

23(b)(2) Settlement Class Released Claims, without regard to the subsequent discovery or

existence of such different additional facts.  Rule 23(b)(2) Settlement Class Members waive

any and all rights and benefits afforded by California Civil Code § 1542, which provides as

follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE
> CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO
> EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE
> RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
> MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE
> DEBTOR OR RELEASED PARTY.

Rule 23(b)(2) Settlement Class Members further waive any and all rights and benefits afforded

by South Dakota Code § 20-7-11, which provides as follows:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his favor at the time of executing the release, which if known
> by him must have materially affected his settlement with the debtor.

25

Rule 23(b)(2) Settlement Class Members and Class Counsel understand and acknowledge the significance of this waiver of California Civil Code Section 1542, South Dakota Code Section 20-7-11, and/or any other applicable federal or state law relating to limitations on releases.

### 4.5.3   Binding Release

Upon the Effective Date, no default by any person in the performance of any covenant or obligation under this Settlement Agreement or any order entered in connection therewith shall affect the dismissal of the Litigation, the *res judicata* effect of the Rule 23(b)(2) Final Judgment and Order, the foregoing releases, or any other provision of the Rule 23(b)(2) Final Judgment and Order; provided, however, that all other legal and equitable remedies for violation of a court order or breach of this Settlement Agreement shall remain available to all Parties.

### 4.6   Service Award and Attorneys' Fees and Costs.

On April 27, 2022, the court approved a service award and attorneys' fees and costs in the aggregate of $2,250,000.00 to be paid by or on behalf of Experian in connection with the injunctive relief settlement previously agreed upon by the parties, and entered as a final order by the court. This amount was intended by Experian to compensate the class counsel in full for their work obtaining injunctive relief on behalf of the Rule 23(b)(2) settlement class.  From this aggregate payment, the court approved a $7,500 service award to be paid to the named plaintiff in connection with the Rule 23(b)(2) settlement.  Notwithstanding the novation of the Parties' prior agreement, the Parties hereby agree that Experian will pay the Named Plaintiff a Service Award of $7,500 and make a payment of $2,242,500 to Class Counsel as attorneys' fees and costs for the Rule 23(b)(2) Class Settlement.  The deadline for Experian to make these payments shall be December 1, 2022.

### 4.7    April 27, 2022 Order Effective Until Final Approval of Novation

Unless and until the Rule 23(b)(2) Final Judgment and Order contemplated by this Settlement Agreement is entered, is past any right of appeal and thereby takes effect, the prior Rule 23(b)(2) settlement approved by the Court's April 27, 2022 Order shall remain in full force and effect, and all obligations and deadlines imposed by that Order shall remain and become final.

## 5.    Settlement Provisions Specific to Rule 23(b)(3) Class Settlement

### 5.1    Certification of Rule 23(b)(3) Settlement Class

#### 5.1.1    Class Certification

For purposes of settlement only, and upon the express terms and conditions set forth in this Settlement Agreement, Named Plaintiff and Defendant agree to seek certification of the Rule 23(b)(3) Settlement Class.

#### 5.1.2    Class Certified for Settlement Purposes Only

Experian disputes that the elements of Federal Rule of Civil Procedure 23 are satisfied for purposes of a litigation class, disputes that a litigation class would be manageable, and denies that any litigation class may be certified in this Litigation. However, solely for purposes of avoiding the expense and inconvenience of further litigation, Experian does not oppose certification of the Rule 23(b)(3) Settlement Class for settlement purposes only.  No statements, representations, or agreements made by Experian in connection with the Settlement may be used to establish any of the elements of class certification, other than for settlement purposes. Furthermore, nothing in this Settlement Agreement shall prevent Defendant from opposing class certification or seeking de-certification of the conditionally certified tentative Rule 23(b)(3) Settlement Class if final approval of this Settlement Agreement is not obtained, or not upheld on appeal, including review by the United States Supreme Court, for any reason, or if

27

any of the conditions exist that permit Defendant to terminate this Settlement Agreement in accordance with Section 7.

### 5.2      Rule 23(b)(3) Notice Plan

#### 5.2.1    Preparation and Production of Class List

Plaintiff's expert has provided Defendant with a list of PINs for the majority of consumers who should be included on the Rule 23(b)(3) Class List.  Experian will be providing certain supplemental data to Plaintiff's expert on or before August 24, 2022, which may result in the identification of additional consumers who meet the criteria for inclusion on the Class List.  By no later than August 31, 2022, Plaintiff's expert will evaluate the supplemental data and provide to Experian the full list of PINs for consumers who should be included on the Rule 23(b)(3) Class List.  On or before September 7, 2022, or within fourteen (14) days of the issuance of the Rule 23(b)(3) Preliminary Approval Order, whichever is later, Defendant shall provide additional personal identifying information required to complete the Rule 23(b)(3) Class List to Class Counsel and the Settlement Administrator.  Class Counsel shall have three (3) business days to review the Rule 23(b)(3) Class List. Should Class Counsel not raise any objections to the Rule 23(b)(3) Class List, the list shall then become final.

The Class List shall be designated as Confidential pursuant to the Protective Order, ECF No. 26.  For the sake of clarity, Class Counsel represents that it will not use the information in the Class List for any purpose other than administration of the Rule 23(b)(3) Settlement and otherwise assisting class members with issues addressed in the Litigation.  Class Counsel shall not use the Class List for purposes of representing any opt-outs as further described in Section 5.3.3.

#### 5.2.3    Court Appointment and Retention of Settlement Administrator

At the Preliminary Approval hearing, the Parties will propose that the Court appoint JND as Settlement Administrator.  The Settlement Administrator will facilitate the notice and

administration process by assisting the Parties and providing professional guidance in the implementation of the Rule 23(b)(3) Notice Plan.

### 5.2.4   Rule 23(b)(3) Settlement Notice and Claims

#### 5.2.4a Notice

After consultation with the Settlement Administrator, Named Plaintiff and Defendant will jointly recommend the following Rule 23(b)(3) Notice Plan.  All notices and reminder notices shall be sent by U.S. Mail.  For all Rule 23(b)(3) Settlement Class Members for whom the Settlement Administrator is able to locate email addresses, all notices and reminder notices shall be sent by both email and U.S. Mail.  Email notices shall include a link to the Rule 23(b)(3) Settlement Class Website where Settlement Class Members can submit claims online.

The Mail Notice, substantially in the form attached as Exhibit 2, shall be a double-sided tear off postcard, with a claim form included.  Both the Mail Notice and the Email Notice shall be personalized to indicate the specific address(es) for the consumer that Plaintiff's expert identified as matching an address on the Non-Residential Address Table and/or to include a unique claim code that class members can use to view that address at the Settlement Website.

Thirty (30) business days after the Court enters Preliminary Approval, the Settlement Administrator will send the Mail Notice in both Spanish and English via U.S. Mail, postage prepaid requesting either forwarding service or change service to each Rule 23(b)(3) Settlement Class Member identified on the Class List.  The Mail Notice will be sent to the last known physical address reflected in the Class List, unless the Settlement Administrator locates a more recent address for the Class Member by cross-checking the Class List against the National Change of Address Database and other publicly available databases for obtaining up to date mailing addresses.  For up to forty-five (45) days following the mailing of the Mail Notice, the Settlement Administrator will re-mail the Mail Notice via U.S. Mail, postage prepaid, to

updated addresses of Rule 23(b)(3) Settlement Class Members to the extent that it receives address change notifications from the U.S. Postal Service.

At the same time that the Mail Notice is sent, the Settlement Administrator shall also send Email Notice.

For each Rule 23(b)(3) Settlement Class Member who has not submitted a claim, in the Settlement Administrator's discretion it may send reminder notices, in the form attached as Exhibit 4, by e-mail or post-card.

No later than seven days before the final fairness hearing in this Litigation, the Settlement Administrator will file proof of the mailing of the Mail and Email Notices with the Court.  Neither the Parties nor the Settlement Administrator will have any further obligation to send notice of the Settlement to the Rule 23(b)(3) Settlement Class Members.

The Settlement Administrator also will create and maintain the Rule 23(b)(3) Class Settlement Website to be activated no later than fifteen (15) business days after Preliminary Approval of the Rule 23(b)(3) Settlement.  The Rule 23(b)(3) Class Settlement Website will include important settlement documents, such as the Settlement Agreement, the Mail Notice, the Rule 23(b)(3) Internet Notice, and the Preliminary Approval Order as mutually approved by the Parties and/or as may be ordered by the Court.  In addition, the Rule 23(b)(3) Class Settlement Website will include a description of the Settlement Fund, a section for frequently asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the final approval hearing is scheduled, when the Rule 23(b)(3) Final Judgment and Order has been entered, when the Effective Date is expected or has been reached, and when payment will likely be mailed as approved by the Parties.  The Rule 23(b)(3) Class Settlement Website will be in both Spanish and English.  Finally, the Rule 23(b)(3) Class Settlement Website will have functionality whereby Rule 23(b)(3) Class Members can submit claims.

The Settlement Administrator will create and maintain a toll-free telephone number to be activated no later than fifteen (15) business days after Preliminary Approval which number will be available 24 hours per day through the Effective Date. The toll-free number will provide Rule 23(b)(3) Settlement Class Members with access to recorded information, in both English and Spanish, related to the settlement. The Toll-Free Number will also provide class members whose questions are unanswered by the recorded information the ability to request a call back. The Settlement Administrator shall respond to such inquiries promptly, with an average return-call time of the same or next business day.

### 5.2.4b Submission of Claims

In order to successfully submit a claim, a Rule 23(b)(3) Class Member shall submit a completed claim form, either online or by mail, within 75 days of the Mail Notice. A successful claimant must attest under the penalty of perjury that the address included on their notice – that is, the address Plaintiff's Expert matched to the Non-Residential Address Table – was in fact a residential address. Rule 23(b)(3) Settlement Class Members who are class members by virtue of the fact they contacted Experian to inquire about and/or dispute a non-residential or high-risk address indicator shall be required to attest that they were harmed by a Fraud Shield indicator and shall be presented with the option to attest that the address that was flagged by Experian as being high risk or non-residential is residential, in which case such address shall be deactivated by Experian in the Non-Residential Address Table, as described herein in paragraph 4.3.1.c.

### 5.2.5   CAFA Notice for the Rule 23(b)(3) Settlement

The Parties agree that Defendant shall serve notice of the settlement that meets the requirements of CAFA, 28 U.S.C. § 1715 on the appropriate federal and state officials not later than ten days after the filing of this Settlement Agreement with the Court. Defendant may

accomplish such service through the use of a third party, and at their own expense except as otherwise provided for in this Settlement Agreement.

Defendant shall file with the Court a certification of the date upon which the CAFA Notice was served.

### 5.2.6   Costs

Costs associated with the Rule 23(b)(3) Notice Plan shall be paid for out of the Settlement Fund, subject to Court approval.

### 5.3   <u>Procedure for Opt-Outs</u>

### 5.3.1   Opt-Out Process

As described in Section 5.2.4, the Mail Notice will contain information about how a Rule 23(b)(3) Settlement Class Member may opt out of the Rule 23(b)(3) Settlement, including the potential implications of doing so.  A proposed Rule 23(b)(3) Settlement Class Member may request to be excluded from the Rule 23(b)(3) Settlement Class by sending and not revoking a written request for exclusion to the Settlement Administrator, addressed to "[**insert name and address**]."  To be valid, the proposed Rule 23(b)(3) Settlement Class Member's opt-out request must contain the proposed Rule 23(b)(3) Settlement Class Member's name, original signature, current postal address, and current telephone number, and a statement that the proposed Rule 23(b)(3) Settlement Class Member wants to be excluded from the class of Rule 23(b)(3) Settlement Class Members.  To be valid, opt-out requests must be postmarked no later than ninety days after the Notice Date.  To be valid, a request must not purport to opt out of the class of the Rule 23(b)(3) Settlement Class Members for a group, aggregate, or class involving more than one consumer.  Requests for exclusions that do not substantially comply with the requirements in this Section 5.3.1 are invalid.  A Rule 23(b)(3) Settlement Class Member may revoke an opt-out request in writing. To be valid, opt-out revocations must be postmarked no later than the date of the Rule 23(b)(3) Final Judgment and Order.

### 5.3.2   List of Opt-Outs

No later than five business days after the deadline for submission of opt-out requests, the Settlement Administrator must provide to Class Counsel and Defendant's Counsel a complete list of all persons who have validly opted out of the Rule 23(b)(3) Settlement together with copies of the opt-out requests.  Class Counsel and Defendant's Counsel shall not disclose or use the list except for the purpose of carrying out their responsibilities under this Agreement, and for purposes of memorializing the list of opt-outs in connection with proceedings seeking Rule 23(b)(3) Final Judgment.

### 5.3.3   Representation of Opt-Outs

Class Counsel agree that this Settlement Agreement is fair, reasonable, and in the best interest of the Rule 23(b)(3) Settlement Class Members.  Based upon unique circumstances here, Class Counsel agree that Rule 23(b)(3) Settlement Class Members who seek to opt-out should be represented by counsel who do not agree that the Settlement Agreement is fair, reasonable, and in the best interest of the Rule 23(b)(3) Settlement Class Members. Accordingly, Class Counsel shall, if contacted, refer any such opt-outs to the applicable state bar association or other referral organization for appropriate counsel in any subsequent litigation of the claims addressed in this Settlement Agreement against Defendant.

### 5.3.4   Effect of Opt-Out Rate

In the event that 1.00% or more of potential Rule 23(b)(3) Settlement Class Members, as identified on the Class List, elect to opt out of the Rule 23(b)(3) Settlement, Experian shall have the right to terminate this settlement, as further described in Section 7 below, and such termination shall not be deemed a breach of the Settlement Agreement.

### 5.4   <u>Objections from Rule 23(b)(3) Settlement Class Members</u>

Any Rule 23(b)(3) Settlement Class Member who does not opt out, but who instead wants to object to this Agreement may do so only as follows.

### 5.4.1   Notice of Intent to Object

To be effective, an objection must be made by an individual Rule 23(b)(3) Settlement Class Member, not as a member of a group or subclass and, except in the case of a deceased or incapacitated Rule 23(b)(3) Settlement Class Member, not by the act of another person acting or purporting to act in a representative capacity.

For an objection to be effective, any such objection must be filed with the Clerk of the United States District Court, Eastern District of Virginia, 701 East Broad Street, Richmond, Virginia 23219, not later than thirty (30) days before the Final Fairness Hearing.

### 5.4.2   Contents of Objection

To be effective, an objection must substantially contain: (a) the objecting Rule 23(b)(3) Settlement Class Member's name, address, and telephone number; (b) the name of this Litigation and the case number; and (c) a written statement detailing the specific basis for each objection.

### 5.4.3   Additional Contents for Represented Members

To be effective, an objection submitted through an attorney must contain, in addition to the information set forth in Section 5.4.2: (a) the identity, mailing address, email address, fax number, phone number for the counsel by whom the Rule 23(b)(3) Settlement Class Member is represented; (b) a statement of whether the objecting Rule 23(b)(3) Settlement Class Member intends to appear at the Final Fairness Hearing; and (c) a written statement detailing the specific basis for each objection, including any legal and factual support that the objecting Rule 23(b)(3) Settlement Class Member wishes to bring to the Court's attention and any evidence the objecting Rule 23(b)(3) Settlement Class Member wishes to introduce in support of the objection.

### 5.4.4   No Payments to Objectors or Objectors' Counsel

The Parties, Class Counsel, and Defendant's Counsel shall not make any payments to any person or counsel who files an objection in exchange for the withdrawal, dismissal or release of the objection, except with approval of the Court.  This provision applies throughout the Litigation, including during the pendency of any appeal, and also operates to bar such payments in exchange for the withdrawal or dismissal of the appeal, unless such payment is approved by the Court or the applicable appellate court.

### 5.5     Rule 23(b)(3) Settlement Fund

Within fourteen (14) days after the Effective Date, Defendant shall deposit the Rule 23(b)(3) Settlement Fund into the Escrow Account.  The Escrow Account will be managed by the Settlement Administrator.

### 5.6     Settlement Fund Tax Status

### 5.6.1   Qualified Settlement Fund

The Parties agree to treat the Rule 23(b)(3) Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Subsection, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  The Parties agree that the Rule 23(b)(3) Settlement Fund shall not earn income.  It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary tax returns, if any, and thereafter to cause the appropriate filing to occur.

### 5.6.2   Administrator

For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the

Settlement Administrator.  The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Rule 23(b)(3) Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described in Subsection 5.6.1 above) shall be consistent with this Subsection.

The Settlement Administrator shall indemnify and hold the Released Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification), if any.  Further, Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Rule 23(b)(3) Settlement Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses; the Released Parties are not responsible therefore nor shall they have any liability with respect thereto. The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

### 5.7    Rule 23(b)(3) Settlement Attorneys' Fees, Costs, and Other Expenses

At least twenty-one (21) days before the Court's deadline for submission of objections, Class Counsel shall make an application to the Court for an award of attorneys' fees, Class Counsel's costs and out-of-pocket expenses, and a payment to the Settlement Administrator for the costs of notice and administration.  The requested attorneys' fee shall be in an amount not to exceed thirty-three percent (33%) of the Settlement Fund.

This agreement with respect to the amount of attorneys' fees, and reimbursement for out-of-pocket costs, and other expenses of Class Counsel was not negotiated until after the

amount of the Settlement Fund to the Rule 23(b)(3) Settlement Class had been negotiated and agreed upon during the mediation.

### 5.8    Service Payment to the Named Plaintiff

At least twenty-one (21) days before the Court's deadline for submission of objections, Plaintiff shall make an application to the Court for the Court's approval of a Service Payment to the Named Plaintiff in the amount of $10,000 to be paid from the Rule 23(b)(3) Settlement Fund.

The Parties' negotiation of, and agreement to, the foregoing Service Payment did not occur until after the substantive terms of the Settlement Agreement had been negotiated and agreed upon during the mediation.

### 5.9    Payment Schedule

The Settlement Administrator shall disburse the amount of an award of attorneys' fees, reimbursement of Class Counsel's out-of-pocket expenses, costs, and other expenses and the Service Payments made under Sections 5.7 and 5.8 in the amounts ordered by the Court within twenty-one (21) days after the Effective Date, but only after its receipt of payment instructions from Class Counsel and receipt of W9 forms completed by Class Counsel and the Named Plaintiff. The Settlement Administrator may also deduct from the Settlement Fund, at that same time, and upon the approval of Class Counsel, any amounts approved by the Court as payments to the Settlement Administrator.

The Rule 23(b)(3) Net Settlement Fund shall be distributed to the Rule 23(b)(3) Settlement Class by the Escrow Agent as follows: The initial distribution to the Rule 23(b)(3) Settlement Class Members who make claims will be made in an amount determined by dividing the Rule 23(b)(3) Net Settlement Fund by the number of members of the Rule 23(b)(3) Settlement Class who make claims. Such distribution shall be made within fourteen (14) days of Defendant depositing the Settlement Fund into the Escrow Account. Any checks remaining

uncashed after ninety (90) days from mailing and any checks returned undelivered after a second mailing attempt will remain in the Escrow Account.  Any amounts remaining in the Escrow Account at such time, shall be redistributed pro rata to Rule 23(b)(3) Settlement Class Members who cashed their initial check, so long as the amount of such reimbursement would equal or exceed $25.00 per Settlement Class Member.  Any administrative costs associated with the second distribution shall be deducted from the Escrow Account before the pro rata check amount for the second distribution is determined.  Subject to the conditions below any amounts remaining after the second distribution shall be paid in equal parts to the National Consumer Law Center and Public Justice as a *cy pres* award for the purpose of supporting the protection of consumers relating to the claims alleged in the Litigation.  Such distributions shall be conditioned on the agreement of each such non-profit organization that such funds be segregated and not used for any litigation purpose and shall be used solely to provide educational resources for legal services or legal aid organization assisting low-income, elderly and/or military consumers.  If one organization will not agree to such rigid conditions, the full contribution would go to the other.  If neither will agree, the Parties will nominate an alternative non-profit recipient for consideration and approval by the Court, provided it is a nationally recognized consumer protection organization.

### 5.10    Rule 23(b)(3) Settlement Class Release

#### 5.10.1  Release of All Claims

Each member of the Rule 23(b)(3) Settlement Class who does not submit a valid request for exclusion shall be conclusively deemed to have fully, finally, and forever settled, released and discharged all of the Released Parties, of and from all Released Claims whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which the Rule 23(b)(3) Settlement Class Members ever had or now has.

The Rule 23(b)(3) Settlement Class Members shall be bound by the Settlement Agreement and their claims shall be dismissed with prejudice and released against the Released Parties, even if they never received actual notice of the settlement prior to the hearing for final approval of the settlement, provided notice approved pursuant to Fed. R. Civ. P. 23(c) and 23(e)(1)(B) was made.

### 5.10.2 State-Specific Waivers

The Rule 23(b)(3) Settlement Class Members acknowledge that they are aware that they, the Named Plaintiff, or Class Counsel may hereafter discover facts in addition to or different from those that they or Class Counsel now know or believe to be true with respect to the subject matter of this Litigation and the Rule 23(b)(3) Settlement Class Released Claims, but it is their intention to, and they do upon the Effective Date of this Settlement Agreement, fully, finally, and forever settle and release any and all Rule 23(b)(3) Settlement Class Released Claims, without regard to the subsequent discovery or existence of such different additional facts.  Rule 23(b)(3) Settlement Class Members waive any and all rights and benefits afforded by California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Rule 23(b)(3) Settlement Class Members further waive any and all rights and benefits afforded by South Dakota Code § 20-7-11, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Rule 23(b)(3) Settlement Class Members and Class Counsel understand and acknowledge the significance of this waiver of California Civil Code Section 1542, South Dakota Code Section 20-7-11, and/or any other applicable federal or state law relating to limitations on releases.

### 5.10.3  Binding Release

Upon the Effective Date, no default by any person in the performance of any covenant or obligation under this Settlement Agreement or any order entered in connection with such shall affect the dismissal of the Litigation, the *res judicata* effect of the Rule 23(b)(3) Final Judgment and Order, the foregoing releases, or any other provision of the Rule 23(b)(3) Final Judgment and Order; provided, however, that all other legal and equitable remedies for violation of a court order or breach of this Settlement Agreement shall remain available to all Parties.

## 6.   ENTRY OF FINAL JUDGMENT AND ORDER

The Parties shall jointly seek entry by the Court of both the Rule 23(b)(2) and Rule 23(b)(3) Final Judgments and Orders in a form to be mutually agreed upon by the Parties.

## 7.   TERMINATION

Defendant shall have the right to terminate this Settlement Agreement as to the Rule 23(b)(3) Settlement Class, declare it null and void, and have no further obligations under this Settlement Agreement to any Rule 23(b)(3) Settlement Class Members, if one-percent (1.00%) or more of the members of the Rule 23(b)(3) Settlement Class opt out of the proposed settlement;

The failure of the Court or any appellate court to approve in full the request by Class Counsel for attorneys' fees, costs, and other expenses specific to the Rule 23(b)(3) Settlement Class shall not be grounds for the Named Plaintiff, the Rule 23(b)(3) Settlement Class, or Class Counsel to cancel or terminate this Settlement Agreement.

If the Settlement Agreement is not finally approved, is not upheld on appeal, or is otherwise terminated, in whole or in part, for any reason before the Effective Date, then any Settlement Class as to which the Effective Date has not been achieved shall be decertified; the portions of the of the Settlement Agreement that did not become final and all negotiations,

proceedings, and documents prepared, and statements made in connection therewith, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law; all Parties shall stand in the same procedural position as if the portions of the Settlement Agreement that did not become final had not been negotiated, made, or filed with the Court.

## 8.  MISCELLANEOUS PROVISIONS

### 8.1  Best Efforts to Obtain Court Approval

Named Plaintiff and Defendant, and Class Counsel, agree to use their best efforts to obtain Court approval of this Settlement Agreement, subject, however, to each Party's rights to terminate the Settlement Agreement, as provided herein.

### 8.2  No Admission

This Settlement Agreement, whether or not it shall become final, and any and all negotiations, communications, and discussions associated with it, shall not be:

a)  offered or received by or against any Party as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by a Party of the truth of any fact alleged by Named Plaintiff or defense asserted by Defendant, of the validity of any Claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation, or of any liability, negligence, fault, or wrongdoing on the part of Named Plaintiff or Defendant;

b)  offered or received by or against Named Plaintiff or Defendant as a presumption, concession, admission, or evidence of any violation or lack of violation of the FCRA or FCRA State Equivalents, or any state or federal statute, law, rule, or regulation or of any liability or wrongdoing

by Defendant, or of the truth of any of the Claims or Defenses, and evidence thereof shall not be directly or indirectly, in any way (whether in the Litigation or in any other action or proceeding), except for purposes of enforcing this Settlement Agreement and the Final Judgment and Order including, without limitation, asserting as a defense the release and waivers provided herein;

c) offered or received by or against Named Plaintiff or Defendant as evidence of a presumption, concession, or admission with respect to a decision by any court regarding the certification of a class, or for purposes of proving any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against Defendant, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; provided, however, that if this Settlement Agreement is approved by the Court, then Named Plaintiff or Defendant may refer to it to enforce their rights hereunder; or

d) construed as an admission or concession by Named Plaintiff, the Rule 23(b)(2) or Rule 23(b)(3) Settlement Classes, or Defendant that the consideration to be given hereunder represents the relief that could or would have been obtained through trial in the Litigation.

These prohibitions on the use of this Settlement Agreement shall extend to, but are not limited to, any individual lawsuit preserved from release in Sections 4.5.1 and 2.3.5 above.

### 8.3 <u>Process for Resolution of Disputes Regarding Compliance with Settlement Agreement</u>

If any Rule 23(b)(2) or Rule 23(b)(3) Settlement Class Member has a claim or dispute regarding Defendant's compliance with the Settlement Agreement, including but not limited

to the Injunctive Relief, then such Settlement Class member first must submit, *pro se* or through counsel, his or her dispute directly to Defendant before taking any other action. Upon receipt of such a dispute, Defendant will advise Class Counsel of the dispute, investigate the dispute and respond to the Settlement Class member within thirty (30) days, with a copy of its response to Class Counsel. Defendant's response must state the results of Defendant's investigation of the allegation of non-compliance with the Settlement Agreement and any action taken or to be taken to address the Settlement Class member's dispute; or, if additional information is required for Defendant to complete their investigation, Defendant's response must identify the specific additional information that is required. Upon the submission of all the additional information required (as set forth in Defendant's response), Defendant will have thirty (30) days to complete their investigation of the Settlement Class member's dispute regarding the allegation of non-compliance with the Settlement Agreement and to provide a response containing the results of its investigation and any action taken or to be taken to address the dispute.

If, after the dispute resolution process described above has been completed, the Settlement Class member remains unsatisfied, the class member may submit his or her dispute regarding the allegation of non-compliance with the Settlement Agreement to the Court under the caption for this Litigation. The Settlement Class member's submissions to the Court must include copies of all correspondence between the Settlement Class member and Defendant regarding the dispute prior to the submission. The Court shall have exclusive and sole jurisdiction to resolve the dispute.

This section is not intended to govern or apply to allegations of a violation of state or federal law, such as the FCRA, except as might otherwise relate to Defendant's compliance with this Settlement Agreement. Either Defendant or Class Counsel may file an appropriate motion to enforce this Settlement Agreement in the event of breach of the agreement by the

other.  At its discretion, the Court may award attorneys' fees to the substantially prevailing party if the Court is required to reach a decision as to whether or not a party is in violation of the Injunction and/or breached the Settlement Agreement.

### 8.4    Court's Jurisdiction and Choice of Law

The United States District Court for the Eastern District of Virginia, Richmond Division, shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement.  The Court also shall retain exclusive jurisdiction over any subsequent claim against Defendant subject to the dispute process described in Section 8.3 or whether any subsequent suit is released by the Settlement Agreement.  This Settlement Agreement will be governed by and construed under Virginia law.

### 8.5    Settlement Notices

Except for the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, as provided for in Sections 4.2 and 5.2 above, all other notices or formal communications under this Settlement Agreement shall be in writing and shall be given (i) by hand delivery; (ii) by registered or certified mail, return receipt requested, postage pre-paid; or (iii) by overnight courier to counsel for the Party to whom notice is directed at the following addresses:

For the Named Plaintiff and Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes:

Leonard Anthony Bennett
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601

Kristi C. Kelly
Kelly Guzzo PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030

E. Michelle Drake
Berger Montague PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413

For Defendant:

> Daniel J. McLoon
> Kerry C. Fowler
> Jones Day
> 555 S. Flower Street, 50th Floor
> Los Angeles, CA 90071

Counsel may designate a change of the person to receive notice or a change of address, from time to time, by giving notice to all Parties in the manner described in this Section.

### 8.6    Administrative Costs

Except as provided in **Sections 4.2 and 5.2** regarding the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, **Sections 4.6 and 5.8** regarding a Service Payment to Named Plaintiff, and **Sections 4.**6**, and 5.70** above regarding attorneys' fees, costs, and other expenses as to both the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, each of the Named Plaintiff and the Defendant shall be solely responsible for his, her, or its own costs and expenses.

### 8.7    Taxes

Named Plaintiff and Class Counsel shall be responsible for paying any and all federal, state, and local taxes due on any payments made to them pursuant to the Settlement Agreement.

The Settlement Administrator shall be responsible for handling any and all required tax forms or returns required to be submitted to the Internal Revenue Service for any payments made to Rule 23(b)(3) Settlement Class Members under the terms of this Agreement including, but not limited to, Form 1099-MISC.

### 8.8    Defendant's Communication with Customers, Business Contacts, and Members of the Public

Defendant reserves the right to communicate with their customers, business contacts, and members of the public in the ordinary course of business, including Settlement Class Members after the Effective Date.  Any communications with a Settlement Class Member shall not be inconsistent with the notice and terms of this Settlement Agreement.

### 8.9 Class Counsel's Representation of Other Consumers

Class Counsel have represented that they currently do not represent and do not intend to solicit any new actions asserting claims against Defendant on the theories advanced in Plaintiff's complaint on behalf of class members. Class Counsel further agree that (subject to approval of this term by the Court pursuant to Va. Rule of Professional Conduct 5.6(b)) they will not counsel or solicit class members to opt out or initiate action to seek to represent opt-outs from the Rule 23(b)(3) Settlement Class for any matters related to the Covered Conduct or Released Claims. Notwithstanding these representations, all Parties and Counsel understand that Defendant have not sought to unethically limit representation. Further, no limitation or restriction is intended here as to Rule 23(b)(2) Settlement Class Member individual claims that are not released.

### 8.10 No Public Statements Outside of Formal Notice Program

Neither Party nor their counsel shall make any press release related to this Agreement or the Litigation without the consent of the other parties. The Parties agree they will not make any statements (oral or written), directly or indirectly, to the media or general public about each other related to this Settlement or about the Released Parties' business practices or policies as they relate to the Settled Actions that are false, misleading, or cast an opposing party in a negative light, regardless of their truth or falsity. This provision will govern for 120 days after the Effective Date.

### 8.11 Confidentiality of Discovery Materials and Information

The Parties, their counsel, and any experts in this Litigation, agree that they remain subject to any and all protective orders, mediation confidentiality agreements and other orders and agreements that govern the confidentiality of information exchanged in the Litigation.

### 8.12 Complete Agreement

This Settlement Agreement is the entire, complete agreement of each and every term

agreed to by and among Named Plaintiff, the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, Defendant, and their counsel.  In entering into this Settlement Agreement, no Party has made or relied on any warranty or representation not specifically set forth herein.  This Settlement Agreement shall not be modified except by a writing executed by all the Parties.

### 8.13  Headings for Convenience Only

The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

### 8.14  Severability

In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this Agreement shall continue in full force and effect without said provision to the extent Defendant does not exercise their right to terminate under Section 7.

### 8.15  No Party Is the Drafter

Notwithstanding the choice of law provision in Section 8.4, none of the Parties to this Settlement Agreement shall be considered to be the primary drafter of this Settlement Agreement or any provision hereof for the purpose of any rule of interpretation or construction that might cause any provision to be construed against the drafter.

### 8.16  Binding Effect

This Settlement Agreement shall be binding according to its terms upon, and inure to the benefit of, the Named Plaintiff, the Rule 23(b)(2) or Rule 23(b)(3) Settlement Classes, Class Counsel, the Defendant, the Released Parties, and their respective successors and assigns.

### 8.17  Authorization to Enter Settlement Agreement

The individuals signing this Settlement Agreement on behalf of the Defendant represent that they are fully authorized by the Defendant to enter into, and to execute, this Settlement Agreement on their behalf.  Class Counsel represent that they are fully authorized to conduct

settlement negotiations with counsel for Defendant on behalf of Named Plaintiff, and to enter into, and to execute, this Settlement Agreement on behalf of the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, subject to Court approval pursuant to Fed. R. Civ. P. 23(e). Named Plaintiff enters into and executes this Settlement Agreement on her own behalf, and as a representative of and on behalf of the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, subject to Court approval pursuant to Fed. R. Civ. P. 23(e).

### 8.18    Execution in Counterparts

Named Plaintiff, Class Counsel, Defendant, and Defendant's counsel may execute this Settlement Agreement in counterparts, and the execution of counterparts shall have the same effect as if all Parties had signed the same instrument.  Electronic, including DocuSign, and scanned signatures shall be considered as valid signatures as of the date signed.  This Settlement Agreement shall not be deemed executed until signed by all Named Plaintiff, by all Class Counsel, and by counsel for and representatives of Defendant.

[*Signatures on following page*]

**Named Plaintiff:**

_Lisa Hill-Green (Aug 18, 2022 21:45 EDT)_

Lisa Hill-Green

**Counsel for Named Plaintiff and**

**Settlement Classes:**

Leonard Anthony Bennett
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite IA
Newport News, VA 23601

Kristi C. Kelly
Kelly Guzzo PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030

E. Michelle Drake
Berger Montague PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413

**Defendant**

Experian Information Solutions, Inc.

Name: _Ann Sterling_

Title: _Vice President + Associate General Counsel_

**Approved as to form only by Counsel for Defendant Experian Information Solutions, Inc.:**

Daniel J. McLoon
Jones Day
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071

David Anthony
Troutman Pepper
1001 Haxall Point, 15th Floor
Richmond, VA  23219

**EXHIBIT 1**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

LISA HILL-GREEN, *on behalf of
herself and all others similarly situated,*

    Plaintiffs,           Civil Action No. 3:19-cv-708(MHL)

v.

EXPERIAN INFORMATION SOLUTIONS,
INC.,

    Defendant.

<u>**INJUNCTIVE RELIEF ORDER**</u>

On [_____], 2022, the Court entered its Order granting the Motion for Final

Approval of Class Action Settlement and Entry of Final Judgment and Order (Docket No._).   Prior

to and on that date, the Court received argument from both Parties in support of this proposed

Injunctive Relief Order.  After consideration of the argument and factual detail provided and upon

the Court's own determination, pursuant to that Order and Section 4.3 of the Settlement Agreement

and Release, dated August 19, 2022 (the "Settlement Agreement"), the Court enters this Injunctive

Relief Order.  The Injunctive Relief Order is intended to novate the prior consent order entered by

the Court on April 27, 2022 (ECF No. 112).

For purposes of this Injunctive Relief Order, the following terms will have the meanings as

stated below.  The terms of this Injunctive Relief Order reflect the Injunctive Relief provisions in the

Settlement Agreement.

## I. DEFINITIONS

 1. "Litigation" means the above-captioned civil action

 2. "Named Plaintiff" means Lisa Hill-Green.

 3. "Defendant" means Experian Information Solutions, Inc.

1

4. "Class Counsel" means those attorneys approved and appointed by the Court to represent the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes.

5. "Party" and "Parties" mean the Named Plaintiff, the Rule 23(b)(2) Settlement Class, and the Defendant.

6. "Consumer File Disclosure" means the document Defendant provides to a consumer in response to a consumer's request pursuant to 15 U.S.C. § 1681g for information in his or her file.

7. "Consumer Report" means the report as defined in 15 U.S.C. § 1681a(d) and provided by a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

8. "Court" means the United States District Court for the Eastern District of Virginia where the Litigation is pending.

9. "Covered Conduct" means the reporting of Fraud Shield Indicators stating that the consumer's address was either a high-risk or non-residential address (Fraud Shield Indicators 10, 11, 16, and 17).

10. "Effective Date" means fifteen (15) business days after the later of the date of the  Rule 23(b)(2) Judgment or the date of the Rule 23(b)(3) Judgment becomes Final.

11. "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*

12. "FCRA State Equivalents" means any statute or regulation of any State, the District of Columbia, or Puerto Rico, that has the purpose or effect of regulating the collection, procurement, use, or disclosure of the same or similar information that meets the definition of Consumer Report.

13. "Rule 23(b)(2) Final Judgment" or "Rule 23(b)(2) Final Judgment and Order" means the final judgment and order of dismissal entered by the Court in this Litigation granting final approval of the Rule 23(b)(2) Settlement (including certifying the Rule 23(b)(2)

2

Settlement Class, finding the benefits provided to and releases and other consideration provided by such Class to be fair, reasonable and adequate, approving Class Counsel's request for attorneys' fees, costs, and other expenses and Named Plaintiff's request for Service Awards).

14. "Injunctive Relief" means the injunctive relief programs to which the Defendant has agreed in the Rule 23(b)(2) Class Settlement which benefit the Rule 23(b)(2) Settlement Class, and as Ordered herein as further described in Section II.

15. "Injunctive Relief Order" means this Order.

16. "Settlement" means the exchange of consideration among the Rule 23(b)(2) Settlement Class, the Rule 23(b)(3) Settlement Class, Defendant and Class Counsel reflected in and contemplated by this Settlement Agreement and constituting the Rule 23(b)(2) Settlement and the Rule 23(b)(3) Settlement.

17. "Settlement Agreement" means the Settlement Agreement and Release, including its Exhibits.

## II.    INJUNCTIVE RELIEF

The Court hereby orders that Defendant comply as follows:

a.    Experian will add a mutually agreed page to its own consumer education website blog describing high-risk and non-residential Fraud Shield indicators and what they mean, and providing instructions on how to dispute the Fraud Shield indicator if the consumer contends the non-residential or high-risk address designation is incorrect.  Experian will employ meta and H1 tags and search engine optimization in the same way as it does for other blog pages on its site that describe errors in consumer reports and how consumers can address them.  The text of the page Experian has agreed to post is attached hereto as Exhibit 8.

b.  Experian will change its Consumer File Disclosures to specifically indicate that Experian may flag the consumer's address(es) as non-residential and/or high risk. The disclosure will include information that allows the consumer to understand the substance of what Experian conveyed related to Fraud Shield. For a period of at least 5 years after the effective date, all Consumer File Disclosures containing a high-risk or non-residential Fraud Shield indicator must include a paragraph explaining the indicator and providing instructions on how to dispute it. This paragraph may be included in the same place, or as close to such place as is practicable, that Experian includes other legally required information in its file disclosures.  The specific language to be included in consumer disclosures and a description of how such information shall be incorporated is attached hereto as Exhibit 9.

c.  Experian will change its dispute investigation process for handling high-risk and non-residential address Fraud Shield indicator disputes.  Specifically, if a consumer contacts Experian to dispute the accuracy of a high-risk or non-residential address Fraud Shield indicator, Experian will accept the consumer's representation that the address is residential and not a business, and will change the status of the address at issue in the non-residential address table within FileOne.  This will prevent further Fraud Shield indicators from being returned in connection with the address and will prevent the address from returning to active status upon update/refresh of the table.

d.   By no later than November 12, 2022, Experian will reconfigure the update procedure for importing data into the Non-Residential Address table in FileOne to employ a "full file refresh," meaning that, each month, Experian will import an updated file from its vendor in a manner that overwrites all pre-existing data in that table.

e.  Experian will suppress or remove from the Non-Residential Address table any address

that its vendor is reporting to Experian that Experian has reason to believe the vendor has not updated or otherwise verified for at least six years;

f.  By no later than November 12, 2022, Experian will "retire" (i.e., stop publishing) Fraud Shield indicator 21;

g.  By no later than December 31, 2024, Experian will "retire" (i.e., stop publishing) Fraud Shield indicators 4 and 26;

h.  Experian will substantially reduce the table of high-risk SIC Codes that are relied upon by Fraud Shield indicators 10 and 16 to be consistent with those listed on Exhibit 10;

i.  With respect to Fraud Shield indicators 11 and 17, Experian will revise the message that is delivered to customers as follows:

> FSI 11: "Inquiry address: reported as being associated with a business."
>
> FSI 17: "On-file address: reported as being associated with a business."

j.  With respect to Fraud Shield Indicators 11 and 17, Experian will revise their description in the Fraud Shield Reference Guide as follows:

> FSI 11: "The inquiry address has been reported as being associated with a business."
>
> FSI 17: "One of the consumer's on-file addresses has been reported as being associated with a business."

## III.    TIMETABLE FOR IMPLEMENTATION OF INJUNCTIVE RELIEF

Unless otherwise specifically indicated above, Defendant agrees to implement the injunctive relief set forth in Section II within ninety (90) days from the Effective Date of the Rule 23(b)(2) Class Settlement.

## IV.    SUNSET DATE

The Injunctive Relief obligations defined in Section II will expire five years from the Effective Date or at such earlier time as Defendant ceases to engage in the Covered Conduct.  Should Defendant believe that it has ceased engaging in the Covered Conduct, Defendant shall provide a notice regarding same to Class Counsel, describing any changes Experian has made.  The Court shall retain jurisdiction to resolve any disputes about the Sunset Date or the scope of any alleged cessation of the Covered Conduct.

## V.    LIMITATIONS ON INJUNCTIVE RELIEF

Any action by Defendant determined in good faith to be reasonably necessary to comply with any federal, state, or local law, enactment, regulation, or judicial ruling shall not constitute a breach of the Settlement Agreement.  In the event any obligation Defendant has agreed to undertake as part of the Injunctive Relief would be deemed unlawful with any future federal, state, or local law, enactment, regulation, or judicial ruling, then Defendant will file a motion for miscellaneous relief, seeking to be released from performing such obligation.  Class Counsel shall file any brief in opposition within twenty (20) days after the service of Defendant's motion for miscellaneous relief (which may be extended by the Court for good cause).  Should Class Counsel not file any brief in opposition within the twenty (20) day period, the Court shall presume that Class Counsel does not oppose the relief requested in Defendant's motion for miscellaneous relief.  Defendant shall file any reply brief in support of their motion for miscellaneous relief within seven (7) days after the filing of any brief in opposition.

## VI.    COURT'S JURISDICTION

The Court reserves continuing and exclusive jurisdiction over the parties with respect to all matters relating to this Injunctive Relief Order, including its administration, interpretation, effectuation, and enforcement of its provisions.  None of the Parties, including any Rule 23(b)(2)

Settlement Class Member, shall be entitled to the recovery of attorney's fees, costs or other expenses other than as expressly provided herein in connection with any efforts to monitor compliance with this Injunctive Relief Order.  Either Defendant or Class Counsel may file an appropriate motion to enforce this Settlement Agreement in the event of breach of the agreement by the other.  At its discretion, the Court may award attorneys' fees to the substantially prevailing party if the Court is required to reach a decision as to whether or not a party is in violation of the Injunctive Relief and/or breached the Settlement Agreement.

**VII.    NOTICES**

All notices or formal communications under this Order, including any claims or disputes pursuant to Section V, shall be in writing and shall be given (i) by hand delivery; (ii) by registered or certified mail, return receipt requested, postage pre-paid; or (iii) by overnight courier to counsel for the Party to whom notice is directed at the following addresses:

For the Named Plaintiff and Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes:

> Leonard Anthony Bennett
> Consumer Litigation Associates, P.C.
> 763 J Clyde Morris Boulevard
> Suite 1A
> Newport News, VA 23601
>
> Kristi C. Kelly
> Kelly Guzzo PLC
> 3925 Chain Bridge Road, Suite 202
> Fairfax, VA 22030
>
> E. Michelle Drake
> Berger Montague PC
> 1229 Tyler Street NE, Suite 205
> Minneapolis, MN 55413

For Defendant:

> Daniel J. McLoon
> Kerry C. Fowler
> Jones Day
> 555 S. Flower Street, 50th Floor
> Los Angeles, CA 90071.

Counsel may designate a change of the person to receive notice or a change of address, from time to time, by giving notice to the Court and all Parties in the manner described in this Section.

**It is SO ORDERED.**

BY THE COURT:

_____
HONORABLE M. HANNAH LAUCK
UNITED STATES DISTRICT JUDGE

Date:
      Richmond, Virginia

8

**EXHIBIT 2**

**Consumers Affected by High-Risk or Non-Residential Addresses on Experian Credit Reports**

***Could Get Money from a Class Action Settlement***

Eligible consumers could receive a payment from a $22,450,000 Settlement with Experian.

*Para una notificación en Español, llamar _____ o visitar*
*www.FraudShieldSettlement.com*

Settlement Admin Address

First-Class
Mail
US Postage
Paid
Permit #___

|||||||||||||||||||||||||||
Postal Service: Please do not mark barcode

Notice ID: «Claimant ID»
Confirmation Code: «Code»
«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip»

**What's this Case About?** The lawsuit claims that Experian reported inaccurate information about some consumers' addresses through its Fraud Shield product.  Experian denies it did anything wrong.

**Am I Included?** Based on Experian's records, you have been identified as a Settlement Class Member because you may have been affected by Experian's reporting of certain Fraud Shield Indicators from July 1, 2018 through July 31, 2021. Experian reported the following address on your report as non-residential: INSERT.

**What does the Settlement Provide?** The Settlement establishes a $22,450,000 Settlement Fund for payments to eligible Class Members after payment of attorneys' fees and expenses (not to exceed one-third of the Settlement Fund), the Class Representative service payment of $10,000, and administrative and notice costs.  The Parties estimate you could receive between $_____ and $____, but that is just an estimate and not guaranteed. The Settlement also establishes substantial and comprehensive changes to Experian's business practices that will benefit all Class Members.

**How Do I Get a Payment?** You must submit a valid claim form by _____.  Complete and mail in the attached claim form or file a claim online at www.FraudShieldSettlement.com.

**Your Other Rights**. Even if you do nothing, you will be bound by the Court's decision.  If you want to keep your right to sue Experian yourself, you must exclude yourself from the Settlement by **Month 00, 2022**. If you stay in the Settlement but do not agree with the terms, you may object to it by **Month 00, 2022**.

The Court will hold a hearing on **Month 00, 2022** to consider whether to approve the Settlement, a request for attorneys' fees and expenses, and service payments.  You or your lawyer may appear and speak at the hearing at your own expense.

**For more information: Call _____ or visit www.FraudShieldSettlement.com**

Claim Form                         INSERT MAIL MERGE                  Name/Address Change

_____

_____

_____

**To receive a payment, you must sign below and postmark your claim by _____ or file a claim online at www.FraudShieldSettlement.com by _____.**

Experian reported the following address on your report as non-residential: INSERT.

Please confirm the following statement by checking the box:

> The address listed above and reported by Experian as a non-residential address is actually a residental address.

I declare that information above is correct.

Signature: _____        Name: _____

Phone Number: _____           Email: _____

SSN (last 4): _____

Your check will be sent to the same address as this postcard. To change the mailing address for your check, write the new address above or go to www.FraudShieldSettlement.com.

RETURN ADDRESS FOR CLAIM FORM

**Consumers Affected by High-Risk or Non-Residential Addresses on Experian Credit Reports**

***Could Get Money from a Class Action Settlement***

Eligible consumers could receive a payment from a $22,450,000 Settlement with Experian.

*Para una notificación en Español, llamar _____ o visitar*
*www.FraudShieldSettlement.com*

Settlement Admin Address

First-Class
Mail
US Postage
Paid
Permit #___

||||||||||||||||||||||
Postal Service: Please do not mark barcode

Notice ID: «Claimant ID»
Confirmation Code: «Code»
«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip»

**What's this Case About?** The lawsuit claims that Experian reported inaccurate information about some consumers' addresses through its Fraud Shield product.  Experian denies it did anything wrong.

**Am I Included?** Based on Experian's records, you have been identified as a Settlement Class Member because between July 1, 2018 and July 31, 2021, you submitted an address dispute to Experian while your Experian credit report contained a high-risk or non-residential Fraud Shield Indicator. Experian reported the following address on your report as non-residential: INSERT.

**What does the Settlement Provide?** The Settlement establishes a $22,450,000 Settlement Fund for payments to Eligible Class Members after payments of attorneys' fees and expenses (not to exceed one third of the Settlement Fund), the Class Representative service payment of $10,000, and administrative and notice costs. The Parties estimate you could receive between $_____ and $____, but this is just an estimate and is not guaranteed. The Settlement also establishes substantial and comprehensive changes to Defendant's business practices that will benefit all Class Members.

**How Do I Get a Payment?** You must submit a valid claim form by _____ Complete and mail in the attached claim form or file a claim online at www.FraudShieldSettlement.com.

**Your Other Rights**. Even if you do nothing, you will be bound by the Court's decisions.  If you want to keep your right to sue Experian yourself, you must exclude yourself from the Settlement by **Month 00, 2022**. If you stay in the Settlement but do not agree with the terms, you may object to it by **Month 00, 2022**.

The Court will hold a hearing on **Month XX, 2022** to consider whether to approve the Settlement, a request for attorneys' fees and expenses, and service payments.  You or your lawyer may appear and speak at the hearing at your own expense.

**For more information: Call _____ or visit www.FraudShieldSettlement.com**

Claim Form                          INSERT MAIL MERGE                    Name/Address Change

_____

_____

_____

**To receive a payment, you must sign below and postmark your claim by _____ or file a claim online at www.FraudShieldSettlement.com by _____.**

Please confirm the following statement by checking the box:

I submitted a dispute to Experian about my address being reported as non-residential and I was harmed by Experian's reporting of a Fraud Shield Indiciator.

I declare the information above is correct.

Signature: _____     Name: _____

Phone Number: _____     Email: _____

SSN (last 4): _____

Your check will be sent to the same address as this postcard. To change the mailing address for your check, write the new address above or go to www.FraudShieldSettlement.com.

RETURN ADDRESS FOR CLAIM FORM

**EXHIBIT 3**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LISA HILL-GREEN, *on behalf of*
*herself and all others similarly situated,*

              Plaintiffs,                    Civil Action No. 3:19-cv-708 (MHL)

v.

EXPERIAN INFORMATION SOLUTIONS,
INC.,

              Defendant.

**ORDER PRELIMINARILY APPROVING SETTLEMENT**
**AND DIRECTING NOTICE TO CLASSES**

       This matter comes before the Court on the Joint Motion for Preliminary Approval of Class Action Settlement Agreement. (ECF No. ____.) The Settlement Agreement has been filed with the Court, (ECF No. ____), and the definitions and terms set forth in the Settlement Agreement are incorporated herein by reference.  The Court, having reviewed the Settlement Agreement entered by the Parties, hereby ORDERS that:

       1.      The Court has jurisdiction over the subject matter of the Litigation and over each settling party.

       2.      The Court has conducted a preliminary evaluation of the Settlement as set forth in the Settlement Agreement. The Settlement Agreement entered between the parties as of August 19, 2022, (ECF No. ____), appears, upon preliminary review, to be fair, reasonable, and adequate to the Settlement Classes. Accordingly, for settlement purposes only, the proposed settlement is preliminarily approved, pending a Final Approval Hearing, as provided for herein.

**The Rule 23(b)(2) Class**

3.       The Court has considered the proposed settlement of the claim asserted under the

Fair Credit Reporting Act ("FCRA") by a class of consumers defined as follows (the "Rule

23(b)(2) Settlement Class"):

> All consumers in the United States for whom Experian, within two years prior to
> the filing of the Complaint in this action and during its pendency, furnished a
> consumer report to a third party containing an inaccurate Fraud Shield Indicator
> No. 10, 11, 16, or 17 indicating that the consumer's address was either a high-risk
> or non-residential address.

The Rule 23(b)(2) Settlement Class does not include Defendant's officers, directors, and

employees; Defendant's attorneys; the Named Plaintiff's attorneys; or any employee of the Federal

Judiciary.

4.       As to the Rule 23(b)(2) Settlement Class, the prerequisites to a class action under

Fed. R. Civ. P. 23(a) have been preliminarily satisfied, for settlement purposes only, in that:

(a) The Rule 23(b)(2) Settlement Class appears to consist of more than 100

members that are geographically dispersed such that joinder of all members is impracticable;

(b) The Named Plaintiff's claims appear to be typical of those of the other members

of the Rule 23(b)(2) Settlement Class;

(c) There appear to be questions of fact and law that are common to all members of

the Rule 23(b)(2) Settlement Class; and

(d) the Named Plaintiff appears to be able to fairly and adequately protect the

interests of the Rule 23(b)(2) Settlement Class and has retained Class Counsel experienced in

consumer class action litigation who appear to be able to adequately represent the Rule 23(b)(2)

Settlement Class.

5.       For settlement purposes only, the Court finds that the Rule 23(b)(2) Settlement

Class is preliminarily maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because

Experian's conduct is generally applicable to the Rule 23(b)(2) Settlement Class, so that final injunctive relief as set forth in Section 4.3 of the Settlement Agreement is appropriate respecting the Rule 23(b)(2) Class as a whole.

6.      As this portion of the Settlement is for injunctive relief under Fed. R. Civ. P. 23(b)(2), there shall be no ability for Rule 23(b)(2) Settlement Class Members to request exclusion from the Settlement. All Rule 23(b)(2) Settlement Class Members shall therefore be bound by all subsequent proceedings, orders, and judgments in this action.

### The Rule 23(b)(3) Class

7.      The Court has considered the proposed settlement of the claim asserted under the Fair Credit Reporting Act ("FCRA") by the "Rule 23(b)(3) Settlement Class", as identified on the Rule 23(b)(3) Class List, according to the following Rule 23(b)(3) Class Criteria:

(a)      the consumer was the subject of a consumer report issued by Experian between July 1, 2018, and July 31, 2021;

(b)      in connection with the consumer report, Experian transmitted at least one instance of either Fraud Shield indicator 10 or 16;

(c)      the consumer's address, as provided by Experian, corresponds to an address in Experian's Non-Residential Address Table that was loaded into the table more than seven years prior to the date of the report;

(d)      the address in the Non-Residential Address Table that matched the consumer's address was classified in the Non-Residential Address Table with a Standard Industrial Code ("SIC Code") denoting a business type identified in the Injunctive Relief Order that Experian has agreed as part of the settlement of this matter to no longer classify as a "high risk" business type;

(e)     The consumer's historical Vantage Score as provided by Experian was 650 or greater;

(f)     Experian's records indicate that the consumer report transmitted with the Fraud Shield Indicator was sold for a purpose other than debt collection; and

(g)     the consumer did not have any new tradelines opened within 120 days of the date of the consumer report.

(h)     The Rule 23(b)(3) Settlement Class also includes all consumers in the time period from July 1, 2018 to July 31, 2021 who contacted Experian to inquire about and/or dispute a non-residential or high-risk address indicator.

8.     As to the Rule 23(b)(3) Settlement Class, the prerequisites to a class action under Fed. R. Civ. P. 23(a) have been preliminarily satisfied, for settlement purposes only, in that:

(a) The Rule 23(b)(3) Settlement Class appears to consist of more than 100 members that are geographically dispersed such that joinder of all members is impracticable;

(b) The Named Plaintiff's claims appear to be typical of those of the other members of the Rule 23(b)(3) Settlement Class;

(c) There appear to be questions of fact and law that are common to all members of the Rule 23(b)(3) Settlement Class; and

(d) the Named Plaintiff appears to be able to fairly and adequately protect the interests of the Rule 23(b)(3) Settlement Class and has retained Class Counsel experienced in consumer class action litigation who appear to be able to adequately represent the Rule 23(b)(3) Settlement Class.

9.     For settlement purposes only, the Court finds that the Rule 23(b)(3) Settlement Class is preliminarily maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because it appears that class treatment of these claims will be efficient and manageable, thereby achieving an

appreciable measure of judicial economy, and that a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

10.     As to class membership, the Rule 23(b)(3) Class List is determinative. No individual shall be bound by the Rule 23(b)(3) Settlement Class Release or entitled to the benefits of membership in the Rule 23(b)(3) Settlement Class unless such individual appears on the Rule 23(b)(3) Class List.  All Rule 23(b)(3) Settlement Class Members on the Class List shall be given the opportunity to opt out of the Rule 23(b)(3) Settlement Class. Such a consumer may request to be excluded from the Rule 23(b)(3) Settlement Class by sending and not revoking a written request for exclusion to the Settlement Administrator, addressed to "[**insert name and address**]." To be valid, the proposed Rule 23(b)(3) Settlement Class Member's opt-out request must contain the proposed Rule 23(b)(3) Settlement Class Member's name, original signature, current postal address, and current telephone number, and a statement that the proposed Rule 23(b)(3) Settlement Class Member wants to be excluded from the class of Rule 23(b)(3) Settlement Class Members. To be valid, opt-out requests must be postmarked no later than ninety days after the Notice Date. To be valid, a request must not purport to opt out of the class of the Rule 23(b)(3) Settlement Class Members for a group, aggregate, or class involving more than one consumer.  Requests for exclusions that do not substantially comply with the requirements in this Order are invalid.  A Rule 23(b)(3) Settlement Class Member may revoke an opt-out request in writing. To be valid, opt-out revocations must be postmarked no later than the date of the Rule 23(b)(3) Final Judgment and Order.

### Findings Applicable to Both Settlement Classes

11.     On April 27, 2022, the Court entered an Order Granting Final Approval of Class Action Settlement and Certifying Settlement Class [ECF No. 112] in the present Litigation.  The settlement approved by the April 27, 2022 Order provided certain injunctive relief to a class of

consumers under Federal Rule of Civil Procedure 23(b)(2).  Since that time, the Parties reached agreement regarding a modified settlement that provides further injunctive relief to the Rule 23(b)(2) Settlement Class, further release to Defendant, and resolves the class claims brought by the Named Plaintiff under Federal Rule of Civil Procedure 23(b)(3).  Accordingly, the Parties have asked the Court to approve the proposed settlement memorialized in the Settlement Agreement with the intention and understanding that, upon final approval, it act as a novation of the settlement previously approved by the Court, and supersede the prior Settlement Agreement in all respects.

12.     If the Settlement Agreement is not finally approved, is not upheld on appeal, or is otherwise terminated for any reason before the Effective Date, then the April 27, 2022 Order Granting Final Approval of Class Action Settlement and Certifying Settlement Class shall remain in full force and effect, the Settlement Classes described above shall be decertified, except to the extent already certified by the April 27, 2022 Order; the August 19, 2022 Settlement Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection therewith, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law; and all Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court.

13.     The Court appoints Lisa Hill-Green as the Class Representative for both settlement classes. The Court also appoints Kristi Kelly, Andrew Guzzo, Casey Nash, and J. Patrick McNichol of Kelly Guzzo, PLC; Leonard Bennett, Craig Marchiando and Kevin Dillon of Consumer Litigation Associates, P.C.; and E. Michelle Drake and Joseph Hashmall of Berger Montague PC as counsel for the Settlement Classes ("Class Counsel").

14.     The Court appoints Rust/Kinsella as Settlement Administrator for the Rule 23(b)(2) Settlement and JND Legal Administration as Settlement Administrator for the Rule 23(b)(3)

Settlement. The Settlement Administrators shall implement the agreed-upon Notice Plan in accordance with the Settlement Agreement. To the extent the Parties or Notice Administrators determine that ministerial changes to the Notices are necessary before disseminating either to the Settlement Class Members, they may make such changes without further application to the Court.

15.    The Court will hold a Final Approval Hearing pursuant to Fed. R. Civ. P. 23(e) on _____, 2022 (at least 150 days after entry of Preliminary Approval Order) at the United States District Court, Eastern District of Virginia, at 701 E. Broad St., Richmond, VA 23219, at _____.m. for the following purposes:

(a) To determine whether the proposed settlement is fair, reasonable, and adequate and should be granted final approval by the Court;

(b) To determine whether a final judgment should be entered dismissing the claims of the Settlement Classes with prejudice, as required by the Settlement Agreement;

(c) To consider the application of Class Counsel for an award of attorneys' fees, costs, and expenses, and for a service award to the class representative; and

(d) To rule upon other such matters as the Court may deem appropriate.

16.    The Court finds the manner of giving notice provided for by the Settlement and described in the Rule 23(b)(2) Notice Plan and Rule 23(b)(3) Notice Plan, including their use of published and internet methods, satisfies the requirements of Fed. R. Civ. P. 23 and due process, and shall constitute due and sufficient notice to all persons entitled thereto.

17.    Pending the final determination of whether the Settlement should be approved, Plaintiff, the Settlement Classes, and any person or entity allegedly acting on behalf of the Settlement Classes, are hereby enjoined, either directly, representatively, or in any other capacity, from commencing or prosecuting against the Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims. Such injunction will remain in force until

the Court enters the Final Approval Order or until such time as the Parties notify the Court that the Settlement has been terminated. This injunction is necessary to protect and effectuate the Agreement, this Preliminary Approval Order, and the Court's flexibility and authority to effectuate the Agreement and Settlement and to enter judgment when appropriate, and is ordered in aid of this Court's jurisdiction to protect its judgments.

18.     Any Settlement Class Member who wishes to be heard orally at the Final Approval Hearing, or who wishes for any objection to be considered, must file a written notice of objection to be filed with the Court no later than thirty (30) days prior to the Final Approval Hearing.

19.     Copies of all objections also must be served electronically via the Court's ECF system. The objection must include the following: (a) the objector's name, address, and telephone number; (b) the name of this Litigation and the case number; and (c) a written statement detailing the specific basis for each objection. An objection submitted through an attorney must also contain: (a) the identity, mailing address, email address, fax number, phone number for the counsel by whom the Rule 23(b)(3) Settlement Class Member is represented; (b) a statement of whether the objecting Rule 23(b)(3) Settlement Class Member intends to appear at the Final Fairness Hearing; and (c) a written statement detailing the specific basis for each objection, including any legal and factual support that the objecting Rule 23(b)(3) Settlement Class Member wishes to bring to the Court's attention and any evidence the objecting Rule 23(b)(3) Settlement Class Member wishes to introduce in support of the objection. Any Settlement Class Member who fails to timely file and serve a written objection pursuant to the terms of this paragraph shall not be permitted to object to the approval of the settlement or the Settlement Agreement and shall be foreclosed from seeking any review of the settlement or the terms of the Settlement Agreement by appeal or other means.

20.     All briefs, memoranda, petitions and affidavits to be filed in support of an individual award to the Class Representative and in support in support of Class Counsel's

application for fees, costs and expenses, shall be filed not later than fifty-one (51) days before the Final Approval Hearing.

21.     Not later than forty-five (45) days before the Final Approval Hearing, the Settlement Administrator will cause a declaration to be filed with the Court that the Notice described above was given as required herein.

22.     Neither this Preliminary Approval Order, nor the Settlement Agreement, shall be construed or used as an admission or concession by or against the Defendant or any of the Released Parties of any fault, omission, liability, or wrongdoing, or the validity of any of the Settlement Released Claims. This Preliminary Approval Order is not a finding of the validity or invalidity of any claims in this lawsuit or a determination of any wrongdoing by the Defendant or any of the Released Parties. The preliminary approval of the Settlement Agreement does not constitute any opinion, position, or determination of this Court, one way or the other, as to the merits of the claims and defenses of Plaintiff, the Settlement Class Members, or the Defendant.

23.     The Court retains exclusive jurisdiction over this action to consider all further matters arising out of or connected with the Settlement Agreement.

        IT IS SO ORDERED.

Dated: _____        _____
                                      M. Hannah Lauck
                                      United States District Judge

**EXHIBIT 4**

**REMINDER NOTICE**

Settlement Admin Address

First-Class
Mail
US Postage
Paid
Permit #___

*File a Claim Now to Get a Payment from a $22,450,000 Settlement with Experian.*

||||||||||||||||||||||
Postal Service: Please do not mark barcode

**CLAIM FILING DEADLINE IS**
_____

Notice ID: «Claimant ID»
Confirmation Code: «Code»
«First1» «Last1»
«C/O»
«Addr1» «Addr2»
«City», «St» «Zip»

You previously received notice of a Settlement in a class action lawsuit that claims Experian reported inaccurate information about some consumers' addresses through its Fraud Shield product.

This is a reminder that you must submit a Claim Form to get a payment up to $_____. If you submit a valid Claim Form, your address will also be removed from Experian's non-residential address list.

**How to Get a Payment:** Mail the attached claim form or file a claim online by _____.

**For more information: Call** _____ **or visit** **www.FraudShieldSettlement.com**

_____
_____
_____

**To receive a payment, you must sign below and postmark your claim by _____ or file a claim online at [www.FraudShieldSettlement.com](http://www.FraudShieldSettlement.com) by _____.**

Experian reported the following address on your report as non-residential: INSERT.

Please confirm the following statement by checking the box:

☐   The address listed above and reported by Experian as a non-residential address is actually a residental address.

I declare the information on this claim form is correct.

Signature: _____        Name: _____

Phone Number: _____        Email: _____

SSN (last 4): _____

Your check will be sent to the same address as this postcard. To change the mailing address for your check, write the new address above or go to **[www.FraudShieldSettlement.com](http://www.FraudShieldSettlement.com)**

RETURN ADDRESS FOR CLAIM FORM

**REMINDER NOTICE**

Settlement Admin Address

First-Class
Mail
US Postage
Paid
Permit #__

*File a Claim Now to Get a Payment from a $22,450,000 Settlement with Experian.*

||||||||||||||||||||||||
Postal Service: Please do not mark barcode

**CLAIM FILING DEADLINE IS**
_____

Notice ID: «Claimant ID»
Confirmation Code: «Code»
«First1» «Last1»
«C/O»
«Addr1» «Addr2»
«City», «St» «Zip»

**REMINDER NOTICE**

You previously received notice of a Settlement in a class action lawsuit that claims Experian reported inaccurate information about some consumers' addresses through its Fraud Shield product.

This is a reminder that you must submit a Claim Form to get a payment up to $_____. If you submit a valid Claim Form, your address will also be removed from Experian's non-residential address list.

**How to Get a Payment:** Mail the attached claim form or file a claim online by _____.

**For more information: Call _____ or visit www.FraudShieldSettlement.com**

Claim Form   INSERT MAIL MERGE   Name/Address Change

_____
_____
_____

**To receive a payment, you must sign below and postmark your claim by _____ or file a claim online at [www.FraudShieldSettlement.com](http://www.FraudShieldSettlement.com) by _____.**

Please confirm the following statement by checking the box:

☐ I submitted a dispute to Experian about my address being reported as non-residential, and I was harmed by Experian's reporting of a Fraud Shield Indiciator.

I declare the information on this claim form is correct.

Signature: _____       Name: _____

Phone Number: _____       Email: _____

SSN (last 4): _____

Your check will be sent to the same address as this postcard. To change the mailing address for your check, write the new address above or go to **[www.FraudShieldSettlement.com](http://www.FraudShieldSettlement.com)**

RETURN ADDRESS FOR CLAIM FORM

**EXHIBIT 5**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

# Consumers With High-Risk or Non-Residential Addresses on Experian Credit Reports

## *Could Be Affected by a Class Action Settlement*

*A federal court authorized this notice. This is not a solicitation from a lawyer. You are not being sued.*

- There is a proposed expansion of the previously approved Settlement in a class action lawsuit against Experian Information Solutions, Inc. ("Experian"). The lawsuit claims that Experian did not take steps to make sure it accurately reported certain Fraud Shield Indicators.  Experian denies it did anything wrong.

- On April 27, 2022, the Court approved a settlement in this class action that resulted in Experian making certain changes to its business practices.  However, that settlement did not resolve all class claims brought against Experian.  After further negotiations, the parties agreed upon additional changes to Experian's business practices that are being added to the terms of the Settlement.  This Notice is being provided to inform you about the proposed additional terms of the Settlement.

- You are included in the proposed Settlement if, between September 27, 2017 and _____, Experian sent your consumer report to a third party with an inaccurate Fraud Shield Indicator, showing that your address was either a high-risk or non-residential address when it was not.

- As part of the Settlement, Experian will change its business practices relating to certain Fraud Shield Indicators and how it manages high-risk and non-residential address data.  Experian also agreed to pay for notice and administration costs for both the original Settlement and this expansion. This Settlement does not include any payments to Class Members.  A separate settlement provides money for consumers who were harmed by how Experian reported certain Fraud Shield Indicators.

- Your legal rights are affected by the proposed Settlement even if you do nothing.

- Your rights and options — and the deadlines to exercise them — are explained in this notice. Please read this entire notice carefully.

**QUESTIONS? CALL TOLL-FREE 1-800-000-000 OR VISIT www.FRAUDSHIELDSETTLEMENT.com**

1

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Do Nothing** | You do not have to do anything to benefit from the proposed Settlement. If the Settlement is approved, you will give up any rights to sue Experian about the same legal claims in this Settlement (*see* Questions 13). |
| **Object to the Settlement** | Write to the Court about why you do not like the proposed Settlement (*see* Question 17).  Objections are due on _____. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the proposed Settlement (*see* Questions 18-20). |

## WHAT THIS NOTICE CONTAINS

Page

BASIC INFORMATION .................................................................................................3

    1.    Why was this notice issued?.................................................................3

    2.    What is this lawsuit about?...................................................................3

    3.    What is a class action?.........................................................................4

    4.    Why is there a proposed Settlement? ..................................................4

    5.    What are the different Settlements in this case?..................................4

WHO IS IN AFFECTED BY THE EXPANDED SETTLEMENT ..........................................5

    6.    How do I know if I am part of Class? ..................................................5

    7.    What is Fraud Shield? .........................................................................5

    8.    What if I am not sure whether I am included in the Class?.................5

THE EXPANDED SETTLEMENT BENEFITS ...................................................................5

    9.    What benefits does the Expanded Settlement provide?......................5

    10.    How long will the changes to Experian's business practices stay in effect?.....6

    11.    Can I get money from the Expanded Settlement? ..............................6

    12.    When will the proposed Expanded Settlement go into effect?...........7

    13.    How does the Expanded Settlement affect my rights?.......................7

    14.    Can I choose to get out of the Expanded Settlement? .......................7

THE LAWYERS REPRESENTING YOU ...........................................................................8

    15.    Do I have a lawyer in this case? .........................................................8

**QUESTIONS? CALL TOLL-FREE 1-800-000-000 OR VISIT www.FRAUDSHIELDSETTLEMENT.com**

16.     How will the lawyers be paid? What will the Class Representative receive?...............................................................................................8

OBJECTING TO THE EXPANDED SETTLEMENT ...........................................................8

17.     How do I tell the Court that I do not like the Expanded Settlement?...............8

THE COURT'S FINAL APPROVAL HEARING ...................................................................9

18.     When and where will the Court decide whether to finally approve the proposed Expanded Settlement?...................................................................9

19.     Do I have to come to the hearing?.................................................................10

20.     May I speak at the hearing?..........................................................................10

IF YOU DO NOTHING.......................................................................................................10

21.     What happens if I do nothing at all?.............................................................10

GETTING MORE INFORMATION ...................................................................................10

22.     How do I get more information? ...................................................................10

## BASIC INFORMATION

| 1. | Why was this notice issued? |
|----|----|

A Court authorized this notice to inform you about the proposed update to the Settlement ("Expanded Settlement") and your rights.  Before any final judgment is entered, the Court will have a hearing to decide whether to approve the Expanded Settlement.  This notice is only a summary of the Expanded Settlement, the lawsuit, and your legal rights.  Regardless of whether this update is approved, the original Settlement and the changes to Experian's business practices that were already ordered as part of that Settlement, will remain in place.  More details about the proposed Expanded Settlement, the date when appeals are no longer allowed and the Settlement is final, deadlines, and your options are available in a longer document called the Settlement Agreement.   You can get a copy of the Settlement Agreement by visiting www.FraudShieldSettlement.com.

The lawsuit is known as *Hill-Green v. Experian Information Solutions, Inc.*, No. 3:19-cv-708 (E.D. Va.).  Judge M. Hannah Lauck of the United States District Court for the Eastern District of Virginia is overseeing the case.  The person who sued is called "Plaintiff" or "Named Plaintiff"; the company that she sued is called "Experian" or the "Defendant."

| 2. | What is this lawsuit about? |
|----|----|

The lawsuit claims that Experian violated the Fair Credit Reporting Act when it: (1) incorrectly reported some consumers' residential addresses as high-risk or non-residential, (2) did not have procedures to make sure that it reported Fraud Shield Indicators accurately (or correctly), and (3)

did not take off adverse information (that hurts your creditworthiness) on reports after seven years. Experian denies these claims and that it did anything wrong.

The Court did not decide whether either side was right or wrong. Instead, both sides agreed to the Settlement to resolve the case and provide benefits to consumers.

| 3. | What is a class action? |
|---|---|

A class action lawsuit tries to bring similar claims into one case in one court.  In a class action, one or more people called "Class Representatives" (in this case, Lisa Hill-Green) bring the case to court.  They have their name listed in the title of the case.  They sue on behalf of themselves and other people who have similar claims — called the Class or Class Members — which in this case may include you.  One court resolves the issues for everyone in the Class.  The Class Representative filed this case as a proposed class action.

| 4. | Why is there a proposed Settlement? |
|---|---|

The Court has not decided which side is right or wrong in this case.  Instead, both sides agreed to a settlement to avoid the costs and risks of a lengthy trial and appeals process.  Class Members will receive the benefits described in this notice.  The parties think the proposed Settlement is best for all Class Members.

| 5. | What are the different Settlements in this case? |
|---|---|

There is only one settlement in this case, *Hill-Green v. Experian*, but it has changed over time.  The Settlement provides both injunctive relief and money damages to certain consumers.  An injunction occurs when a court orders a person or company to do or not to do something.  In this case, the Court ordered Experian to change its business practices for its Fraud Shield product.

On April 27, 2022, the Court approved a settlement that provided benefits to all Class Members in the form of Court-ordered changes to Experian's business practices.  It did not provide money to class members and did not resolve claims against Experian in the litigation.

Recently, the parties agreed to modify the Settlement to provide additional Court-ordered changes to Experian's business practices (see Question 9) (the "Expanded Settlement"), as well as the possibility that certain consumers who were potentially harmed by Experian's reporting of high-risk and non-residential Fraud Shield Indicators (the "Money Settlement Class") receive a payment.  The Court will hold a final hearing to decide whether to approve the updated Settlement on _____ (see Question 18).

If the Court approves the Expanded Settlement and you are part of the Money Settlement Class, you will receive a notice by mail/email that will inform you how to file a claim for benefits.

Additional information can be found at www.FraudShieldSettlement.com.

**QUESTIONS? CALL TOLL-FREE 1-800-000-000 OR VISIT www.FRAUDSHIELDSETTLEMENT.com**

## WHO IS AFFECTED BY THE EXPANDED SETTLEMENT

| | |
|---|---|
| **6.** | **How do I know if I am part of the Class?** |

You are included in the Class if, between September 27, 2017 though _____, Experian sent your consumer report to a third party with an inaccurate Fraud Shield Indicator No. 10, 11, 16, or 17, showing that your address was either a high-risk or non-residential address.

| | |
|---|---|
| **7.** | **What is Fraud Shield?** |

When you apply for credit, potential creditors may contact Experian to obtain your credit report. In addition to a standard credit report, potential creditors may also ask Experian to provide additional information that help the creditor detect potential fraud. This additional information sold to potential creditors as part of a product Experian calls "Fraud Shield."

Specifically, when you apply for credit, a potential creditor may request that Experian check the address you provided in your application, along with current and prior addresses in your Experian credit file, against address information that it obtains from other sources. This information tells Experian whether one of your addresses has been used for a business and whether the business is of a type that Experian believes may be associated with fraud. If an address has been associated with that type of business, Experian will report it as non-residential and will report what type of business it appears to be. Experian does this by returning a "Fraud Shield Indicator," flagging the presence of a business at the address associated with you.

If Experian's records indicate that the address is a certain type of high-risk, business address (for example, a prison), Experian will also flag the address as potentially associated with fraud and advise the potential creditor to contact you directly to get more information. Experian does this by returning a "Fraud Shield Indicator," flagging the presence of a high-risk business at the address associated with you.

| | |
|---|---|
| **8.** | **What if I am not sure whether I am included in the Class?** |

If you are still not sure whether you are included in the Class, then you can call toll-free **[insert telephone number]** or visit www.FraudShieldSettlement.com for more information. You may contact the attorneys representing you for further information or assistance at: ExperianAddressSettlementCounsel@bm.net or write to: *Experian Settlement Class Counsel*, 763 J Clyde Morris Blvd., Suite 1A, Newport News, VA 23601.

## THE EXPANDED SETTLEMENT BENEFITS

| | |
|---|---|
| **9.** | **What benefits does the Expanded Settlement provide?** |

If the Expanded Settlement is approved and becomes final, it will provide injunctive relief benefits to all Class Members in addition to those already approved on April 27, 2022. An injunction occurs

when a court orders a person or company to do or not to do something.  In this case, the Court ordered Experian to change its business practices.  This Settlement requires Experian, at its expense, to design, implement, and maintain specific and substantial procedures that address the lawsuit's concerns about how Experian handles non-residential data and reports Fraud Shield Indicators.  All Class Members will receive the benefit from these changes in business practices.

Changes to Experian business practices will include:

- Experian will add a page to its consumer education website blog describing Fraud Shield Indicators and what they mean and instructions on how consumers can dispute an incorrect Fraud Shield Indicator.

- Experian will change its consumer file disclosures to show that Experian has flagged consumers' address(es) as non-residential and/or high-risk.  It will help consumers understand how this information was used for the Fraud Shield report sent to third parties.

- For at least five years after the Settlement becomes effective, all Experian consumer file disclosures that have a Fraud Shield Indicator must include a paragraph explaining the fraud shield indicator and provide instructions on how to dispute it.

- Experian will change the way it investigates disputes about Fraud Shield Indicators that use high-risk and non-residential addresses.  If a consumer contacts Experian to show these Fraud Shield Indicators are incorrect, Experian will accept the that the address is residential and change its records to show it is not a business address.

Judge Lauck will supervise and enforce these changes. The specific terms of these changes are included in the Settlement Agreement, a copy of which is available at www.FraudShieldSettlement.com.

Experian also agreed to pay and notice and administration costs up to $350,000.

| **10.** | **How long will the changes to Experian's business practices stay in effect?** |
|---|---|

Changes to Experian's business practices will stay in effect for five years after this Settlement becomes effective or until Experian stops reporting Fraud Shield Indicators that state that a consumer's address is either high-risk or non-residential, whichever is earlier.

During that time, the Court will continue to oversee these changes and enforce the Settlement Agreement terms.

| **11.** | **Can I get any money from the Expanded Settlement?** |
|---|---|

No.  Class Members in this Settlement will not receive a payment.  All Class Members will benefit from Experian's additional changes to its' business practices.

There is a separate proposed $23.45 million settlement for certain Class Members who may have been harmed by how Experian reported its high-risk and non-residential Fraud Shield Indicators. These individuals may get additional benefits, including a payment. If you are part of the Money Settlement Class and entitled to a payment, you will receive a notice in the mail/email.

| 12. | When will the proposed Expanded Settlement go into effect? |
|---|---|

The Court will hold a final approval hearing on ⬛⬛⬛⬛⬛⬛, to decide whether to approve the Expanded Settlement (*see* Question 18). Even if the Court approves the proposed update to the Settlement, there could be appeals of the Court's decision. The time for an appeal varies and could take more than a year.

The date when all appeals are completed, and the proposed Settlement becomes final, is called the Effective Date. You should visit the Settlement website at www.FraudShieldSettlement.com to check on the progress of the Court-approval process.

| 13. | How does the Expanded Settlement affect my rights? |
|---|---|

If the Court approves the Expanded Settlement, you will give up the right to sue Experian in a representative or class action for any claims in this lawsuit, including claims relating to Experian's reporting of high-risk or non-residential address Fraud Shield Indicators. This is called "releasing" your claims. This release is in addition to the release already approved by the Court.

However, you will keep your right to file an individual lawsuit for any damages that occurred before the Settlement became effective. Experian will have the right to deny it is responsible for damages.

More details are explained in the Settlement Agreement, available at, www.FraudShieldSettlement.com.

The Court's decisions in this case will apply to you even if you object to this Settlement or have any other claim, lawsuit, or proceeding pending against Experian relating to the same claims. If you have any questions about the release, you should visit the Settlement website for more information or consult with a lawyer (*see* Question 15).

| 14. | Can I choose to get out of the Expanded Settlement? |
|---|---|

No. This Settlement requires Experian to change its business practices and implement procedures to benefit all Class Members equally. As explained in Question 10, this type of benefit is injunctive. Therefore, under this type of class action, you cannot exclude yourself from the Class or this proposed Expanded Settlement.

However, as explained in Question 13, you still have the right to file an individual lawsuit against Experian for your damages and have your case and Experian's defenses heard in court.

## THE LAWYERS REPRESENTING YOU

| **15.** | **Do I have a lawyer in this case?** |
|---|---|

Yes. The Court approved the following lawyers as "Class Counsel" to represent you and other Class Members:

- Leonard Bennett, of Consumer Litigation Associates, P.C., in Newport News, Virginia;

- Kristi Kelly, of Kelly Guzzo PLC, in Fairfax, Virginia; and

- E. Michelle Drake, of Berger Montague PC, in Minneapolis, Minnesota.

You will not be charged for these lawyers. You may hire your own lawyer to represent you, if you so choose, but you will be responsible for paying your attorney's fees and expenses.

You may contact the attorneys representing you for further information or assistance at: ExperianAddressSettlementCounsel@bm.net or write to: *Experian Settlement Class Counsel*, 763 J Clyde Morris Blvd, Suite 1A, Newport News, VA 23601.

| **16.** | **How will the lawyers be paid? What will the Class Representative receive?** |
|---|---|

You will not be charged for these lawyers, and you will not have to pay any of their fees and expenses.  Class Counsel will ask the Court to award attorneys' fees and expenses and a service payment to the Class Representative to cover their work on the Money Settlement Class. Information about those fees will be contained in the notice describing the Money Settlement Class.  If Experian's records show that you could qualify for a payment, you will receive a notice in the mail/email.

## OBJECTING TO THE EXPANDED SETTLEMENT

You have the right to tell the Court that you do not agree with the Expanded Settlement or some part of it.

| **17.** | **How do I tell the Court that I do not like the Expanded Settlement?** |
|---|---|

If you are a Class Member, you can object to this Expanded Settlement if you do not like any part of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views before deciding whether to approve this Expanded Settlement.

To object, you must send a letter (or file your objection) with the Court by mailing it to the "Clerk of the United States District Court, Eastern District of Virginia, 701 East Broad Street, Richmond, Virginia 23219."    Your objection letter must be received by the Clerk no later than _____.

Your objection letter must include:

- Your name, address, e-mail address, and telephone number;

- The name of the case and the case number: *Hill-Green v. Experian Information Solutions, Inc.*, No. 3:19-cv-708-MHL (E.D. Va.); and

- A written statement about why you object to the Settlement.

If you are submitting an objection through an attorney, in addition to the above information, your objection letter must include:

- Your attorney's name, mailing address, email address, and phone number,

- A written statement saying whether you or your attorney intend to appear at the final approval hearing, and

- A written statement about why you object to the Expanded Settlement, including any legal and factual support you want to bring to the Court's attention and any evidence to support your objection.

You may also appear at the final approval hearing, either in person or through your own lawyer. If you intend to have a lawyer present, your lawyer must enter a written Notice of Appearance of Counsel with the Court no later than _____.  If you appear through your own lawyer, you are responsible for paying that lawyer.

For more information about the final approval hearing, see Questions 18-20 below.

If you do not follow the process outlined above, you will not be allowed to object, appear at the final approval hearing, or appeal the final approval of the proposed Settlement, the dismissal of the case.

## THE COURT'S FINAL APPROVAL HEARING

| 18. | When and where will the Court decide whether to finally approve the proposed Expanded Settlement? |
|---|---|

The Court will hold a final approval hearing to decide whether to approve the Expanded Settlement. You may attend and you may ask to speak, but you do not have to.

The hearing will be on _____, at _____, before Judge Lauck, at the United States District Court for the Eastern District of Virginia, 701 East Broad Street, Richmond, Virginia 23219.

At this hearing, the Court will consider whether this Settlement is fair, reasonable, and adequate.

The Court will consider all timely and proper objections.  The Court will listen to people who have asked for permission to speak at the hearing (as explained in Question 17).

After the hearing, the Court will decide whether to finally approve the Expanded Settlement. There may be appeals after that.  We do not know how long these decisions will take.

The Court may change the date or time of the final approval hearing without further notice to the Class or may decide to conduct the hearing remotely. Please check the website, www.FraudShieldSettlement.com, for updates on the hearing date, the court-approval process, and the Effective Date.

| 19. | Do I have to come to the hearing? |
|-----|-----------------------------------|

No.  Class Counsel will answer any questions the Court may have. However, you are welcome to come at your own expense.  You may also pay your own lawyer to attend, but it is not necessary.

If you send an objection, you do not have to come to Court to talk about it. As long as you filed your written objection on time and it includes the required information, the Court will consider it.

| 20. | May I speak at the hearing? |
|-----|-----------------------------|

You or your lawyer may ask the Court for permission to speak at the final approval hearing.  To do so, you must tell the Court in your objection letter that you or your lawyer would like to speak at the hearing. You must follow the process described in Question 17.  You cannot speak at the hearing if you do not follow this procedure.

## IF YOU DO NOTHING

| 21. | What happens if I do nothing at all? |
|-----|--------------------------------------|

You are not required to do anything to get benefits from the Expanded Settlement.  If the Court approves this update to the Settlement, then you will be bound by the Court's final judgment and the released claims explained in the Settlement Agreement.  If the Court does not approve the Expanded Settlement, the Settlement as it was approved on April 27, 2022, will remain in place.

## GETTING MORE INFORMATION

| 22. | How do I get more information? |
|-----|--------------------------------|

This notice is only a summary of the Settlement.  More details about this Settlement, the dates when appeals are no longer allowed and when the Settlement is final, deadlines, and your options are available in a longer document called the Settlement Agreement.

You can get a copy of the entire Settlement Agreement by visiting www.FraudShieldSettlement.com.  The website also provides answers to commonly asked

**QUESTIONS? CALL TOLL-FREE 1-800-000-000 OR VISIT www.FRAUDSHIELDSETTLEMENT.com**

questions, plus other information, to help you determine whether you are a Class Member.  In addition, some of the key documents in the case will be posted on the website.

You also may write with questions to the Settlement Administrator at Fraud Shield Settlement, P.O. Box 0000, City, ST 00000, email ExperianAddressSettlementCounsel@bm.net, or call the toll-free number, 1-800-000-0000.

**Do not write or call the judge or any court personnel concerning this lawsuit or notice.**

**EXHIBIT 6**

# Consumers With High Risk or Non-Residential Addresses on Experian Credit Reports

## *Could Be Affected by a Class Action Settlement*

An expanded Settlement has been reached in a class action lawsuit that claims that Experian reported inaccurate information about some consumers' addresses through its Fraud Shield product. Experian denies it did anything wrong.

### Are you included?

You are included if, between September 27, 2017 and Month 00, 2022, Experian sent your consumer report to a third party with an inaccurate Fraud Shield Indicator showing your address was either a high-risk or non-residential address. This may have impacted your ability to obtain credit.

### What does the Expanded Settlement provide?

There is no money available, but Experian will change its business practices in how it discloses and handles disputes about certain Fraud Shield Indicators. Experian also agreed to pay for notice and administration costs. A separate settlement provides money for consumers who were harmed by how Experian reported certain Fraud Shield Indicators.

### What are my rights?

If the Court approves this Settlement, you will be bound by the Court's decision. You will give up certain rights to sue Experian, including for the type of class-action claims made in this lawsuit, related to Experian's reporting of your address as a high-risk or non-residential address. You will keep your right to file an individual lawsuit for claims that arose before the Settlement became effective. You may object to the Settlement by **Month 00, 2022**. The Court will hold a hearing on **Month 00, 2022**, to consider whether to approve the Settlement. You or your lawyer may appear and speak at the hearing at your own expense.

---

**For More Information:**
**1-800-000-0000**
**FraudShieldSettlement.com**

**EXHIBIT 7**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

# Consumers Affected by High-Risk or Non-Residential Addresses on Experian Credit Reports

## *Could Get Money from a Class Action Settlement*

*A federal court authorized this notice. This is not a solicitation from a lawyer. You are not being sued.*

- There is a proposed expansion of the previously approved Settlement in a class action lawsuit against Experian Information Solutions, Inc. ("Experian"). The lawsuit claims that Experian did not take steps to make sure it accurately reported certain Fraud Shield Indicators.  Experian denies it did anything wrong.

- On April 27, 2022, the Court approved a settlement in this class action that resulted in Experian making certain changes to its business practices.  However, that settlement did not resolve all class claims brought against Experian.  After further negotiations, the parties agreed upon additional changes to Experian's business practices and resolution of money damages claims.

- This Notice is being provided to inform you about the benefits available to consumers who were affected by Experian's reporting of certain Fraud Shield Indicators.

- You may be eligible for a payment from the Expanded Settlement if you were likely affected by Experian's reporting of certain Fraud Shield Indicators from July 1, 2018 through July 31, 2021; or (2) if you, from September 1, 2017 to July 31, 2021, contacted Experian to inquire about and/or dispute a non-residential or high-risk address indicator.

- The Settlement will provide $22,450,000 to pay (1) money to eligible Class Members, (2) any court-approved attorneys' fees and expenses, (3) a Class Representative service payment, and (4) administrative and notice costs.  Anyone who was not affected by Experian's Fraud Shield reporting or who did not dispute a non-residential or high-risk address indicator is not eligible to receive any money.

- Your legal rights are affected by the proposed Settlement even if you do nothing.

- Your rights and options relating to the Settlement — and the deadlines to exercise them — are explained in this notice.  Please read this entire notice carefully.

**Questions? Call 1-xxx-xxx-xxx, visit www.FraudShieldSettlement.com, or e-mail x**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a Claim** | Get a cash payment if you qualify.  If you previously contacted Experian about the Fraud Shield reporting and you were affected or harmed by the reporting, you will have the option to have your current address no longer be reported as a non-residential or high-risk address.  Claim Forms are due on _____ |
| **Object to the Settlement** | Write to the Court about why you do not like the proposed Settlement (*see* Question 18).  Objections are due on _____. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the proposed Settlement (*see* Questions 20-22). |
| **Do Nothing** | You will not receive a payment from the Settlement. If the Settlement is approved, you will give up any rights to sue Experian about the same legal claims in this Settlement (*see* Question 23). |

**Questions? Call 1-xxx-xxx-xxx, visit www.FraudShieldSettlement.com, or e-mail x**

**WHAT THIS NOTICE CONTAINS**

BASIC INFORMATION ................................................................................................ 4
    1.    Why was this notice issued? .................................................... 4
    2.    What is this lawsuit about? ...................................................... 4
    3.    Why is this a class action? ...................................................... 4
    4.    Why is there a proposed Settlement? ...................................... 4
    5.    What are the different Settlements in this case? ...................... 4
WHO IS IN THE MONEY SETTLEMENT CLASS? ................................................... 5
    6.    How do I know if I am part of the Money Settlement Class? .......... 5
    7.    What is Fraud Shield? .............................................................. 5
    8.    What if I am not sure whether I am included? ......................... 6
THE MONEY SETTLEMENT CLASS BENEFITS ..................................................... 6
    9.    What benefits does the proposed Settlement provide? ............. 6
    10.    How can I get a payment? ........................................................ 6
    11.    If I am a member of the Money Settlement Class, when will I get my
        payment? ................................................................................ 7
    12.    How does the Settlement affect my rights? ............................. 7
    13.    Can I choose not to be in the Money Settlement Class? .......... 8
    14.    If I exclude myself from the Money Settlement Class, can I sue
        Experian for the same thing later? ......................................... 9
    15.    If I exclude myself from the Money Settlement Class, can I get a
        payment? ................................................................................ 9
THE LAWYERS REPRESENTING YOU .................................................................. 9
    16.    Do I have a lawyer in this case? ............................................. 9
    17.    How will the lawyers be paid? What will the Class Representative
        receive? .................................................................................. 9
OBJECTING TO THE SETTLEMENT ..................................................................... 9
    18.    How do I tell the Court if I do not agree with the proposed Settlement? ......... 9
    19.    What is the difference between objecting and opting-out? ............................ 10
THE COURT'S FINAL APPROVAL HEARING ...................................................... 10
    20.    When and where will the Court decide whether to finally approve the
        proposed Settlement? ............................................................. 10
    21.    Do I have to come to the hearing? .......................................... 11
    22.    May I speak at the hearing? ................................................... 11
IF YOU DO NOTHING ............................................................................................ 11
    23.    What happens if I do nothing at all? ....................................... 11
GETTING MORE INFORMATION ......................................................................... 11
    24.    How do I get more information? ............................................. 11

## BASIC INFORMATION

| **1.** | **Why was this notice issued?** |
|---|---|

A Court authorized this notice to inform you about the proposed Settlement and your rights. Before any final judgment is entered, the Court will have a hearing to decide whether to approve the Settlement.  This notice is only a summary of the Settlement. More details about the proposed Settlement are in the Settlement Agreement available at www.FraudShieldSettlement.com.

The lawsuit is known as *Hill-Green v. Experian Information Solutions, Inc.*, No. 3:19-cv-708-MHL (E.D. Va.).  Judge M. Hannah Lauck of the United States District Court for the Eastern District of Virginia is overseeing the case.  The person who sued is called "Plaintiff" or "Named Plaintiff"; the company that she sued, Experian Information Solutions, Inc., is called "Experian" or the "Defendant."

| **2.** | **What is this lawsuit about?** |
|---|---|

The lawsuit claims that Experian violated the Fair Credit Reporting Act when it: (1) incorrectly reported some consumers' residential addresses as high-risk or non-residential, (2) did not have procedures to make sure that it reported Fraud Shield Indicators accurately (or correctly), and (3) did not take off adverse information (that hurts your creditworthiness) on reports after seven years.  Experian denies these claims and that it did anything wrong.

The Court did not decide whether either side was right or wrong.  Instead, both sides agreed to the Settlement to resolve the case and provide benefits to consumers.

| **3.** | **Why is this a class action?** |
|---|---|

A class action lawsuit tries to bring similar claims into one case in one court.  In a class action, one or more people called "Class Representatives" (in this case, Lisa Hill-Green) bring the case to court.  They have their name listed in the title of the case.  They sue on behalf of themselves and other people who have similar claims — called the Class or Class Members — which in this case may include you.  One court resolves the issues for everyone in the Class.   The Class Representative filed this case as a proposed class action.

| **4.** | **Why is there a proposed Settlement?** |
|---|---|

The Court has not decided which side is right or wrong in this case.  Instead, both sides agreed to a settlement to avoid the costs and risks of a lengthy trial and appeals process.  Class Members will receive the benefits described in this notice.  The parties think the proposed Settlement is best for all Class Members.

| **5.** | **What are the different Settlements in this case?** |
|---|---|

There is only one settlement in this case, *Hill-Green v. Experian*, but it has changed over time.  The Settlement provides both injunctive relief and money damages to certain consumers.  An injunction occurs when a court orders a person or company to do or not to do something.  In this

**Questions? Call 1-xxx-xxx-xxx, visit www.FraudShieldSettlement.com, or e-mail x**

case, the Court ordered Experian to change its business practices for its Fraud Shield product.

On April 27, 2022, the Court approved a settlement that provided benefits to all Class Members in the form of Court-ordered changes to Experian's business practices.  It did not provide money to class members and did not resolve claims against Experian in the litigation.

Recently, the parties agreed to modify the Settlement to provide additional Court-ordered changes to Experian's business practices (see Question 9) (the "Expanded Settlement"), as well as the possibility that certain consumers who were potentially harmed by Experian's reporting of high-risk and non-residential Fraud Shield Indicators (the "Money Settlement Class") receive a payment.  The Court will hold a final hearing to decide whether to approve the updated Settlement on _____ (see Question 20).

If the Court approves the Expanded Settlement and you are part of the Money Settlement Class, you will receive a notice by mail/email that will inform you how to file a claim for benefits.

Additional information can be found at www.FraudShieldSettlement.com.

### WHO IS IN THE MONEY SETTLEMENT CLASS?

| | |
|---|---|
| **6.** | **How do I know if I am part of the Money Settlement Class?** |

The Court has decided that the following consumers are in the Money Settlement Class: (1) anyone who was likely affected by Experian's reporting of certain Fraud Shield Indicators from July 1, 2018 through July 31, 2021; or (2) anyone who, from September 1, 2017 to July 31, 2021, contacted Experian to inquire about and/or dispute a non-residential or high-risk address indicator.

The complete criteria for who is included can be found in the Settlement Agreement, available at www.FraudShieldSettlement.com.

As a Money Settlement Class Member, you can visit www.FraudShieldSettlement.com and see which addresses Experian reported about you and labeled as non-residential or high risk.

If you are a member of the Money Settlement Class, you are also a member of the Policy Change Settlement Class, which includes:

> All consumers in the United States for whom Experian, within two years prior to the filing of the Complaint in this action and during its pendency, furnished a consumer report to a third party containing an inaccurate Fraud Shield Indicator No. 10, 11, 16, or 17 indicating that the consumer's address was either a high-risk or non-residential address.

| | |
|---|---|
| **7.** | **What is Fraud Shield?** |

When you apply for credit, potential creditors may contact Experian to obtain your credit report. In addition to a standard credit report, potential creditors may also ask Experian to provide additional information that help the creditor detect potential fraud. This additional information is provided by Experian's Fraud Shield product.  If the information you provide when you apply for

5

**Questions? Call 1-xxx-xxx-xxx, visit www.FraudShieldSettlement.com, or e-mail x**

credit, or certain information already on your credit file meets certain criteria, the Fraud Shield product will return an "Indicator," flagging the presence of the criteria.

Specifically, when you apply for credit, a potential creditor may request that Experian check the address you provided in your application, along with current and prior addresses in your Experian credit file, against address information that it obtains from other sources. This information tells Experian whether an address has been used for a business and whether the business is of a type that Experian believes may be associated with fraud. If an address has been associated with that type of business, Experian will report it as non-residential and will report what type of business it appears to be. If Experian's records indicate that the address is a certain type of high-risk business address (for example, a prison), Experian will also flag the address as potentially associated with fraud and advise the potential creditor to contact you directly to get more information.

| 8. | What if I am not sure whether I am included? |
|----|---|

If you are still not sure whether you are included in the Classes, call toll-free [**insert telephone number**] or visit www.FraudShieldSettlement.com for more information. You may contact the attorneys representing you for further information or assistance at: ExperianAddressSettlementCounsel@bm.net or write to: *Experian Settlement Class Counsel*, 763 J Clyde Morris Blvd., Suite 1A, Newport News, VA 23601.

### THE MONEY SETTLEMENT CLASS BENEFITS

| 9. | What benefits does the Settlement provide? |
|----|---|

Experian has agreed to pay $22,450,000 (the "Settlement Class Fund") for the benefit of the Money Settlement Class. Payments will be made by check to each Money Settlement Class Member who submits a valid claim form (*see* Question 10). The Parties estimate Money Settlement Class Members will each receive between $_____ and $____. This is just an estimate, and the precise amount of the payment will depend on the number of individuals that submit valid claim forms and what the Court decides to award for the Class Representative service payment, attorneys' fees and expenses, and administration and notice costs.

Money Settlement Class Members will also benefit from the additional changes Experian will make to its business practices if the Settlement is approved. The Expanded Settlement requires Experian, at its expense, to design, implement, and maintain specific and substantial procedures that address the lawsuit's concerns about how Experian handles non-residential data and reports Fraud Shield Indicators. More details about the policy change benefits are available at www.FraudShieldSettlement.com.

| 10. | How can I get a payment? |
|-----|---|

Money Settlement Class Members will only qualify to get a payment if they remain in the Class and submit a valid claim form.

6

**Questions? Call 1-xxx-xxx-xxx, visit www.FraudShieldSettlement.com, or e-mail x**

You can get a Claim Form at www.FraudShieldSettlement.com. Please read the instructions carefully and fill out the form completely and accurately. Claim Forms can be submitted two ways:

- Electronically online at www.FraudShieldSettlement.com, or
- Mailed to:

Fraud Shield Settlement<br>
P.O. Box 0000<br>
City, ST 00000

Your Claim Form must be submitted online or by mail postmarked or received no later than [**MONTH 00, 2022**].

The check will be mailed to the address on your Claim Form. If your address has changed or is changing, you should contact the Settlement Administrator at _____.

## 11.   If I am a member of the Money Settlement Class, when will I get my payment?

Payments will be made to Money Settlement Class Members who submit a valid Claim Form and after the Court grants "final approval" to the Settlement and all appeals are resolved. It is always uncertain whether appeals can be resolved and resolving them can take time. Please be patient. You can visit www.FraudShieldSettlement.com after _____ to check on the progress of the Court-approval process.

## 12.   How does the Settlement affect my rights?

If the Court approves the Settlement, you will give up the right to sue Experian in a representative or class action for any claims in this lawsuit, including claims relating to Experian's reporting of high-risk or non-residential address Fraud Shield Indicators. This is called "releasing" your claims.

The Court's decisions in this case will apply to you even if you object to this Settlement or have any other claim, lawsuit, or proceeding pending against Experian relating to the same claims. If you have any questions about the release, you should visit the Settlement website for more information or consult with a lawyer (*see* Question 16).

If you do not exclude yourself from the Money Settlement Class (*see* Question 13) you will *not* be able to sue Experian for inaccurately reporting your address as non-residential or high-risk, if that reporting occurred before the Effective Date of the Settlement. You will agree to a "Release of Claims," stated below, which describes exactly the legal claims that you will give up.

> "Released Claims" are claims of each member of the Rule 23(b)(3) [Money] Settlement Class and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf that were actually asserted or that could have been asserted based on the allegations in the operative complaint and/or [Experian's reporting of Fraud Shield Indicators stating that the consumer's address was either a high-risk or non-residential address (Fraud Shield Indicators 10, 11 16, and 17)] in this Litigation. Rule

23(b)(3) [Money] Settlement Class Released Claims do not include claims separate and unrelated to [Experian's reporting of Fraud Shield Indicators 10, 11, 16 or 17] or claims brought under 15 U.S.C. § 1681i or for allegations of inaccuracy other than with regard to [Experian's reporting of Fraud Shield Indicators 10, 11, 16 or 17].  The Rule 23(b)(3) [Money] Settlement Class Released Claims include claims for actual damages, statutory damages, punitive damages, attorneys' fees, and any and all relief of any kind whatsoever, including claims asserted on a class, mass, or collective action basis and claims asserted on an individual, non-representative basis.

| **13.** | **Can I choose not to be in the Money Settlement Class?** |
|---|---|

Yes, you may exclude yourself from the Money Settlement Class.  If you do not want to remain a member of the Money Settlement Class and want to keep your right to sue or continue to sue Experian for actual damages on your own, you must take steps to exclude yourself.  This is sometimes referred to as "opting out" of the Settlement Class.  Opting out gives you the right to bring your own lawsuit but does not guarantee that your own lawsuit will be successful.

To exclude yourself from the Money Settlement Class, you must send a written request for exclusion to the Settlement Administrator, at the address below:

**[insert name and address]**

To be valid, the proposed exclusion request must contain:

- Your name, original signature, current postal address, and current telephone number, and
- A statement that you want to be excluded from the (b)(3) Settlement Class in *Hill-Green v. Experian Information Solutions Inc*.

Your exclusion request must be postmarked no later than **Month 00, 0000**.

You cannot exclude yourself by telephone or by e-mail.  You also cannot exclude yourself by mailing a request to any location other than the address specified above or by mailing a request after the deadline.  You also cannot exclude yourself as part of a group, aggregate, or class involving more than one consumer.

| **14.** | **If I do not exclude myself from the Money Settlement Class, can I sue Experian for the same thing later?** |
|---|---|

No.  Unless you exclude yourself from the Money Settlement Class, you will not be able to sue Experian for inaccurately reporting your address as non-residential or high-risk, provided that reporting occurred before the Effective Date of the Settlement.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You may need to exclude yourself from this Settlement to continue your own lawsuit.  Remember, your exclusion request must be postmarked by _____.

**Questions? Call 1-xxx-xxx-xxx, visit www.FraudShieldSettlement.com, or e-mail x**

| **15.** | **If I exclude myself from the** Money **Settlement Class, can I get a payment?** |
|---|---|

No.  If you exclude yourself from the Money Settlement Class, you will not receive a cash payment.

## THE LAWYERS REPRESENTING YOU

| **16.** | **Do I have a lawyer in this case?** |
|---|---|

Yes.  The Court approved the following lawyers as "Class Counsel" to represent you and other Money Settlement Class Members:

- Leonard Bennett, of Consumer Litigation Associates, P.C., in Newport News, Virginia

- Kristi Kelly, of Kelly Guzzo PLC, in Fairfax, Virginia

- E. Michelle Drake, of Berger Montague PC, in Minneapolis, Minnesota

You will not be charged for these lawyers.  You may hire your own attorney, if you so choose, but you will be responsible for paying your attorney's fees and expenses.

You may contact the attorneys representing you for further information or assistance at: ExperianAddressSettlementCounsel@bm.net or write to: *Experian Settlement Class Counsel*, 763 J Clyde Morris Blvd, Suite 1A, Newport News, VA 23601.

| **17.** | **How will the lawyers be paid?  What will the Class Representative receive?** |
|---|---|

Class Counsel will ask the Court to approve attorneys' fees and expenses in an amount up to 33% of the Settlement Class Fund and a $10,000 service payment to the Class Representative.  If the Court approves these amounts, they will be paid out of the Settlement Class Fund.

## OBJECTING TO THE SETTLEMENT

| **18.** | **How do I tell the Court if I do not agree with the proposed Settlement?** |
|---|---|

If you are a Class Member, you can object to the Settlement if you do not like any part of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views before deciding whether to approve the Settlement.

To object, you must file your objection with the Court by mailing it to the "Clerk of the United States District Court, Eastern District of Virginia, 701 East Broad Street, Richmond, Virginia 23219."  Your objection letter must be received by the Clerk no later than _____.

Your objection letter must include:

- The name of the case and the case number: *Hill-Green v. Experian Information Solutions, Inc.*, No. 3:19-cv-708-MHL (E.D. Va.);

9

**Questions? Call 1-xxx-xxx-xxx, visit www.FraudShieldSettlement.com, or e-mail x**

- Your name, address, e-mail address, and telephone number; and

- A written statement detailing the specific basis for each objection.

If you are submitting an objection through an attorney, in addition to the above information, your objection must include:

- Identity, mailing address, email address, and phone number for your attorney.

- A statement of whether you or your attorney intend to appear at the Final Fairness Hearing; and

- A written statement detailing the specific basis for each objection, including any legal and factual support that you wish to bring to the Court's attention and any evidence you wish to introduce in support of the objection.

You may also appear at the final approval hearing, either in person or through your own lawyer. If you intend to have a lawyer present, your lawyer must enter a written Notice of Appearance of Counsel with the Court no later than _____. If you appear through your own lawyer, you are responsible for paying that lawyer.

For more information about the final approval hearing, *see* Questions 20-22 below.

If you do not follow the process outlined above, you will not be allowed to object, appear at the final approval hearing, or appeal the final approval of the proposed Settlement or the dismissal of the case.

| **19.** | **What is the difference between objecting and opting-out?** |
| --- | --- |

Objecting is simply telling the Court that you do not like something about the Settlement.  Opting out, or excluding yourself, means that you will not be included in the Settlement.

You can object **or** opt out of the Money Settlement Class but you cannot do both. If you exclude yourself, you have no basis to object to the Settlement because it will no longer affect you. However, even if you exclude yourself from the Money Settlement Class, you can still object to the Expanded Settlement as a Policy Change Class Member.

Go to www.FraudShieldSettlement.com to learn more about your rights in the Expanded Settlement.

## THE COURT'S FINAL APPROVAL HEARING

| **20.** | **When and where will the Court decide whether to finally approve the proposed Settlement?** |
| --- | --- |

The Court will hold a final approval hearing to decide whether to approve the proposed Settlement. You may attend and you may ask to speak at the hearing, but you do not have to.

10

The hearing will be on _____, at _____, before Judge Lauck, in the United States District Court for the Eastern District of Virginia, Richmond Division, in Courtroom 6100 at 701 East Broad Street, Richmond, Virginia 23219.

At the hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will consider all timely and proper objections. The Court will listen to people who have asked for permission to speak at the hearing (*see* Question 20).

After the hearing, the Court will decide whether to approve the proposed Settlement. There may be appeals. We do not know how long these decisions will take.

The Court may change the date of the final approval hearing without further notice to the Class or may decide to conduct the hearing remotely. Please check the website, www.FraudShieldSettlement.com, for updates on the hearing date, the court-approval process, and the Effective Date.

| 21. | Do I have to come to the hearing? |
|-----|-----------------------------------|

No. Class Counsel will answer any questions the Court may have. However, you are welcome to come to the hearing at your own expense. You may also pay your own lawyer to attend, but it is not necessary.

If you send an objection, you do not have to come to Court to talk about it. As long as you filed your written objection on time and it includes the required information, the Court will consider it.

| 22. | May I speak at the hearing? |
|-----|------------------------------|

You or your lawyer may ask the Court for permission to speak at the final approval hearing. To do so, you must tell the Court in your objection letter that you or your lawyer would like to speak at the hearing. You must also follow the process outlined in Question 18. You cannot speak at the hearing if you do not follow this procedure.

### IF YOU DO NOTHING

| 23. | What happens if I do nothing at all? |
|-----|--------------------------------------|

If you do nothing, you will not receive a cash payment. If the Court approves the proposed Settlement, you will be bound by the Court's final judgment and the released claims explained in the Settlement Agreement. If the Court does not approve the Settlement, the Settlement as it was approved on April 27, 2022, will remain in place.

### GETTING MORE INFORMATION

| 24. | How do I get more information? |
|-----|--------------------------------|

This notice is only a summary of the Settlement. More details about this Settlement, the dates when appeals are no longer allowed and when the Settlement is final, deadlines, and your options

**Questions? Call 1-xxx-xxx-xxx, visit www.FraudShieldSettlement.com, or e-mail x**

are available in a longer document called the Settlement Agreement.

You can get a copy of the entire Settlement Agreement by visiting www.FraudShieldSettlement.com.  The website also provides answers to commonly asked questions, plus other information, to help you determine whether you are a Class Member.  In addition, some of the key documents in the case will be posted on the website.

You also may write with questions to the Settlement Administrator at Fraud Shield Settlement, P.O. Box 0000, City, ST 00000, email ExperianAddressSettlementCounsel@bm.net, or call the toll-free number, 1-800-000-0000.

**Do not write or call the judge or any court personnel concerning this lawsuit or notice.**

**Questions? Call 1-xxx-xxx-xxx, visit www.FraudShieldSettlement.com, or e-mail x**

**EXHIBIT 8**

**New Blog Posting**

Address Mistakenly Reported as Non-Residential of "High Risk"

Question: "My credit report says Experian's internal records classify my address as a non-residential business address that is at high risk for being associated with fraud.  The address is a residential address.  What is going on?  How can I fix this?"

Answer:  When you apply for credit, potential creditors may contact Experian to obtain your credit report.  In addition to a standard credit report, potential creditors may also ask Experian to provide information about addresses associated with you, including whether Experian's internal records classify addresses associated with you as non-residential, as being associated with a business, or as being associated with a high risk of fraud. Potential creditors can use this information to assist them in preventing fraud and identity theft.

With respect to addresses, specifically, when you apply for credit, a potential creditor may request that Experian check the address you provided in your application, along with current and prior addresses in your Experian credit file, against address information that it obtains from other sources.  This information tells Experian whether an address has been used for a business and whether the business is of a type that Experian believes may be associated with fraud.  If an address has been associated with that type of business, Experian will report it as non-residential, and will report what type of business it appears to be.  If Experian's records indicate that the address is a certain type of high-risk, business address (for example, a prison), Experian will also flag the address as potentially associated with fraud and advise the potential creditor to contact you directly to obtain more information.

Experian prohibits potential creditors from basing credit decisions on information about addresses that it provided to the potential creditor without first contacting you to obtain more information.

**If you believe Experian has incorrectly classified your address as a non-residential business address, <u>you can contact Experian via mail, phone, or the internet</u> and ask Experian to correct its records.**

**EXHIBIT 9**

**<u>Notices Language For Consumer Disclosure</u>**

<u>Current Notices:</u>

1.     This address may be perceived as high risk since it is a non-residential address: [ADDRESS & CLASSIFICATION].

2.     This address may be perceived as a high risk because it has pertained to a business, or was used as a mail drop or a delivery service: [ADDRESS & CLASSIFICATION].

3.     This address has pertained to a business: %s %s %s %s.

<u>New Language to Replace Both 1 &2</u>:

Experian has internal records classifying [ADDRESS] as a non-residential business address that is high risk for being associated with fraud.  If a lender or other Experian customer purchased information about this address, Experian would report it as such.

<u>New Language to Replace 3</u>:

Experian has internal records classifying [ADDRESS] as a non-residential business address.  If a lender or other Experian customer purchased information about this address, Experian would report it as such.


**<u>Paragraph Language for Consumer Disclosure</u>**

When you apply for credit, potential creditors may contact Experian to obtain your credit report. In addition to a standard credit report, potential creditors may also ask Experian to provide information about addresses associated with you, including whether Experian's internal records classify addresses associated with you as non-residential, as being associated with a business, or as being associated with a high risk of fraud. Potential creditors can use this information to assist them in preventing fraud and identity theft. **If you believe Experian has incorrectly classified your address as a non-residential business address, <u>you can contact Experian via mail, phone, or the internet</u> and ask Experian to correct its records.**

**EXHIBIT 10**

| SIC | RISK_LEVEL | SIC_DS |
|-----|-----------|--------|
| 42150100 | H | COURIER SERVICES |
| 42150200 | H | PARCEL DELIVERY |
| 42150300 | H | SHIPPING MASTERS |
| 42150400 | H | PARCEL POST ASSEMBLY SERVICE |
| 42150600 | H | MEDICAL COURIER SVC |
| 43110100 | H | POST OFFICES |
| 60990700 | H | TRAVELERS' CHECKS-ISSUED |
| 44910400 | H | PORTS |
| 45130100 | H | AIR COURIER SERVICES |
| 45130200 | H | EXPEDITERS |
| 45130300 | H | PARCELS FOR FOREIGN COUNTRIES |
| 48220200 | H | TELEGRAPH SERVICE |
| 48220500 | H | TELEGRAM SERVICE |
| 60210300 | H | AUTOMATED TELLER MACHINES |
| 60210400 | H | LETTERS OF CREDIT |
| 60990100 | H | CURRENCY EXCHANGES |
| 60990200 | H | MONEY ORDER SERVICE |
| 60990300 | H | CHECK CASHING SERVICE |
| 60990400 | H | MONEY BROKERS |
| 60990500 | H | FOREIGN EXCHANGE BROKERS & DEALE |
| 60990600 | H | ESCROW SERVICE |
| 60990800 | H | SAFE DEPOSIT BOX-RENTAL |
| 60990900 | H | CLEARING HOUSES |
| 60991000 | H | MONEY TRANSFER SERVICE |
| 60991100 | H | REGISTERED AGENTS |
| 60991200 | H | PAYROLL DISTRIBUTION SERVICE |
| 60991400 | H | MONEY ORDER SYSTEMS |
| 60991500 | H | BANKING SYSTEMS & SERVICE-ELECTR |
| 60991700 | H | BUREAUX DE CHANGE |
| 60999900 | H | FUNCTIONS RELATED TO DEPOSIT BAN |
| 72992400 | H | CREDIT & DEBT COUNSELING SERVICE |
| 72995800 | H | CREDIT RESTORATION |
| 72996600 | H | CONSUMER ADVISORY COUNSELING |
| 72998400 | H | BILL PAYING SERVICE |
| 73220100 | H | COLLECTION AGENCIES |
| 73220200 | H | COLLECTION SYSTEMS |
| 73220300 | H | TRACING BUREAUS |
| 73220500 | H | CHECK COLLECTION SERVICE |
| 73230100 | H | CREDIT REPORTING AGENCIES |
| 73230200 | H | SKIP TRACING |
| 73230300 | H | CREDIT INVESTIGATORS |
| 73310400 | H | MAILING LISTS |
| 73310500 | H | ADVERTISING-DIRECT MAIL |

| 73310800 | H | LETTER SHOP SERVICE |
|---|---|---|
| 73310900 | H | DIRECT MAIL SERVICES |
| 73891200 | H | CALL CENTERS |
| 73892600 | H | CHECK CASHING PROTECTION SYSTEMS |
| 73894600 | H | VOICE MAIL MESSAGING SERVICE |
| 73895800 | H | LIQUIDATORS |
| 73897000 | H | MESSENGER SERVICE |
| 73897100 | H | MAIL BOX-RENTALS |
| 80590600 | H | HOMES & INSTITUTIONS |
| 80630200 | H | SANITARIUMS |
| 80630300 | H | PSYCHIATRIC TREATMENT FACILITIES |
| 80639800 | H | PSYCHIATRIC HOSPITALS |
| 80930500 | H | MENTAL HEALTH CLINICS |
| 83225600 | H | PROBATION SERVICES |
| 83311000 | H | DEVELOPMENTALLY DISABLED INFO/SV |
| 83610400 | H | HOMES-CHILDREN |
| 83611200 | H | HOMES-BOYS |
| 83611700 | H | JUVENILE DETENTION CENTERS |
| 83611800 | H | CHILDRENS NURSING & REHABILITATI |
| 83611900 | H | YOUTH HOMES |
| 83612200 | H | ORPHANAGES |
| 83612400 | H | HOMES-GIRLS |
| 83612600 | H | HALFWAY HOUSE |
| 87449900 | H | JAILS, PRIVATELY OPERATED |
| 92230100 | H | FEDERAL GOVT-CORRECTIONAL INSTIT |
| 92230200 | H | STATE GOVT-CORRECTIONAL INSTITUT |
| 92230300 | H | COUNTY GOVT-CORRECTIONAL INSTITU |
| 92230400 | H | CITY GOVT-CORRECTIONAL INSTITUTI |

**EXHIBIT 11**

**From: info@FraudShieldSettlement.com**
**To: [Class Member email address]**
**Subject: Notice of Experian Credit Reports Settlement**

Dear [Class Member Name]:

# Consumers Affected by High-Risk or Non-Residential Addresses on Experian Credit Reports

## *Could Get Money from a*
## *Class Action Settlement*

| YOUR UNIQUE ID: | |
|---|---|
| **PLEASE SAVE THIS NUMBER TO FILE A CLAIM** | |

*Para una notificación en Español, llamar _____ o visitar* www.FraudShieldSettlement.com

You are receiving this notice because you may be a Class member in a proposed class action settlement.

**What's this Case About?** The lawsuit claims that Experian reported inaccurate information about some consumers' addresses through its Fraud Shield product. Experian denies it did anything wrong.

**Am I Included?** Based on Experian's records, you have been identified as a Settlement Class Member because you may have been affected by Experian's reporting of certain Fraud Shield Indicators from July 1, 2018 through July 31, 2021. Experian reported the following address on your report as non-residential: INSERT.

**What does the Settlement Provide?** The Settlement establishes a $22,450,000 Settlement Fund for payments to eligible Class Members after payment of attorneys' fees and expenses (not to exceed one-third of the Settlement Fund), the Class Representative service payment of $10,000, and administrative and notice costs. The Parties estimate you could receive between $_____ and $____, but that is just an estimate and not guaranteed. The Settlement also establishes substantial and comprehensive changes to Experian's business practices that will benefit all Class Members.

**How Do I Get a Payment?** You must submit a valid claim form by _____.

## FILE A CLAIM

**Your Other Rights**. Even if you do nothing, you will be bound by the Court's decision. If you want to keep your right to sue Experian yourself, you must exclude yourself from the Settlement by **Month 00, 2022**. If you stay in the Settlement but do not agree with the terms, you may object to it by **Month 00, 2022**.

The Court will hold a hearing on **Month 00, 2022** to consider whether to approve the Settlement, a request for attorneys' fees and expenses, and service payments. You or your lawyer may appear and speak at the hearing at your own expense.

To unsubscribe from this list, please click on the following link: Unsubscribe

**From: info@FraudShieldSettlement.com**
**To: [Class Member email address]**
**Subject: Notice of Experian Credit Reports Settlement**

Dear [Class Member Name]:

# Consumers Affected by High-Risk or Non-Residential Addresses on Experian Credit Reports

## *Could Get Money from a Class Action Settlement*

| YOUR UNIQUE ID: | |
|---|---|
| **PLEASE SAVE THIS NUMBER TO FILE A CLAIM** | |

*Para una notificación en Español, llamar _____ o visitar www.FraudShieldSettlement.com*

You are receiving this notice because you may be a Class member in a proposed class action settlement.

**What's this Case About?** The lawsuit claims that Experian reported inaccurate information about some consumers' addresses through its Fraud Shield product.  Experian denies it did anything wrong.

**Am I Included?** Based on Experian's records, you have been identified as a Settlement Class Member because between July 1, 2018 and July 31, 2021, you submitted an address dispute to Experian while your Experian credit report contained a high-risk or non-residential Fraud Shield Indicator. Experian reported the following address on your report as non-residential: INSERT.

**What does the Settlement Provide?** The Settlement establishes a $22,450,000 Settlement Fund for payments to Eligible Class Members after payments of attorneys' fees and expenses (not to exceed one third of the Settlement Fund), the Class Representative service payment of $10,000, and administrative and notice costs. The Parties estimate you could receive between $_____ and $____, but this is just an estimate and is not guaranteed. The Settlement also establishes substantial and comprehensive changes to Defendant's business practices that will benefit all Class Members.

**How Do I Get a Payment?** You must submit a valid claim form by _____.

## FILE A CLAIM

**Your Other Rights**. Even if you do nothing, you will be bound by the Court's decisions.  If you want to keep your right to sue Experian yourself, you must exclude yourself from the Settlement by **Month 00, 2022**. If you stay in the Settlement but do not agree with the terms, you may object to it by **Month 00, 2022**.

The Court will hold a hearing on **Month 00, 2022** to consider whether to approve the Settlement, a request for attorneys' fees and expenses, and service payments.  You or your lawyer may appear and speak at the hearing at your own expense.

**For more information: Call _____ or visit www.FraudShieldSettlement.com**

To unsubscribe from this list, please click on the following link: Unsubscribe