**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

LISA HILL-GREEN, *on behalf of
herself and all others similarly situated,*

              Plaintiffs,                          Civil Action No. 3:19-cv-708

v.

EXPERIAN INFORMATION SOLUTIONS,
INC.,

              Defendant.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Plaintiff moves the Court for approval of a class settlement that provides significantly expanded injunctive relief under Fed. R. Civ. P. 23(b)(2) and $22,450,000 to compensate a narrower Rule 23(b)(3) class of consumers who may have suffered tangible damages. The Court has direct knowledge that the case has been hard fought and that negotiations that followed were arm's length. This is a strong result that resolves an important inaccuracy problem in Experian's credit reports.

The Parties have entered into a Settlement Agreement (attached as Exhibit 1 to the Motion and referred to as the "Agreement") that will benefit not only individual class members but also millions of American consumers going forward. This Agreement includes two separate class settlements with separate notices, separate settlement administrators, separate releases, and separate consideration. The first, the Rule 23(b)(2) Settlement Class, includes tens of millions of consumers in the United States for whom Experian, beginning two years before this case was filed reported a Fraud Shield Indicator inaccurately flagged that the consumer's address was either a

1

high-risk or non-residential address. The Rule 23(b)(2) Settlement Class gives a minimal release,[1] but receives significant additional injunctive relief through the benefits and practice changes outlined below.[2]

The second settlement, the Rule 23(b)(3) Settlement Class, is a group of about 565,000[3] consumers who either: (1) may have been damaged by Experian's reporting of certain Fraud Shield indicators from July 1, 2018 through July 31, 2021; or (2) contacted Experian to ask about or dispute a non-residential or high-risk address indicator from July 1, 2018 to July 31, 2021. In exchange for a release of all claims, Rule 23(b)(3) Settlement Class Members can submit a claim to receive a *pro rata* payment from a $22,450,000 settlement fund.

## I.   HISTORY OF THE LITIGATION AND THE MEDIATION

### A.   Nature of the Case

Because Plaintiff previously briefed this case's procedural history in support of the prior Rule 23(b)(2) Settlement (ECF No. 87 at 2–4), she summarizes and updates it here. Plaintiff's Complaint, filed on September 27, 2019, alleged two FCRA class claims against Experian, both of which pertained to Experian's use of its Fraud Shield product. Essentially, Plaintiff alleged that

---

[1] The Rule 23(b)(2) Settlement Class members do not release any individual claims for actual damages, statutory damages, punitive damages, or the extremely valuable fee-shifting afforded by the Fair Credit Reporting Act ("FCRA") against Experian, allowing class members to still vindicate any claims through individual litigation.  They release only the right to litigate another class action for these past violations.

[2] The enlarged Rule 23(b)(2) Settlement is negotiated by the Parties as a novation of the original Rule 23(b)(2) settlement.  Both sides have provided new consideration.  If the Court does not approve this present proposed Settlement, the original settlement remains undisturbed.  If this is approved, the original terms remain, but are then joined with separate new consideration and an expanded "class waiver" release.

[3] Class Counsel has already identified approximately 464,000 Class Members. Class Counsel anticipates receiving an additional data set that once analyzed will result in an additional 100,000 Class Members.

Experian incorrectly labeled consumers' home addresses as "high-risk" or "non-residential," without reasonable procedures to ensure that the applied labels were accurate. Plaintiff alleged that Experian also lacked procedures to ensure that outdated business address information was removed from its system, meaning that if a consumer's address had ever been linked to a business, that notation remained in the system forever, even if the business was defunct.

After a motion to transfer venue, discovery, and three full days of mediation, the Parties reached a Rule 23(b)(2) settlement, which addresses some issues regarding Experian's use of its Fraud Shield product. The Court approved the settlement on April 27, 2022. (ECF No. 112.) The Parties, however, failed to resolve the entire litigation, and the case continued with respect to Plaintiff's request for monetary damages.

After the first Rule 23(b)(2) settlement, the Parties kept litigating the case while they undertook mediation efforts. After the approval of the Rule 23(b)(2) settlement, the Parties engaged in significant meet-and-confer efforts, which resulted in Experian's production of over half a million new pages of discovery related to the use, advertising, and understanding of Fraud Shield. It also produced tens of millions of consumer application data to enable Plaintiff to ascertain and identify class membership, which Plaintiff examined with help from her expert. Plaintiff also sought third-party discovery from dozens of third parties, and the Parties worked to complete this Court's discovery dispute process. Along with these efforts, the Parties engaged in significant mediation efforts with help from Magistrate Judge Colombell.  In short, after the April hearing, both sides were fully engaged and working with about a dozen lawyers between the two sides to simultaneously complete both the discovery and mediation goals necessary under the closing litigation window.

B.     **Negotiations Leading to the Settlement Agreement**

Along with the Parties' discovery efforts, they engaged in significant mediation efforts. After they reached the first Rule 23(b)(2) settlement, the parties participated in more mediation sessions with retired federal Magistrate Judge Diane M. Welsh of JAMS Philadelphia. During these sessions, it became obvious that despite the parties divide on the merits, the Parties' main obstacle to resolving the Rule 23(b)(3) class allegations was ascertaining and identifying the class. The Parties conducted additional discovery efforts, described above, largely aimed at resolving this issue. Magistrate Judge Colombell then helped the Parties resolve the case, which involved a formal mediation session, as well as dozens of formal and informal conferences and discussions. Outside of Judge Colombell's extensive assistance, the Parties continued settlement efforts among themselves, which required hours of negotiation. These negotiations were contentious and hard-fought, and both Parties made significant concessions to reach the Settlement.

II.     **THE TERMS OF THE PROPOSED SETTLEMENTS**

As a result of these mediation efforts, the Parties were able to resolve the remaining issues in this litigation, as set forth in the Settlement Agreement. The Settlement encompasses two classes, two sets of consideration, and substantially different releases. The expanded Rule 23(b)(2) Settlement obtains substantial and far-reaching new consideration. It provides extensive injunctive relief that goes beyond the original Rule 23(b)(2) Settlement in addressing Experian's use of "high risk" and "non-residential" Fraud Shield indicators, which will benefit millions of consumers without releasing class members' individual claims for actual or punitive damages. The second, the Rule 23(b)(3) Settlement, will include around 565,000 consumers who, for a release of all claims, are entitled to submit a claim for payment from s $22,450,000 Settlement Fund. If three percent of the Rule 23(b)(3) Class Members submit a valid claim form, then they would receive a payment of around $913.00 if the Court approves the proposed attorneys' fees, costs, expenses,

and service awards. If eight percent of the Rule 23(b)(3) Class Members submit a valid claim form, they would receive a payment of around $342.00 if the Court approves the proposed attorneys' fees, costs, expenses, and service awards. Ex. 1, Kelly Decl. ¶ 18.

A.   **The New Rule 23(b)(2) Class Settlement Provides Significant Injunctive Relief and Practices Changes Beyond What the Original Rule 23(b)(2) Settlement Provided.**

Plaintiff filed this case to address Experian's incorrect reporting of certain consumers' addresses as "high risk" or "non-residential." In the original Rule 23(b)(2) Settlement, Plaintiff obtained significant injunctive relief that addressed many of these issues. That settlement required Experian to reconfigure its update process for non-residential addresses so that Experian completely updated its address table each month. The original settlement also required Experian to suppress or remove any address from the Non-Residential Address data that had not been updated or verified in the last six years. And the original settlement required Experian to stop publishing certain Fraud Shield indicators altogether and reduce the number of codes that would return the Fraud Shield indicators still being used. Finally, the original settlement revised the messaging and descriptions of some Fraud Shield indicators to be more detailed. Plaintiff's counsel was—and remains—proud of these changes. They provided meaningful relief and addressed many issues raised by Plaintiff's Complaint.

1.   The Rule 23(b)(2) Class Members Obtain Significant New Consideration for a Very Narrow Release.

This expanded Rule 23(b)(2) Settlement goes even further. Because of the new settlement terms, Experian will be providing consumers with critical new information about how these Fraud Shield indicators work and what they mean—both on Experian's consumer education website and on the free credit reports (consumer disclosures) consumers obtain to review and dispute information in their credit file. Agreement at 4.3.1.a; 4.3.1.b. Empowering consumers with this

information is significant because it will help consumers quickly identify and address any inaccuracies. Experian will also make it easier for consumers to ask about and dispute these Fraud Shield indicators and will tell consumers how to utilize this process directly on consumer disclosures. Agreement at 4.3.1.b; 4.3.1.c. Now, Experian will presume the consumer is correct when she makes a dispute, meaning that disputed Fraud Shield information will be presumptively removed from consumer credit reports. Ultimately, the injunctive relief addresses the specific alleged harm that Plaintiff suffered here and ensures that consumers are not prejudiced by similar inaccurate Fraud Shield reporting in the future.

> The Settlement Agreement defines the Rule 23(b)(2) Settlement Class Members as:
>
> All consumers in the United States for whom Experian, within two years prior to the filing of the Complaint in this action and during its pendency, furnished a consumer report to a third party containing an inaccurate Fraud Shield Indicator No. 10, 11, 16, or 17 indicating that the consumer's address was either a high-risk or non-residential address.

Agreement at 2.33.[4]  This class is estimated to include over ten million consumers, but the injunctive relief will benefit even more consumers going forward. And in exchange for this sweeping injunctive relief, the Rule 23(b)(2) Class Members will give a narrow release. As detailed in Sections 2.34 and 4.5 of the Settlement Agreement, Rule 23(b)(2) Class Members are only releasing their ability to bring a class claim under any state or federal laws for the reporting of Fraud Shield indicators stating that the consumer's address was either a high-risk or non-residential address. They retain the right to bring any individual claims seeking their actual, statutory, or punitive damages, as well as their attorneys' fees and costs.

---

[4] This is the same class certified in the existing Rule 23(b)(2) settlement.

2.      Class Administration and Rule 23(b)(2) Notice Plan

While individual notice is not required for a class certified under Federal Rule of Civil Procedure 23(b)(2), the Settlement provides it. The Parties and the Settlement Administrator have developed an appropriate and reasonable Rule 23(b)(2) Notice Plan to provide notice to Rule 23(b)(2) Settlement Class Members before the final approval hearing. Agreement at 4.2. Experian will pay for this notice process. If, however, the cost of the notice exceeds $350,000, Class Counsel will pay for the remaining costs, at no charge to class members. Experian will also pay for the notice required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. Agreement at 4.2.9.

The Agreement proposes that the Court appoint Kinsella Media ("Kinsella") as Settlement Administrator for the Rule 23(b)(2) Settlement. Agreement at 4.2.2. The Parties' proposed Rule 23(b)(2) Notice Plan, which Kinsella will administer, will employ four methods for circulating information about the Settlement to Rule 23(b)(2) Settlement Class Members. *Id*. § 4.2.1. First, Kinsella will establish the Rule 23(b)(2) Class Settlement Website that contains the Preliminary Approval Order, the Rule 23(b)(2) Internet Notice, the Settlement Agreement, and other relevant information about the Court-approval process as approved by the Parties. *Id*. §§ 4.2.1(a). The Rule 23(b)(2) Class Settlement Website will also include a section for frequently asked questions, and procedural information about the status of the Court-approval process, such as an announcement when the final approval hearing is scheduled, when the Rule 23(b)(2) Final Judgment and Order has been entered, and when the Effective Date is expected or has been reached. *See id.* § 4.2.4. Second, Kinsella will establish a toll-free telephone number with access to recorded information, in both English and Spanish, about the Settlement. *Id*. § 4.2.1(b). Third, Kinsella will develop and place digital online advertising over enough time to notify potential Rule 23(b)(2) Settlement Class

Members about the Settlement. *Id.* § 4.2.1(c). Fourth, Kinsella will place the Rule 23(b)(2) Publication Notice in traditional print media in TV Guide for one circulation period. *Id.* § 4.2.1(d).

### 3. Class Counsel is Not Seeking Attorneys' Fees or a Service Award for Representation of the Rule 23(b)(2) Settlement Class

The injunctive relief that Class Counsel achieved for the 23(b)(2) Settlement Class represents a significant expanded change in Experian's Fraud Shield reporting and provides the class members with far better substantive relief than the Court or a jury could provide even after Plaintiff's best day at trial.[5] As discussed above, the additional injunctive relief that this settlement provides to consumers is significant. It will allow consumers to more easily understand how these Fraud Shield indicators are generated and how to correct them if they are inaccurate. It will also reduce how often the Fraud Shield indicators are published. It also includes a robust notice program to ensure that consumers learn about these new changes. And, of course, as with any class settlement that they negotiate, Class Counsel will incur significant time in the future monitoring the settlement, speaking with class members, and possibly litigating any breaches of the injunctive relief. Class Counsel, however, are not seeking any attorneys' fees or service award for the Rule 23(b)(2) Settlement, as they are already to be paid for the previous Rule 23(b)(2) settlement, which would already impose much of this post-settlement responsibility.

### B. The Rule 23(b)(3) Class Settlement Provides an Opportunity for Class Members to Receive a Significant Cash Payment.

The Rule 23(b)(3) Settlement provides consumers with the ability to submit a claim form to receive a pro rata payment from a $22,450,000 Settlement Fund. There are two groups of consumers eligible to submit claims against the Settlement Fund. Agreement at 2.38. The first

---

[5] Indeed, it is generally accepted that the FCRA does not provide injunctive relief. *See, e.g.*, *Bumgardner v. Lite Cellular, Inc.*, 996 F. Supp. 525, 526 (E.D. Va. 1998).

group includes all consumers who, from July 1, 2018 to July 31, 2021, contacted Experian to ask about or dispute a non-residential or high-risk address indicator. The second group is a group of consumers who appear on a list compiled by Plaintiff, Plaintiff's expert, and Experian. These consumers meet the criteria listed in the settlement agreement, which was designed to capture consumers who were likely harmed by Experian's reporting of high-risk or non-residential Fraud Shield indicators from July 1, 2018 to July 31, 2021. This effort was one of the most challenging parts if the case and the one that delayed settlement more than any other.  Through both the discovery and mediation processes, Experian produced different sets of data by which the Parties were then able to determine who met certain specific criteria indicative of inaccuracy and possible damage.  *The first limiter was the imposition of the original injunctive relief to the data used to generate the triggering credit report*.  Rule 23(b)(3) Class Members are those whose triggering credit report would not have included the challenged Fraud Shield result had the existing injunctive relief been in effect. Agreement §2.38(a) through (d).

     *The second limiter necessary to be a class member is that the consumer be in a credit score range that would not have independent of FraudShield blocked approval for credit*.  The consumer's historical Vantage Score as provided by Experian was 650 or greater.  *Id.* at (e).

     *The third limiter is that the triggering report have been provided for a purpose other than debt collection*.  Id. at (f).  Some Experian customers use consumer credit reports to locate targeted debtors. Inclusion of a FraudShield address warning would not harm consumers subject to such efforts.

     *And lastly, the fourth limiter is that the consumer not have opened new credit during the 120 days after the triggering FraudShield report*.  When Plaintiff took third-party discovery of Experian's top 40 customers, many would have testified that the FraudShield **address** indicator

was not a disqualifying result (unlike other unrelated indicators).  If the consumer applied for, and then within 120 days received the credit sought, they were less likely to have been damaged.

There will be around 565,000 Rule 23(b)(3) Class Members, each of whom we know met these limitations and are on the class list.

1.      Monetary Relief for 23(b)(3) Settlement Class Members

The Rule 23(b)(3) Settlement provides for a Settlement Fund of $22,450,000 for Rule 23(b)(3) Settlement Class Members. Agreement §§ 2.48, 5.5. Each Rule 23(b)(3) Settlement Class Member who submits a valid claim form will receive a pro rata payment from the Settlement Fund, net any award of attorneys' fees, costs, and expenses to Class Counsel approved by the Court. Agreement § 5.9. The claim forms simply require Rule 23(b)(3) Class Members to check a box confirming, under penalty of perjury, that either: (1) the address listed on their notice—that is, the address Plaintiff's Expert matched to the Non-Residential Address Table—was in fact a residential address; or (2) for the Rule 23(b)(3) Class Members who contacted Experian to ask about or dispute a non-residential or high-risk address indicator, that they were harmed by a Fraud Shield indicator. The notice to each group is different to minimize confusion over the notice process, and Class Members need not submit any proof or documents to substantiate their claim. Rule 23(b)(3) Class Members will be able to submit a claim by mail or on the Settlement Website. Traditional claims rate usually vary from 3-8%, and the Settlement Administrators here have estimated a likely claim rate of between 4 and 8%.  If the claims rate was three percent, and no Rule 23(b)(3) Settlement Class Member opts out or objects and the Court approves the requested attorneys' fees and service awards, Class Counsel estimates that claimants would receive a payment of around $913.00. Similarly, if the claims rate was eight percent, and no Rule 23(b)(3) Settlement Class Member opts out, Class Counsel estimates that claimants would receive a payment of around $342.00.

10

The Rule 23(b)(3) Settlement Administrator (identified below as JND Legal Administration) will remail any uncashed settlement checks to give class members an ample opportunity to cash their settlement checks. Any uncashed or undeliverable checks after this second mailing will be redistributed to the Rule 23(b)(3) Class Members who cashed their initial checks, so long as the amount of the second payment would be at least $25.00. If there are not enough funds to mail a second payment to Rule 23(b)(3) Class Members, or if there are still funds remaining after the second payment, then any remaining money in the Settlement Fund will be paid in equal parts to the National Consumer Law Center and Public Justice *cy pres* award to support the protection of consumers relating to the claims alleged in the Litigation.

2.      Rule 23(b)(3) Settlement Class Release

Sections 2.43 and 5.10 of the Settlement Agreement contain the release that Rule 23(b)(3) Settlement Class Members are providing to the Released Parties. The release includes claims that were brought in the litigation, could have been brought in the litigation, or relate to the "Covered Conduct" detailed in the Settlement Agreement. It does not include, however, any claims unrelated to the Covered Conduct or claims under 15 U.S.C. § 1681i or for allegations of inaccuracy other than regarding the Covered Conduct. The Rule 23(b)(3) Settlement Class Released Claims include claims for actual damages, statutory damages, punitive damages, attorneys' fees, and all relief of any kind including claims asserted on a class, mass, or collective action basis and claims asserted on an individual, non-representative basis.

3.      Rule 23(b)(3) Settlement Administration and Notice Plan

The Agreement proposes that JND Legal Administration ("JND") will act as the Rule 23(b)(3) Settlement Administrator. Agreement § 5.2.3. JND will facilitate the notice and administration process set forth in the Settlement Agreement. *Id.* Section 5.2 of the Agreement sets forth the Parties' plan for providing notice to Rule 23(b)(3) Settlement Class Members. The

11

costs of the notice plan will be paid out of the Settlement Fund, but Experian will send the CAFA notice at its own expense. Agreement at 5.2.6; 5.2.5.

The Parties, working with Plaintiff's expert, will prepare a class list. *Id.* § 5.2.1. After Preliminary Approval, JND will send individual mail notice to all Rule 23(b)(3) Settlement Class Members on the Class List. *Id.* § 5.2.4. And, for all Rule 23(b)(3) Settlement Class Members for whom JND can locate email addresses, all notices and reminder notices must be sent by both email and U.S. Mail. *Id.* The Mail Notice will be sent to the last known physical address reflected in the Class List, unless JND locates a more recent address for the Class Member by cross-checking the Class List against the National Change of Address Database and other publicly available databases for obtaining up-to-date mailing addresses.  JND will re-mail the Mail Notice if it receives address change notifications from the U.S. Postal Service. Rule 23(b)(3) Settlement Class Members who do not submit a claim will also be sent a reminder notice either by mail or email to encourage a high claims rate.

JND will also prepare and publish the Rule 23(b)(3) Class Settlement Website using the following URL: www.fraudshieldsettlement.com. *Id.* The Rule 23(b)(3) Class Settlement Website will post important settlement documents, like the Settlement Agreement, the Mail Notice, the Rule 23(b)(3) Internet Notice, and the Preliminary Approval Order, as approved by the Parties or as may be ordered by the Court. *Id*. It will also describe the Settlement Fund, contain a section for frequently asked questions, and procedural information about the status of the Court-approval process, such as an announcement when the final approval hearing is scheduled, when the Final Judgment and Order has been entered, when the Effective Date is expected or has been reached, and when payment will likely be mailed. *Id*.

Both the Mail Notice and the Rule 23(b)(3) Settlement Website will include information on how Rule 23(b)(3) Settlement Class Members may opt out of the Settlement. S.A. § 5.2.4. Anyone wishing to opt out of the Rule 23(b)(3) Class Settlement must follow the procedures set out in Section 5.3 of the Settlement Agreement, including submitting their request no later than 90 days after the Notice Date. *Id.* § 5.3.1. JND will maintain a list of all valid opt-out requests. *Id.* § 5.3.2.

Any Rule 23(b)(3) Settlement Class Member wishing to object to the Settlement must follow the procedures in Section 5.4 of the Settlement Agreement. Objections must be filed with the Court at least thirty dates before the Final Fairness Hearing. Agreement § 5.4.1. Unrepresented objectors' notice of objection must include the class member's name, address, and telephone number; the name of this Litigation, the case number; and a written statement detailing the specific basis for each objection. *Id.* § 5.4.2. Objectors represented by counsel must also the identity, mailing address, email address, fax number, phone number for the counsel representing the class member; a statement of whether the objecting class member intends to appear at the Final Fairness Hearing; and a written statement detailing the specific basis for each objection, including any legal and factual support, including any evidence, that the objecting class member wishes to bring to the Court's attention. *Id.* § 5.4.3. The Parties have agreed not to provide any payments to any person or counsel who files an objection in exchange for the withdrawal, dismissal, or release of the objection, except with approval of the Court. *Id.* § 5.4.4.

        4.    Attorneys' Fees and Service Awards for Representation of the Rule 23(b)(3) Settlement Class

Plaintiff and Class Counsel will ask the Court to approve the attorneys' fees and service award in the Settlement Agreement. The attorneys' fees and service awards were addressed in mediation only after the Parties had agreed to all other substantive elements of

the Settlement.  The Settlement Agreement provides that Class Counsel may petition the Court for an award of attorneys' fees, costs, and expenses of up to 33% of the Rule 23(b)(3) Settlement Fund. Agreement § 5.7. Class Counsel will submit its fee petition to the Court at least 21 days before the Rule 23(b)(3) Settlement Class objection deadline. *Id*. The Settlement Agreement also permits Ms. Hill-Green to apply for a $10,000 Service Award. *Id*. § 5.8. Again, the Parties' agreement on attorneys' fees, costs, and service award did not occur until after the substantive terms of the Settlement Agreement had been reached.

## III.   THE PROPOSED CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A.   The Proposed Settlement Classes Satisfy the Requirements of Rule 23(a)[6]

In considering a settlement at the preliminary approval stage, the Court first considers whether a settlement class satisfies Rule 23 and its requirements for conditionally certifying a settlement class. *See Amchem*, 521 U.S. at 620 (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

#### 1.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no question that the classes here meet the numerosity requirement. There

---

[6] The Court has already certified the Rule 23(b)(2) Class on November 22, 2021.  (ECF 88). This argument as to that Class is made to ensure a complete record.

are potentially millions in the Rule 23(b)(2) Settlement Class, and around 565,000 members of the Rule 23(b)(3) Settlement Class. These numbers are sufficient for Rule 23 numerosity.

2.     Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys*, 212 F.R.D. at 322. And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Id.*; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Here, by definition, members of the Settlement Classes share multiple questions or law and fact. They are alleged to be the victims of the same inaccurate Fraud Shield reporting by Experian. The Fraud Shield indicators challenged in this lawsuit were applied to each of the class members' files using the same algorithm, which Plaintiff alleged violated the FCRA. The practices at issue for this claim are identical across Settlement Class Members. The theories of liability as to all Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* Fed. R. Civ. P. 23(a).

3.     Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need

not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.,* 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that [p]laintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322. Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

Here, there is a sufficient link between Plaintiff's claims and those of absent class members in both settlement classes because Plaintiff alleges that Experian violated the FCRA by willfully failing to employ reasonable procedures to assure the maximum possible accuracy of the information it included in consumer reports prepared about class members. *See* 15 U.S.C. § 1681e(b). Plaintiff's success on essential elements of her claims, including whether Experian's Fraud Shield product is regulated by the FCRA and whether Experian's conduct constituted a willful violation of the FCRA, would advance the claims of the members of the proposed classes. As a result, the typicality requirement is met.

### 4.    Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys,* 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs

possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops,* 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiff understands and has accepted the obligations of a class representative, has adequately represented the interests of the putative class, and has retained experienced counsel who have handled many consumer-protection class actions. Plaintiffs' lead counsel has effectively handled several consumer-protection and complex class actions, typically as lead or co-lead counsel. *See, e.g.*, *Berry*, 807 F.3d at 617–19; *White v. Experian Info. Solutions*, No. 05-01070, 2014 WL 1716154, at **13, 19, 22 (C.D. Cal. May 1, 2014), *aff'd sub nom. Radcliffe v. Experian Info. Solutions, Inc*., 818 F.3d 537, 548 (9th Cir. 2016) (appointing firm and its team as interim class counsel over objections from a competing national law firm because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation"); *Soutter v. Equifax Info. Services, LLC*, 3:10-cv-107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases.").

For example, in approving Kelly Guzzo and Consumer Litigation Associates as class counsel, Judge Novak described Class Counsel as "the all-star team of consumer litigation." *Turner v. Zestfinance, Inc*., 3:19-cv-293 (E.D. Va.). Other judges in this Court also have repeatedly recognized Kelly Guzzo's and Consumer Litigation Associates' quality and skill in consumer class-action litigation, and in FCRA litigation in particular. *See, e.g.*, *Clark v. Trans Union, LLC*, 3:15-cv-391, 2017 WL 814252, at *13 (E.D. Va. 2017) (Lauck, J.) (collecting cases and stating, "This Court has repeatedly found that [proposed Class Counsel] is qualified to conduct such

17

litigation. . . . This Court echoes the sentiments previously stated about [proposed Class Counsel] because they pertain here with equal vigor." (citations omitted)); *Galloway v. Williams, Jr.*, No. 3:19-cv-470, 2020 WL 7482191, at *8 (E.D. Va. Dec. 18, 2020) ("Class Counsel and their firms have extensive backgrounds in complex and class action litigation and consumer protection litigation" (*citing, e.g.*, *Hayes, et al. v. Delbert Servs. Corp.*, No. 3:14-cv-00258-JAG, ECF No. 193 ¶ 4, 14 (Jan. 20, 2017)); *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-00624-JAG, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014) ("Dreher's counsel is well-experienced in the arena of FCRA class action litigation."); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14-cv-238, 2016 WL 1070819, at *3 (E.D. Va. Mar. 15, 2016) (stating that "this Court would have difficulty overstating Class Counsel's experience")); *see also* Exs. 1, 2.

Courts have also recognized Berger Montague's extensive class-action experience, including in FCRA cases. *See, e.g.*, *Gambles v. Sterling Infosystems, Inc.*, No. 15-cv-9746 (S.D.N.Y.) (FCRA class action, alleging violations by consumer reporting agency, resulting in a gross settlement of $15 million, one of the largest FCRA settlements to date); *In re: JUUL Labs, Inc. Mktg., Sales Practices & Prod. Liab. Litig.*, No. 19-md-2913 (N.D. Cal.) (appointed to Plaintiffs' Steering Committee in multi-district litigation consolidated class action, regarding the marketing and sales practices of dangerous e-cigarettes to consumers); *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-2904 (D.N.J.) (appointed to the Plaintiff's Quest Track Steering Committee in multi-district litigation consolidated class action, regarding the breach of consumers' medical information); *In re: TransUnion Rental Screening Sols., Inc. FCRA Litig.*, No. 1:20-md-02933-JPB (N.D. Ga.) (appointed as Interim Lead Counsel for the classes in multi-district litigation consolidated class action, regarding violations of the Fair Credit Reporting Act); *Thomas v. Equifax Info. Services,*

*LLC*, No. 18-cv-684 (E.D. Va.) (FCRA class action, alleging violations by credit bureau, providing nationwide resolution of class action claims asserted across multiple jurisdictions, including injunctive relief, and an uncapped mediation program for millions of consumers); *Clark v. Experian Info. Sols., Inc.*, No. 16-cv-32 (E.D. Va.); (FCRA class action, alleging violations by credit bureau, providing a nationwide resolution of class action claims asserted by 32 plaintiffs in 16 jurisdictions, including injunctive relief and an uncapped mediation program, for millions of consumers); *Clark/Anderson v. Trans Union, LLC*, No. 15-cv-391 & No. 16-cv-558 (E.D. Va.) (FCRA consolidated class action, alleging violations by credit bureau, providing groundbreaking injunctive relief, and an opportunity to recover monetary relief, for millions of consumers); *Rilley v. MoneyMutual, LLC*, No. 16-cv-4001 (D. Minn.) (court certified a litigation class alleging that MoneyMutual violated Minnesota payday lending regulations, resulting in $2,000,000 settlement with notable injunctive relief); *see also* Ex. 3.

**B.    The Rule 23(b)(2) Settlement Class Satisfies the Requirements of Rule 23(b)(2) [7]**

If the requirements of Rule 23(a) are met, the proposed class must then fall into one of the categories set out in Rule 23(b) to warrant certification. *Berry*, 807 F.3d at 608. The Rule 23(b)(2) Settlement Class is an injunctive-relief-only settlement class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Berry*, 807 F.3d at 608–09 (citing *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311, 329 (4th Cir. 2006)). Simply, Rule 23(b)(2) certification is proper "if members of the proposed class would benefit from the injunctive relief." *Cuming v. S.C. Lottery Comm'n*,

---

[7] The Court has already certified the Rule 23(b)(2) Class on November 22, 2021.  (ECF 88). This argument as to that Class is made to ensure a complete record.

No. 3:05-cv-03608-MBS, 2008 WL 906705, at *6 (D.S.C. March 31, 2008) (citing *Thorn*, 445 F.3d at 331). In addition, any request for monetary relief by the class must be "incidental" to the injunctive relief before certification under Rule 23(b)(2) is appropriate. *Berry*, 807 F.3d at 609. The Rule 23(b)(2) Settlement Class here satisfies both requirements.

For the Rule 23(b)(2) Settlement Class, Plaintiff alleges that Experian's practices and procedures failed to satisfy § 1681e(b)'s "reasonable procedures" requirement. Here, the Settlement Agreement treats all Rule 23(b)(2) Settlement Class Members the same because it gives each Settlement Class Member the same substantial benefits of the injunctive relief practice changes discussed above. While Experian maintains that it has always acted in compliance with the law, the fact that the Settlement modifies Experian's conduct for the Rule 23(b)(2) Settlement Class as a whole makes it appropriate for certification under Rule 23(b)(2). *Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted-the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" (citation omitted)). The injunctive relief will provide a direct benefit to the Rule 23(b)(2) Settlement Class Members going forward because the policy changes enacted through the Rule 23(b)(2) settlement will make it less likely that the class members are the subject of an inaccurate Fraud Shield report in the future.

The Rule 23(b)(2) Settlement Class continues to meet Rule 23(b)(2)'s second requirement—that any request for monetary relief be merely "incidental" to the injunctive relief provided in the settlement—because the Settlement does not provide for monetary relief for Rule 23(b)(2) Settlement Class Members unless they are also members of the Rule 23(b)(3) Settlement Class. Rule 23(b)(2) Settlement Class Members retain their ability to bring individual claims for actual damages, statutory damages, punitive damages, and attorneys' fees, and release only their

ability to bring a class action for the limited "covered conduct" listed in the Settlement Agreement. This retained right to bring further litigation "mak[es] class-wide representation possible and opt-out rights unnecessary." *Id.* at 612–13 (preservation of rights to bring actual damages claims preserves due process rights of absent class members).

### C.      The Rule 23(b)(3) Settlement Class Satisfies the Requirements of Rule 23(b)(3)

The Rule 23(b)(3) Settlement Class provides for the automatic payment of a monetary settlement to its members and therefore, along with meeting the requirements of Rule 23(a), must meet the requirements of Rule 23(b)(3), namely, that (1) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Rule 23(b)(3) Settlement Class meets these requirements.

#### 1.      Common Questions of Law and Fact Predominate over Individual Ones

Resolution of the common issues of fact and law here will not only promote the efficient adjudication of these matters, but it will dispose of them entirely. For the Rule 23(b)(3) Class, Plaintiff alleges that Experian violated the FCRA, § 1681e(b) because it did not follow reasonable procedures to assure maximum possible accuracy of certain Fraud Shield indicators that it published about the class members. Experian's policies for Fraud Shield reporting and the algorithm used to generate these indicators are generally common to all Rule 23(b)(3) Settlement Class Members.

Plaintiff also alleges that Experian's alleged failure to comply with the FCRA was "willful," *i.e.*, that there is no objectively reasonable interpretation of the FCRA that supports Experian's view that its Fraud Shield procedures were reasonable in the face of the FCRA's

stringent "maximum possible accuracy" requirement. 15 U.S.C. § 1681e(b). The possible complications that Plaintiff might encounter at trial and how the procedures were applied to individual class members is not at issue since the class is being certified for settlement purposes and not for trial. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

> 2.    A Class Action Settlement Is the Superior Method for Resolving Class Members' Claims

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here. Separately litigating the common issues that bind the classes would be a practical impossibility, even assuming consumers had notice of their claims and it were economically feasible to pursue these claims on their own. Simply put, "there is a strong presumption in favor of a finding of superiority" where, as here, "the alternative to a class action is likely to be no action at all for the majority of class members." *Cavin v. Home Loan Ctr., Inc*., 236 F.R.D. 387, 396 (N.D. Ill. 2006). Furthermore, even if just a small fraction of the class members were to bring individual suits, the resolution of common issues in a single proceeding here would be far more efficient than would be the separate adjudication of individual claims in potentially millions of separate lawsuits across the country.

## IV.    THE SETTLEMENTS ARE FAIR AND ADEQUATE

After the analysis of the Rule 23(a) and (b) elements, the Court should then decide whether the proposed settlements are fair, reasonable, and adequate. Although pretrial settlement of class actions is favored, "Rule 23(e) provides that 'a class action shall not be dismissed without the approval of the court." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (citations omitted). "To this end, 'the role of the Court reviewing the proposed settlement of a class action

under Fed. R. Civ. P. 23(e) is to assure that the procedures followed meet the requirements of the Rule and . . . to examine the settlement for fairness and adequacy.'" *In re MicroStrategy*, 148 F. Supp. 2d at 663.

"[T]he Fourth Circuit [has] adopted a bifurcated analysis, separating the inquiry into a settlement's 'fairness' from the inquiry into a settlement's 'adequacy.'" *Id*. These safeguards ensure that "a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem*, 521 U.S. at 621; *see also In re Jiffy Lube*, 927 F.2d at 158 ("The primary concern addressed by Rule 23(e) is the protection of class members who rights may not have been given adequate consideration during the settlement negotiations."). In this case, each set of factors supports approving both of the Settlements.

### A.     The Settlements are Fair

The Fourth Circuit has set forth the factors to be used in analyzing a class settlement for fairness: (1) the posture of the case when the proposed settlement was reached, (2) the extent of discovery that had been conducted, (3) the circumstances of the settlement negotiations, and (4) counsel's experience in the type of case at issue. *Jiffy Lube*, 927 F.2d at 158–59.

The Settlement reached resulted from a fair process. The Parties exchanged extensive written discovery, including over half a million pages of ESI and tens of millions of data files on individual consumers that Plaintiff analyzed to determine class membership. This data was also analyzed by Plaintiff's expert. The Parties also conducted several depositions and engaged in many meet-and-confer conferences, and subpoenaed dozens of third parties. Outside the formal discovery process, the Parties also informally exchanged documents and information to facilitate the mediation sessions and ultimate settlement.  As discussed above, the Parties attended at least six formal mediation sessions with Judge Welsh and Judge Colombell and conducted robust, informal communications regarding settlement. With Magistrate Judge Colombell's substantial

assistance, the Parties had dozens of conferences and were ultimately able to reach a settlement in principle in July 2022, which they have continued to finalize over the last several weeks. This process has involved the exchange of more data to ascertain and identify the Rule 23(b)(3) class members. Simply put, this claims and defenses at issue were fully discovered, and the Parties' positions were contentiously negotiated when the Settlement was finally reached.

Courts have found that, where a settlement results from genuine arm's-length negotiations, there is a presumption that it is fair. *See, e.g.*, *City P'ship Co. v. Atlantic Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000).

The discovery discussed above was sufficient to support the Parties' position that the Settlement is the best and most appropriate means for resolving this case. The extensive written discovery, document production, depositions, and expert work provided each side with the necessary insight to evaluate the merits, and laid the groundwork for the arm's-length, contentious negotiations that resulted in the Settlement.

Finally, Class Counsel is highly experienced in consumer class action litigation and endorse the settlement as fair and adequate under the circumstances. *See generally* Ex. 1-3. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See, e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665; *Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996); *Rolland*, 191 F.R.D. at 6.

### B.      The Settlement Terms Are Adequate and Reasonable

In analyzing the adequacy of a proposed settlement, the Court should consider: (1) the relative strength of the case on the merits, (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of

recovery on a litigated judgment, and (5) the degree of opposition to the proposed settlement, (6) the posture of the case when settlement was proposed, (7) the extent of discovery that had been conducted, (8) the circumstances of the negotiations, and (9) the experience of counsel in the substantive area and class action litigation. *See In re Jiffy Lube*, 927 F.2d at 159.

       1.     Plaintiff's Claims Are Disputed and Would Encounter Substantial Defenses

Experian has disputed Plaintiff's claims since this case began. Because Ms. Hill-Green seeks statutory and punitive damages, any recovery requires a finding that Experian willfully violated the FCRA. *See* 15 U.S.C. § 1681n(a). Although a reckless violation of the FCRA satisfies the willfulness prerequisite for statutory and punitive damages, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), class members still face the burden of proving that Defendants' conduct was indeed reckless. The final resolution of that issue, regardless of which party prevails at the trial level, would require several more years of protracted adversarial litigation and appeals at substantial risk and expense. In addition, if Plaintiff chose to litigate her claims, she would face the harder task of certifying the class for trial purposes. As the Court has summarized in another FCRA settlement, "[g]iven these difficulties with the willfulness claim, the benefit of the substantial relief provided by the settlement without the risk of litigation demonstrates the adequacy of the Settlement Agreement." *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14-cv-238-DJN, 2016 WL 1070819, at *4 (E.D. Va. Mar. 15, 2016). And it is doubtful that Plaintiff could have obtained injunctive relief for the class members if she had proceeded to trial. The Fourth Circuit has expressed doubt that the FCRA allows for injunctive relief outside the settlement context:

> We may assume, as did the district court, that the FCRA, which does not provide expressly for a private right of action for injunctive relief, does not permit consumers to seek injunctive remedies. But like the district court, we think that is beside the point: "[I]n the settlement context, 'it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all.'"

*Berry*, 807 F.3d at 610 (citations omitted). This weighs heavily in favor of finding that this settlement is adequate.

      2.    **Continuing This Litigation Will Result in Significant Additional and Unjustifiable Burdens on the Classes, Defendant, and the Court**

Aside from the potential that either side will lose at trial, the Parties anticipate incurring many other costs in pursuing this litigation further. The level of additional costs would expand as Plaintiffs began their preparations contested class certification and trial, as well as likely appeals. Thus, the likelihood of substantial future costs favors approving the Settlement.

      3.    **Data Concerning Class Members' Reaction to the Settlement Is Not Yet Available**

Because class members have yet to receive notice of the Settlement, their reaction cannot yet be gauged. In any event, despite the size of the Rule 23(b)(2) Settlement Class, to date no consumer has filed or is pursuing his or her own individual claim for the claims resolved here.

      4.    **This Case Was at a Proper Posture for Settlement**

The Parties have litigated and negotiated these claims for years. Plaintiff had a complete understanding from formal and informal discovery about what process and procedures were used and what defenses would be faced. As argued above, each of the remaining elements of "adequacy" under *Jiffy Lube* are more than met. The negotiations were self-evidently arm's-length, with settlement made possible only through the considerable efforts of three experienced mediators. Finally, Plaintiff's counsel is as experienced and accomplished in this field as likely any team in the nation. Given this analysis and the possibility that Plaintiff and the class members ultimately will not prevail on their claims at trial or on appeal, the *Jiffy Lube* factors weigh heavily in favor of the Settlement's adequacy and reasonableness.

V.    **THE PROPOSED NOTICE PLANS SATISFY THE REQUIREMENTS OF RULE 23(e)(1)**

Rule 23(e)(1) requires that the court "direct notice is a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The manner of the settlement notice need only comply with due-process "reasonableness" requirements, which will vary based on the circumstances of the case. *See Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir. 1979).

The Parties have retained and consulted Kinsella and JND, both of which are highly regarded and experienced class-action notice and administration firms, about the most reasonable and appropriate means to provide notice to the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes. The Parties have agreed to a proposed notice plan for the Rule 23(b)(2) Settlement Class that employs a combination of the latest high tech as well as more traditional media methods for publicly circulating information about a settlement to class members. The Rule 23(b)(3) Notice Plan provides for individual, direct mail notice to each class member, a means of notice that courts have universally accepted as an appropriate form of notice for class action settlements involving a monetary fund.

A.    **The Rule 23(b)(2) Class Notice Program Satisfies Rule 23 and Due Process**

Neither Rule 23 nor the case law requires individualized, mailed notice for a Rule 23(b)(2) settlement class, where class members do not have the opportunity to opt out of the settlement and are not required to take any affirmative action to receive the benefits of the settlement. Federal Rule of Civil Procedure 23(c)(2)(A) is explicit that even a litigated Rule 23(b)(2) class does not require any notice. Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(l) or (2), the court may direct appropriate notice to the class."). Unlike class actions certified under Rule 23(b)(3), which require individual notice to class members and the opportunity to opt out of the

27

settlement, class actions certified under Rule 23(b)(2) ordinarily do not require individual notice to class members because there is greater cohesion of interests in a (b)(2) class, as individual damage claims are not at stake. *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co*., 211 F.R.D. 457,466 (S.D. Fla. 2002) ("Notice (and exclusion opportunity) is not required in Rule 23(b)(2) actions."); 7B Charles Alan Wright *et al*., *Federal Practice and Procedure* § 1793 (3d ed. 2006) (stating that while Rule 23(b)(3) classes require mandatory notice, notice is not as important for Rule 23(b)(2) classes "because the class typically will be more cohesive"); Fed. R. Civ. P. 23 advisory committee's note (2003 Amendments) (explaining that "[t]he authority to direct notice to class members in a (b)(1) or (b)(2) class should be exercised with care" because there is no right to request exclusion and because of the potentially "crippl[ing]" cost of providing notice).

Here, expecting that notice is appropriate here, the Parties have developed a comprehensive publication notice program to notify the Rule 23(b)(2) Settlement Class of the proposed settlement. *See* Ex. 4, Wheatman Decl. Use of a combination of traditional print and online media, as does the Parties' proposed program, meets the reasonable notice requirement of Rule 23(e) when providing notice to a large, nationwide Rule 23(b)(2) class. *In re NASDAQ Market-Makers Antitrust Litig*., 169 F.R.D. 493, 532 (S.D.N.Y. 1996) ("Notice under Rule 23(b)(2) is flexible, and may consist entirely of published notice in appropriate circumstances.").

In consultation with the Settlement Administrator and based on the successful Rule 23(b)(2) notice programs in previous consumer class settlements, the Parties developed a publication notice program that will reach around 75% of the Rule 23(b)(2) Settlement Class members. Ex. 4 Decl. ¶ 33. The notice program will use extensive digital advertisement, through Conversant, Facebook and Google, because over 94% of adults over twenty-five use the internet each month. *Id.* ¶ 15. Notice will also be published in TV Guide magazine, which will reach older

Class Members who may not spend time online. *Id.* ¶¶ 12-14. This reach and frequency easily meets the requirement that the class receive reasonable notice under Rule 23(e).

**B.      The Rule 23(b)(3) Class Notice Program Satisfies Rule 23 and Due Process**

To meet the due process requirements that apply when settling a claim for monetary damages, a more rigorous—but still flexible—standard applies when directing notice to a Rule 23(b)(3) class. Rule Advisory Committee Notes to Fed. R. Civ. P. 23, 39 F.R.D. 69, 107 (mandatory notice under subdivision (c)(2) "is designed to fulfill requirements of due process to which the class action procedure is of course subject").

The Court must direct "the best notice that is practicable under the circumstances" to a Rule 23(b)(3) class, which includes "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Thus, where the names and addresses of individual class members are available or can be found without imposing an excessive burden or cost, due process requires that those class members receive direct notice.

The content of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

Here, the notice plan for the Rule 23(b)(3) Settlement Class combines individual, direct mail notice to all class members, as well as email notices to class members whose email address can be identified, and a reminder notice for class members who do not submit a claim form. *See* Ex 5, Keogh Decl. Courts in the Fourth Circuit have held that similar notice plans meet all the requirements of Rule 23 and due process for class action settlements involving a monetary fund.

*See, e.g.*, *Brunson v. Louisiana- Pac. Corp.*, 81 F. Supp. 2d 922, 925–26 (D.S.C. 2011) (mailed and published notice were the "best notice practicable under the circumstances," satisfying both state and federal class-action rules of procedure and constitutions); *In re MicroStrategy*, 148 F. Supp. 2d at 669–70 (mail and publication notice program was "tailored to reach as many members of the class as practicable and therefore meets the due process requirements of Rule 23").

### C.      Request for Approval of Notice Plans

The Notice Plans for the Rule 23(b)(2) Settlement Class and Rule 23(b)(3) Settlement Class described above amply satisfy the Rule 23(e)(l)(B) requirement that notice be directed in a "reasonable manner." For these reasons, the Court, after reviewing each of the forms of proposed notices and the specific terms of the Notice Plans, should find that they are sufficient and provide the reasonable notice that Fed. R. Civ. P. 23(e) requires. The Court, in its preliminary approval order, is requested to establish the procedures and deadlines set forth in the proposed Notice Plans for (i) objecting to the settlement or, in the case of the Rule 23(b)(3) Settlement, opting out of the settlement, and (ii) entering a written notice of appearance if a class member intends to appear at the final approval hearing.

## VI.      CONCLUSION

For these reasons, Plaintiff requests that the Court issue an Order that: (1) grants preliminary approval to the Proposed Settlement; (2) approves of the Proposed Notices filed concurrently with this Motion; (3) orders that the Proposed Notice Plan be immediately implemented; (4) approves the appointment of Kinsella and JND as the Settlement Administrators; and (5) sets the date of the Final Fairness Hearing at the Court's earliest availability, but no sooner than 120 days from the date of the granting of this Motion.

Respectfully submitted,
**LISA HILL-GREEN,**
*individually and on behalf of all*
*others similarly situated*

By: */s/ Kristi C. Kelly*
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB No. 92699
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com

Leonard A. Bennett, VSB No. 37523
Craig C. Marchiando VSB No. 89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

E. Michelle Drake, Admitted *Pro Hac Vice*
Email: emdrake@bm.net
Joseph C. Hashmall, Admitted *Pro Hac Vice*
Email: jhashmall@bm.net
**BERGER MONTAGUE PC**
1229 Tyler St NE, Suite 205
Minneapolis, Minnesota 55413
Telephone: (612) 594-5999
Facsimile: (612) 584-4470
*Counsel for Plaintiff*